UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA          )
                                  )
          v.                      )    CRIMINAL NO. 04-10361-NG
                                  )
JOHN HANDY                        )

DEFENDANT'S MOTION FOR LEAVE TO FILE
MOTION FOR FRANKS HEARING AND MOTION TO SUPPRESS LATE

Defendant, John Handy, moves that this Court grant leave to file his Motion to Suppress, originally scheduled to be filed by March 10, 2006, on April 5, 2006.  As support for this Motion, the defendant through counsel states the following:

1.  The defendant is charged with being a felon-in-possession of a firearm in violation of 18 U.S.C. § 922(g).  The defendant faces the possibility of a fifteen year minimum sentence under the Armed Career Criminal Act.

2.  By Order dated October 10, 2002, this Court set a deadline of March 10, 2006 for defendant to file an anticipated Motion to Suppress.  The Court also set a date of April 28, 2006 for the government's response and May 10, 2006 for a possible evidentiary hearing on the Motion.

3.  After receiving the Pretrial Order in this case, counsel was required to expend more time than was expected preparing for and litigating the Motion to Suppress in this matter.  Additionally, counsel has been preoccupied with the preparation and filing of a number of pleadings before the district court and

briefs to the First Circuit Court of Appeals.

4. Counsel has filed, as an attachment to this Motion, Defendant's Motion to Suppress and exhibits this day should the Court allow this Motion.

5. Despite this late filing, the government will have more than three weeks to respond to the Motion to Suppress. Moreover, defendant will assent to any reasonable extension of time for the government to file its response. In any event, counsel believes that this late filing will not interfere with the previously scheduled hearing date of May 10, 2006.


JOHN HANDY
By His Attorney:


/s/ Timothy G. Watkins
Timothy Watkins
 B.B.O. #567992
Federal Defender Office
408 Atlantic Ave., Third Floor
Boston, MA  02110
(617) 223-8061


## CERTIFICATE OF SERVICE

I, Timothy G. Watkins, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on April 5, 2006.


/s/ Timothy G. Watkins
Timothy G. Watkins

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA         )
                                 )
          v.                     )    CRIMINAL NO. 04-10361-NG
                                 )
JOHN HANDY                       )

DEFENDANT'S MOTION FOR A <u>FRANKS</u> HEARING
<u>AND MOTION TO SUPPRESS</u>

    Defendant, John Handy, hereby moves that this court suppress

the fruits of a search conducted at 41 Weston Street, Brockton,

MA on June 2, 2004.  As grounds therefore, defendant states the

following:

    1)    The search warrant application in support of the search
          warrant failed to establish probable cause to search 41
          Weston St. in Brockton;

    2)    The search warrant application contained material
          omissions;

    3)    The good faith exception does not apply; and

    4)    Seizure of the firearm that is the subject of the
          indictment at issue, as well as mail addressed to
          defendant, was the result of a search that exceeded the
          scope of that authorized by the search warrant.

**<u>FACTS</u>**

<u>The Search Warrant Application</u>

    On May 26, 2004, State Police Trooper Edward McDonald

applied to Brockton District Court for a search warrant

authorizing the search of 41 Weston St. in Brockton,

Massachusetts.  The application for the search warrant is

attached as Exhibit A to this motion and is referred to by

paragraph number as "SW Aff. ¶ __; The search warrant itself is attached as Exhibit B.  McDonald attempted to establish probable cause for issuance of the warrant primarily through the use of a Confidential Informant ("CI"), a heroin user who had provided information leading to a previously successful state court prosecution for drug purchases.  SW Aff. ¶ 4.  The CI related that he had purchased heroin from a man named "Joe" for approximately one year.  SW Aff. ¶ 3.  He admitted, however, that the purchases were often made at a public location in Brockton as well as at 41 Weston St., an address at which the CI claimed (without any further elaboration or support) Joe lived, and that he called a telephone not associated with the 41 Weston St. address.[1]  SW Aff. ¶ 3.

McDonald unsuccessfully attempted to verify that a man named "Joe" was associated with 41 Weston St. by examining utility records.  SW Aff. ¶ 6.  Those records, however, revealed instead that the home, a single-family dwelling, was owned by a woman, Shirrel Carrigan.  SW Aff. ¶ 6.  McDonald ran Shirell Carrigan's record and discovered, according to the affidavit, that she had been arraigned fourteen times, twice for narcotics offenses.  SW Aff. ¶ 6.  A review of her record (a copy of which will be

---

[1]Indeed, as demonstrated from billing records (attached hereto as Exhibit D), the telephone number cited in the affidavit, (774) 274-9820, lists the subscriber address of 18 Prospect Ave., Brockton, not 41 Weston St.

submitted under seal as Exhibit C) reveals, however, that McDonald neglected to disclose that the drug arraignments [sic] were actually from a single incident nearly 19 years before the date of the application.  And the affidavit failed to note that all of the offenses were ancient: the most recent arraignments, for annoying telephone calls and welfare larceny, were 9 ½ and 10 years old, respectively.  <u>See</u> Exhibit C (under seal).

Left with no independent supported connection of "Joe" to 41 Weston St., McDonald attempted to establish probable cause for that address by detailing two controlled buys that the confidential informant allegedly made.  SW Aff. ¶¶ 5, 7.  Those paragraphs, identical except for the date of the alleged transactions, are more notable for what they do <u>not</u> contain than they are for establishing probable cause.  Neither establishes conclusively that the CI actually obtained the contraband from within 41 Weston St.  Each paragraph asserts only that the "CI agreed to make a controlled purchase of heroin from "Joe" in the city of <u>Brockton</u>" rather than identifying that the purchase would take place at 41 Weston St.  As to the actual purchase, McDonald asserts that he conducted surveillance and

> observed CI#1 travel to 41 Weston Street, Brockton and enter the aforementioned address through the left side door.  After the controlled narcotics purchase this affiant met with CI#1 and CI#1 gave to this officer the narcotics (heroin) it purchased from "Joe."

SW Aff. ¶¶ 5, 7.   The affidavit thus conspicuously fails to set forth whether McDonald continuously observed the CI leave 41 Weston St. and go directly to the point where the contraband was passed to him or any of the measures he took to ensure that the contraband received was purchased inside of 41 Weston St. Especially noteworthy is that the search warrant does not even include a statement - as to either sale - from the CI that the heroin was purchased within 41 Weston St.[2]   Moreover, the affidavit utterly fails to set forth any information about the scope of alleged purchase, such as the amount of money supplied, the amount purchased, or the packaging of the drugs.

<u>Defendant Did Not Deliver Drugs at 41 Weston St.</u>

As shown by the attached affidavit of John Handy (hereinafter "Handy Aff. ¶ __), attached hereto as Exhibit E, the CI was an individual whom Handy knew as a drug-addicted person. Handy Aff. ¶ 4.  Handy had met him in a park in Brockton frequented by individuals addicted to and looking for narcotics. Handy Aff. ¶ 5.  Handy was himself addicted to heroin in the early part of 2004, a fact of which the CI was aware.  Handy Aff. ¶ 5.

---

[2]To be sure, when he offered his "opinion" that 'Joe' is engaged in a continuing narcotics enterprise (heroin)," McDonald changes the paragraphs to conclusorily allege that both transactions were conducted inside of 41 Weston St., Brockton. SW Aff. ¶ 9.  The search warrant makes no effort to explain this inconsistency.

The CI would contact Handy from time to time in order to pool resources to buy heroin.  Handy Aff. ¶ 5.  These contacts would either be by telephone or in person.  Handy Aff. ¶ 5.  The two would sometimes purchase from someone the CI knew, and other times purchase from someone known to Handy.  Handy Aff. ¶ 5.  The purchases never took place at 41 Weston St.  Handy Aff. ¶ 6. Instead, the two would ordinarily meet at public locations in Brockton before going to another individual to purchase the heroin.  Handy Aff. ¶ 5.  On two occasions, however, the CI met Handy at 41 Weston St. for a brief moment, once so that the CI could give Handy heroin.  Handy Aff. ¶ 7.  No heroin was sold by Handy on this (or any other) occasion at 41 Weston St.  Handy Aff. ¶ 7.  On the two occasions when the CI entered 41 Weston St., the furthest he came into the house was the kitchen area just off of the entryway.  Handy Aff. ¶ 7.

Execution of the Search Warrant

Police obtained the search warrant on May 26, 2004 but did not execute it until a week later on June 2, 2004.  When police finally executed the warrant, they did not find any indicia that heroin had been or was being distributed from 41 Weston St.  A copy of the Search Warrant Inventory is attached hereto as Exhibit F.  They found instead a bag with a small amount of heroin (.21 grams) of a purity (16%) consistent only with

-5-

personal use.[3]  Id.  Police continued to search for an extended
period of time before obtaining a firearm from a utility access
point deep beneath a bedroom floorboard.  Pictures of the access
point are attached hereto, with the Affidavit of Kevin Rickel, as
Exhibit G.  They also seized two pieces of mail with Handy's name
and the 41 Weston St. address.  See Exhibit F.

**ARGUMENT**

I.   THE SEARCH WARRANT FAILS TO ESTABLISH PROBABLE CAUSE TO
     SEARCH 41 WESTON STREET.

     A warrant application must demonstrate probable cause to
believe that a particular person has committed a crime – the
commission element – and that enumerated evidence relevant to the
probable criminality likely is located at the place to be
searched – the 'nexus' element.  United States v. Feliz, 182 F.3d
82, 86 (1st Cir. 1999); United States v. Zayas-Diaz, 95 F.3d 105,
110-11 (1st Cir. 1996).  Where a warrant application hinges on
information from a confidential informant, the accompanying
affidavit "must provide some information upon which the issuing
judge can assess the credibility of the information's
information."  United States v. Barnard, 299 F.3d 90, 93 (1st
Cir. 2002).  Corroboration of benign or immaterial background
facts is insufficient.  See id..  Rather, the affidavit must

---

[3]On the basis of this discovery, Handy was charged with (and
pled guilty to) simple possession of heroin in Brockton District
Court.

corroborate facts that elicit the inference of criminal activity, thereby allowing the issuing officer to conclude "that the crucial part of the CI's story . . . [is] true." <u>Id.</u> at 94. Here, the information in the affidavit, taken as a whole, does not establish probable cause to believe that relevant evidence of drug distribution would be found at 41 Weston St. The warrant was therefore invalid and the evidence seized from 41 Weston St. must be suppressed.

The statements attributed to the informant concerning the connection to 41 Weston St. are general in the extreme. <u>Cf.</u> <u>United States v. Taylor</u>, 985 F.2d 3, 7 (1st Cir. 1993) (veracity may be shown by "very specificity and detail" of informant's "first-hand description of the place to be searched or the items to be seized"). The description given of 41 Weston pertains solely to observations of the exterior of the house - details that have nothing to do with the alleged criminal activity and are easily observable. <u>See</u> <u>United States v. Gibson</u>, 928 F.2d 250, 253 (9th Cir. 1993)(where informant said he saw drugs in house, mere corroboration of "several innocent details" about defendant's description and his ownership of a certain dog and vehicles insufficient). Entirely absent from the affidavit was any description whatsoever of the informant's observations within

-7-

the house, or even any description of the interior of the house.[4]
Cf. Barnard, supra, 299 F.3d at 94 (informant first-hand
information contained in affidavit provided link between illegal
activity observed and the place to be searched).  Even a
description of the interior of a home is not "particularly
probative" of an informant's basis of knowledge or, if
corroborated, of an informant's reliability because "[s]uch
details do not demonstrate that the informant has a legitimate
basis for knowing about the defendant's allegedly criminal
activity which, after all, is what the affidavit must establish."
United States v. Khounsavanh, 113 F.3d 279, 284 (1st Cir. 1997).
The total lack of any detailed description of the interior in
this case undercuts any basis for the issuing justice's
conclusion that the crucial part of the confidential informant's
story - that Handy was distributing heroin from 41 Weston St. -
was true.  Barnard, supra, 299 F.3d at 94.

Nor is there any meaningful independent corroboration of the
affidavit's bald assertion that drug activity was actually taking
place at 41 Weston St.  United States v. Lalor, 996 F.2d 1578,
1583 (4th Cir. 1993)("[R]esidential searches have been upheld
only where some information links the criminal activity to the
defendant's residence.").  The affidavit contains no information

---

[4]Indeed, what little mention there is made of the interior
is factually incorrect:  evidence that is included corroborating
the informant's entry into 41 Weston St.

about attempts to cross-corroborate the information from other
sources.  See Bernard, supra, 299 F.3d at 94 (second confidential
source information dovetailed with CI information and thus made
it sufficiently likely crucial part of story was true).  The
affidavit reveals nothing concerning the surveillance of persons
meeting "Joe's" description that would bolster the CI's otherwise
conclusory statement that "Joe" lived there.  For that matter,
the affidavit contains no indication of any other persons - other
than the CI - approaching or leaving 41 Weston St., or any
indication of prior criminal conduct at 41 Weston St. at all,
facts that might support the crucial link between drug
distribution and 41 Weston St.  See United States v. Vigeant, 176
F.3d 565, 574 & n.17 (1st Cir. 1999)(affiant should conduct
further investigation of tips where length of investigation
obviates need for the "hurried judgements").

Finally, the two purported controlled purchases are
insufficient to either independently establish probable cause, or
to corroborate the CI's statements that distribution was taking
place at 41 Weston St.  The First Circuit has noted the "several
common formalities" required to establish probable cause where
law enforcement employ a controlled buy.  United States v. Genao,
281 F.3d 305, 307 (1st Cir. 2002).  These include:

> searching the informant to make sure that he had no
> contraband prior to the purchase, watching him enter
> the building and leave it, then inspecting the

-9-

substance turned over by the informant after leaving
the apartment.

<u>Id.</u>  The procedure employed by McDonald in this case, when

measured against the <u>Genao</u> standard, was wholly inadequate.

McDonald averred that after supplying the CI with money he:

> observed CI#1 travel to 41 Weston Street, Brockton and
> enter the aforementioned address through the left side
> door.  After the controlled narcotics purchase this
> affiant met with CI#1 and CI#1 gave to this officer the
> narcotics (heroin) it purchased from "Joe."

SW Aff. ¶¶ 5, 7.  Absent from the affidavit was any mention of

surveillance documenting that the CI left the building and

directly traveled to McDonald's surveillance point.  Particularly

troubling is the utter lack of detail as to the scope of the

purchases, such as the amount of money supplied for the purchase,

the amount purchased, or the packaging of the drugs.  Without

these necessary procedural formalities and details, the issuing

judicial officer was left with insufficient support to conclude

that evidence of heroin distribution would be found at 41 Weston

St.

In determining whether a search warrant may issue, the

issuing judicial officer:

> must not only consider the accuracy and reliability of
> the historical facts related in the affidavits, but
> must determine, <u>inter alia</u>, whether the totality of the
> circumstances reasonably inferable from the affidavits
> demonstrates a 'fair probability' that evidence
> material to the 'commission' of the probable crime will
> be disclosed at the search premises at about the time
> the search warrant would issue.

United States v. Zayas-Diaz, 95 F.3d 105, 113 (1st Cir. 1996).
Here, the warrant application provided no probable cause to
believe that "Joe" or anyone else was engaging in a continuing
narcotics enterprise at 41 Weston St and that drugs and
associated property would be found there and thus evidence of the
seizures made as a result of the search warrant must be
suppressed.  In any event, as argued below, the search of 41
Weston St. rested on material omissions from the search warrant
application.

II. MATERIAL OMISSIONS IN THE WARRANT APPLICATION REQUIRE A
    FRANKS HEARING.

> [W]here the defendant makes a substantial preliminary
> showing that a false statement knowingly and
> intentionally, or with reckless disregard for the
> truth, was included by the affiant in the warrant
> affidavit, and if the allegedly false statement is
> necessary to the finding of probable cause, the Fourth
> Amendment requires that a hearing be held at the
> defendant's request.  In the event that at that hearing
> the allegation of perjury or reckless disregard is
> established by the defendant by a preponderance of the
> evidence, and, with the affidavit's false material set
> to one side, the affidavit's remaining content is
> insufficient to establish probable cause, the search
> warrant must be voided and the fruits of the search
> excluded to the same extent as if probable cause was
> lacking on the face of the affidavit.

Franks v. Delaware, 438 U.S. 154, 156 (1978).

In this case, the material omissions in the search warrant
affidavit include the following:

• McDonald misstated the fact that the CI never purchased

  heroin while at 41 Weston St., but rather accompanied

-11-

Handy when the two went looking to jointly purchase heroin.  <u>Compare</u> Affidavit of John Handy <u>with</u> SW Aff. ¶¶ 3, 5, & 7.

- McDonald neglected to disclose that the CI never ventured further than the kitchen area of the large, single family house.  <u>See</u> Affidavit of John Handy.

- McDonald neglected to disclose to the judicial officer that owner Shirrel Carrigan's "drug arraignments" were actually one arraignment from a single incident nearly 19 years before the date of the application, and that the other cited offenses were ancient and not drug-related.

- McDonald neglected to disclose (or recklessly failed to investigate the fact) that the subscriber address connected to the telephone number to which the CI made calls was not 41 Weston St. but rather a different address in Brockton.  <u>See</u> Exhibit C.

The above-described inaccuracies are material to a showing of probable cause.  The "controlled buys" are, of course, the most significant in terms of showing probable cause to believe that drugs will be found at 41 Weston Street.  The affidavits submitted by defendant in connection with what was <u>not</u> disclosed in the affidavit, however, demonstrate that the controlled buys were not made from Handy and certainly did not occur at 41 Weston

-12-

St.  In addition, this undercuts the inference urged by the
government in the affidavit that the surveillance described
corroborated the fact that "Joe" either lived or distributed
drugs from 41 Weston St.

Similarly, McDonald's failure to disclose that the CI had
only gone to 41 Weston St. twice and on those occasions never
ventured further than the kitchen area of what McDonald related
to be a "two and half story [sic] single family residential
dwelling . . . [with] three brick chimneys on the roof" undercuts
the affidavit's asserted inference that the CI had personal
knowledge that Handy was storing drugs and paraphernalia at the
address.  Such an omission further undercuts any support for
probable cause that evidence was likely to be found there.

To the extent Shirell Carrigan's convictions are relevant at
all - the convictions have no bearing whatsoever when the
investigation centered on a man named "Joe" with absolutely no
allegation of a female being involved - the date of the ancient
nature of any drug conduct by Carrigan, which occurred more than
nineteen years before the warrant application, cannot have any
logical bearing on the frequency or persistency of alleged drug-
dealing activities from 41 Weston St.  While recent activity at
41 Weston St. by Carrigan (as strongly suggested by the
deliberate omission of the age of the convictions) might have had
some relevance to the issue of whether indicia of drug

-13-

distribution might have been found there, the ancient nature renders any inference ludicrous.  Had the judicial officer been made aware, as he should have been through the affidavit, he necessarily would have discarded the information as irrelevant to the probable cause determination.  Without this allegation, the warrant affidavit fails to provide support probable cause to search 41 Weston St.

Finally, evidence either obtained by law enforcement or easily obtainable by them completely eviscerates any inference that evidence pertinent to drug distribution would be found at 41 Weston St.  Admittedly crucial to McDonald's assertion that "Joe" was distributing heroin from 41 Weston St. was that:

> CI#1 provided the cellular telephone number (774) 274-9820, which "Joe" uses to further his illegal narcotics distribution (heroin).  This affiant has corroborated this information by calling the telephone number and arranging for two controlled purchases of illegal narcotics (heroin).

SW Aff. ¶9(c).  But as McDonald knew or should have known, the subscriber address for the cellular telephone was actually a completely different address than 41 Weston St.  See Vigeant, supra, 176 F.3d at 572-73 & n.8 (failure to disclose material information casting doubt on reliability of informant was reckless and required suppression).  Such an omission - both independently and in conjunction with the other errors and omissions in an affidavit already lacking significant support for a search - is material in that the information went directly to

-14-

the issue of whether evidence of criminality would probably be found at 41 Weston St.

Given the seriousness and materiality of these omissions, defendant submits that all of the evidence discovered during the execution of the warrant must be suppressed.  At a minimum, defendant has made a substantial preliminary showing that the affidavit contains material omissions crucial to the issue of probable cause and the Court should schedule a <u>Franks</u> hearing to determine whether, in light of the omissions, the search warrant must be voided and the fruits of the search excluded.  <u>Franks</u>, <u>supra</u>, 438 U.S. at 156.

III. THE GOOD FAITH EXCEPTION DOES NOT APPLY

The omissions were either deliberate or in reckless disregard of the truth.  With respect to the controlled buy, Mr. Handy's denial that he gave any drugs to the CI at 41 Weston St. indicates that the crucial fact in the affidavit is an outright falsehood.  The affiant's description of Shirrel Carrigan's record appears to have been deliberately misleading.  After all, the affiant's review of the board of probation records would have revealed the arraignment dates for the prior cases.  The affiant surely had easy access to the police reports regarding those cases – all of which resulted from Boston Police arrests – and could easily have reviewed court records to ensure the accuracy of the information.  <u>Cf</u>. <u>United States v. Fuccillo</u>, 808 F.2d 173,

-15-

178 (1st Cir. 1987) (good faith exception does not apply where the police "were reckless in not including in the affidavit information which was known or easily accessible to them," or "simply did not take every step that could reasonably be expected of them").  The knowing or reckless omissions and misstatements require suppression because law enforcement actions preclude a finding of good faith.  United States v. Vigeant, 176 F.3d 565, 572-73 & n.8 (1st Cir. 1999) (holding that failure to disclose material information casting doubt on reliability of informant was reckless, precluded finding of good faith, and required suppression).

IV. EVEN ASSUMING, ARGUENDO, THE SEARCH WARRANT WAS VALID AND POLICE PROPERLY ENTERED 41 WESTON ST., SEIZURE OF THE GUN AND MAIL ADDRESSED TO HANDY WAS THE RESULT OF A SEARCH THAT EXCEEDED THE SCOPE AUTHORIZED BY THE WARRANT.

Search and seizure by police of an item that comes within plain view during an unrelated but otherwise lawful search requires that the police have probable cause to believe that the item in question is evidence of a crime or is contraband. Arizona v. Hicks, 480 U.S. 321, 326-27 (1987).  The government must show that the item was in plain view and that its "incriminating character" was "immediately apparent."  Horton v. California, 496 U.S. 128, 142 (1990).  Here, the government failed to prove either.

The search warrant, in summary, authorized the police to search for (1) heroin, (2) materials, products, and equipment

-16-

used in the distribution of heroin, and (3) books records, and monies related to the distribution of heroin.  The police seized a small amount of heroin with low purity consistent with personal use, but also seized, after a protracted search, a firearm and mail addressed to defendant.  The police thus treated the warrant as a general warrant.  See Andersen v. Maryland, 427 U.S. 463, 480 (1976).

Although the procedure used to search the dwelling is far from clear,[5] apparently the search quickly established that the only material authorized by the warrant was the single plastic baggie of heroin.  Nevertheless, the police continued an intensive search throughout the two and one-half story single family dwelling.  Only after this protracted and intensive search did police seize a firearm found in a utility access point under what is described as a "floorboard" in a second floor bedroom. See Exhibit G.  The gun, which itself was contained in a leather holster, was located far down next to a ventilation duct that ran between floors.  These circumstances do not give rise to probable cause to believe that the gun was evidence of a crime or that it was contraband.

---

[5] The only available documentation of the search is the Search Warrant Inventory (attached hereto as Exhibit F) and a cursory report by McDonald averring only that a search of 41 Weston St. revealed a single bag of heroin, a handgun under the floorboard in the bedroom, and miscellaneous paperwork in a bedroom drawer.

The police had no information that weapons were involved in the alleged transactions. Similarly, there was no information from the search that could indicate that the gun was connected to the crime being investigated. See, e.g., United States v. Garner, 338 F.3d 78, 81 (1st Cir. 2004)(firearm found secreted with illicit drug stash connected firearm to drug activity). Indeed, possession of the type and model of firearm found is not inherently illegal, and police had no information as to the possible owner of the weapon and thus no indication that it was possessed illegally. Cf. United States v. Weinherder, 109 F.3d 1327, 1330-31 (8th Cir. 1997)(where warrant authorized search for clothing, officer's discovery of an item that was immediately apparent to him to be a silencer that was per se illegal constituted probable cause to seize). Thus police lacked the probable cause necessary to immediately believe that the gun, holstered and well away from immediate reach of any of the occupants of the home, was contraband or evidence of a crime. United States v. Hamie, 165 F.3d 80, 83 (1st Cir. 1999) (incriminatory nature of item must be immediate; standard met when agent, who had information concerning defendant's participation in credit card fraud, discovered identification materials with defendant's pictures and different names).

-18-

In sum, seizure of the gun was outside of the warrant, unjustified by plain view principles requiring probable cause, and must therefore be suppressed.

The lack of any justification - let alone probable cause - for seizure of mail addressed to Handy is patent.  The mail consisted of bills and a court document unrelated to the commission of any crime at all and were not incriminating, immediately or otherwise.  The mail therefore must also be suppressed.  Hicks, supra, 480 U.S. at 326-27.

### CONCLUSION

For the foregoing reasons, defendant submits that the court should hold a Franks and/or suppression hearing, and suppress the fruits of the June 2, 2004 search.

### REQUEST FOR EVIDENTIARY HEARING

Defendant requests an evidentiary hearing on this motion.


By his attorney,


/s/ Timothy G. Watkins
Timothy G. Watkins
  B.B.O. #567992
Federal Defender Office
408 Atlantic Ave., 3rd Floor
Boston, MA  02110
Tel: 617-223-8061

-19-

<u>CERTIFICATE OF SERVICE</u>

    I, Timothy G. Watkins, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on April 5, 2006.


                /s/ Timothy G. Watkins
                Timothy G. Watkins

# EXHIBIT
# A

BROCKTON, SS.

ROCKTON DISTRICT COURT
DOCKET # 040526-kw-

102797

AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT
G.L. c. 276, ss, 1 to 7; St. 1964, c. 557

05/26/04

I, Edward T. McDonald, being duly sworn, depose and state that the following is true to the best of my knowledge and belief:

1.    I am a Massachusetts State Police Officer. I have been so employed since October of 1993. During my career as a State Police Officer, I have been assigned to both the Uniformed Branch, and the Bureau of Investigative Services. Presently, I am assigned to the narcotics section of the Plymouth County District Attorney's Office. My duties include but are not limited to the investigation of narcotics violations and offenses. Prior to becoming a state trooper I was employed by the Metropolitan Police Department, Washington D.C. from 1990 thru 1993. During my career as a law enforcement officer I have attended several narcotic seminars and courses. I have also been involved in approximately four hundred and seventy five narcotics arrests. I have had the opportunity to work with and be trained by more experienced officers in the investigation of major narcotics organizations.

2.    In the course of performing my duties as a police officer, I have been involved in narcotics purchases as an undercover police officer. I have participated in various aspects of narcotics investigations including controlled purchases, controlled deliveries, undercover purchases, rips and surveillance. As a result of my experience and training I am familiar with most aspects of the narcotic trade, the various means of negotiations, communication, and transportation as well as the appearance, packaging, texture and smell of certain narcotics. I am familiar

1

**004**

with the vernacular, and/or code words and terms, which sellers and users of narcotics use. As a police officer I have worked with members of the U.S. Alcohol Tobacco and Firearms, Federal Bureau of Investigation and U.S. Drug Enforcement Agency in cases involving narcotics and firearms offenses.

3.      During the Month of May 2004, this affiant met with a confidential reliable informant, hereinafter referred to as CI#1, regarding heroin distribution occurring within the City of Brockton. CI#1 is familiar with the packaging and distribution of heroin, having been involved in the purchasing and usage of heroin for the past several years. CI #1 advises that it can purchase heroin in the city of Brockton from a person known to it as "Joe". CI#1 states it would dial cellular telephone number (774) 274-9820 to make arrangements with "Joe" to purchase an amount of narcotics (heroin). Arrangements would then be made to meet at a public location within the City of Brockton or at "Joe's" residence of 41 Weston Street, Brockton, MA. CI#1 states it has been purchasing heroin from "Joe" for approximately one year. CI#1 states "Joe" lives at 41 Weston Street, Brockton. CI#1 describes "Joe" as a black male, approximately 30yrs. of age, 5'08 in height, 190 in weight, husky build, short brown hair, brown eyes.

4.      CI#1 has proven reliable in the past. During the months of February and March 2004, CI#1 provided this affiant with information concerning crack cocaine distribution by a Hispanic male known to it as "Little" within the City of Brockton. CI#1 conducted several controlled purchases of narcotics (crack cocaine) from "Little" for this affiant. This affiant identified "Little" as Jose A. Figueroa, DOB 08/04/83 and his co-conspirator Leisa A. Lorenzi, DOB 04/03/71. Figueroa and Lorenzi resided at 26 Short Street, Apartment B, Randolph, MA and dealt crack

2

**005**

cocaine daily within the city of Brockton. This officer sought and received search warrants from Brockton District Court for Lorenzi's 2000 Jeep Ma Registration 8240JI and their residence of 26 Short Street, Apartment B, Randolph, MA. Both search warrants were executed and seized were 102 twists of crack cocaine, two handguns, 140 rounds of ammunition, and $6568.00 in U.S. Currency. Figueroa and Lorenzi were placed under arrest and charged with 1) Possession with Intent to Distribute Class B Substance, 2) Conspiracy To Violate the Controlled Substance Act, 3) Drugs School Zone, 4) Unlawful Possession Firearm (two counts), 5) Unlawful Possession Ammunition. Both Figueroa and Lorenzi are currently awaiting trial in Brockton and Quincy District Courts.

5.      On or about May 22, 2004, CI#1 agreed to make a controlled purchase of heroin from "Joe" in the city of Brockton for this affiant. CI#1 was searched by this affiant and found to have no narcotics or monies on its person. This affiant gave CI#1 an amount of U.S. Currency to complete the narcotics transaction. CI#1 then dialed cellular telephone number (774) 274-9820 and made arrangements with "Joe" to purchase an amount of narcotics (heroin) for this affiant. This affiant conducted surveillance. This affiant observed CI#1 travel to 41 Weston Street, Brockton and enter the aforementioned address through the left side door. After the controlled narcotics purchase this affiant met with CI#1 and CI#1 gave to this officer the narcotics (heroin) it purchased from "Joe". At the Middleboro State Police Barrack the contraband was field tested with positive results for the presence of heroin.

6.      A check with Eastern Utilities Security reveals the only service at 41 Weston Street, Brockton to be in the name of Shirelle Carrigan with a listed

3

**006**

telephone number of (508) 894-2882, SSN# 010583150, and has had service since 05/02/03. A check with the Brockton Assessor's Office on 41 Weston Street, Brockton reveals the owner to be Shirelle Carrigan. Furthermore, the Brockton Assessor's Office lists 41 Weston Street, Brockton as a single family residential dwelling. A check with the Massachusetts Registry of Motor Vehicles on license number #010583150 reveals it to be listed to Shirelle Carrigan, DOB 11/05/63, SSN 010583150, of 229 Columbia Road, Apartment 4, Dorchester, MA. A check with the Massachusetts Board of Probation on Shirelle Carrigan, DOB 11/05/63, reveals 14 adult arraignments, two of which are narcotics offenses; 1) Possession With Intent To Distribute Class D and 2) Conspiracy To Violate Controlled Substance Act.

7.    On or about May 26, 2004, CI#1 agreed to make a controlled purchase of heroin from "Joe" in the city of Brockton for this affiant. CI#1 was searched by this affiant and found to have no narcotics or monies on its person. This affiant gave CI#1 an amount of U.S. Currency to complete the narcotics transaction. CI#1 then dialed cellular telephone number (774) 274-9820 and made arrangements with "Joe" to purchase an amount of narcotics (heroin) for this affiant. This affiant conducted surveillance. This affiant observed CI#1 travel to 41 Weston Street, Brockton and enter the aforementioned address through the left side door. After the controlled narcotics purchase this affiant met with CI#1 and CI#1 gave to this officer the narcotics (heroin) it purchased from "Joe". At the Middleboro State Police Barrack the contraband was field tested with positive results for the presence of heroin.

8.    Investigators know from prior narcotic investigations that drug dealer's

4                                                                                          **007**

activities concerning their illicit enterprise interconnect many aspects of their legitimate lives. These areas concern their primary residences, motor vehicles, electronic communications (beepers, cellular telephones, faxes, computers) and assorted personal identification needed to maintain legitimacy. Drug dealers will often times provide false information concerning rental agreements, motor vehicle registrations, licenses, birth certificates, telephone numbers, family members, place of birth and social security numbers. Drug dealers often times maintain a primary and secondary residence to secrete their drugs and its proceeds. At these residences drug dealers also maintain records of drug quantities and monies owed or received from sales. These records are often referred to as "cuff sheets". Drug dealers alternate locations regularly where the drugs and proceeds are kept. Drug dealers utilize an assortment of motor vehicles, some equipped with after market hides to secrete drugs, registered to parties other than themselves, and often times utilize rental vehicles to further their illicit enterprise. During this target investigation we have identified many of these stated facts to be true. To complete a thorough investigation of a drug dealers activities investigators know that often times what appears to be legitimate is a camouflage to frustrate law enforcements investigative efforts. Whether intentional or not a drug dealer creates a nexus that envelopes his entire structural existence.

9.    It is this affiant's opinion that "Joe" is engaged in a continuing narcotics enterprise (heroin). This opinion is based on the following;

a.    CI#1 provided information to this affiant that "Joe" has an ongoing narcotics (heroin) enterprise and it states it has purchased heroin from "Joe" in the past and no requests have been denied.

b.    CI#1 was able to arrange for two controlled purchases of narcotics (heroin) from "Joe". Both of which were conducted inside of 41 Weston Street, Brockton,

5                                                                                                    **008**

MA.

c.    CI#1 provided the cellular telephone number (774) 274-9820, which "Joe" uses to further his illegal narcotics distribution (heroin). This affiant has corroborated this information by calling the telephone number and arranging for two controlled purchases of illegal narcotics (heroin).

d.    The controlled purchases made by CI#1 are consistent with the descriptive qualities of narcotics, how they are packaged and presented for distribution. This officer is familiar with the descriptive qualities of narcotics (heroin) from previous training, experience and undercover purchases.

e.    It is this affiant's opinion that the primary residence and distribution point of "Joe's" narcotics (heroin) is 41 Weston Street, Brockton, Massachusetts. This opinion is based on information provided by CI#1 and the completion of two controlled purchases of narcotics (heroin) at the aforementioned location.

10.    Based upon the foregoing reliable information, and upon my personal knowledge and belief and attached affidavits, there is probable cause to believe that the property hereinafter described (has been stolen, or is being concealed, etc.) Heroin a class "A" substance, in Violation of Chapter 94C, Section 32, M.G.L.A. and may be found in the possession of "Joe" or any other person present who may be found to have such property on his or her person or under his or her control located at 41 Weston Street, Brockton, Massachusetts.

11.    The property for which I seek the issuance of a search warrant is the following: Heroin a Class "A" substance, all controlled substances which have been manufactured, delivered, distributed, dispensed or acquired in violation of Chapter 94C, M.G.L.A. All materials, products, and equipment of any kind which are used, or intended for use, in manufacturing, compounding, processing,

**009**

delivering, dispensing, distributing, importing, or exporting any controlled substance in violation of Chapter 94C, M.G.L.A. All books, records and moneys, computers, disks, floppy discs, used or intended for use in the procurement, manufacture, compounding, processing, delivery or distribution.

12.     Wherefore, I respectfully request that the court issue a warrant and order seizure, authorizing the search of 41 Weston Street, Brockton, Massachusetts which is more particularly described as a two and half story single family residential dwelling, wooden shingle siding, peach in color having white trim with a gray asphalt colored gambrel roof. On the top sides of the house the shingles have faded to a natural wood color. There are three brick chimneys on the roof. If standing on Weston Street facing the building there is a driveway to the right side of the house. If you go down the driveway there is a set of stairs that lead to a wooden porch which lead to a wooden door. The part of the house that faces Weston Street does not have a door, the first floor has two bay windows and the second floor has three windows and to the right side there is a carousel style wooden porch, in front of this porch on the lawn there is a white mailbox with the number #41 on it. On the left side of the house there is a concrete walkway that leads to a white wooden door with glass windows, once inside this door there is another door to the left, this is the door we seek access and directing that if such property or evidence or any part there of be found that it be seized and brought before the BROCKTON DISTRICT Court, together with such other and further relief that the court may deem proper.

**010**

7

Edward T. McDonald
MASSACHUSETTS STATE POLICE

Then personally appeared the above named Edward T. McDonald and made oath
that the foregoing by him subscribed is true.

Before me,

# EXHIBIT
# B

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, SS.

BROCKTON DISTRICT COURT
BROCKTON MASSACHUSETTS
DOCKET #    040526KML-1

To the sheriffs of our several counties,
or their deputies, any State Police Officer,
or any Constable or Police Officer of any
city or town within our said Commonwealth

Proof by affidavit having been made this day before me, the undersigned _____Kevin M. Leach_____ by Edward T. McDonald, a State Police Officer assigned to the Office of the Plymouth County District Attorney, that there is probable cause for believing that certain property is unlawfully possessed or kept or concealed for an unlawful purpose.

We therefore command you at any time of the day or night to make an immediate search of: 41 Weston Street, Brockton, Massachusetts which is more particularly described as a two and half story single family residential dwelling, wooden shingle siding, peach in color having white trim with a gray asphalt colored gambrel roof. On the top sides of the house the shingles have faded to a natural wood color. There are three brick chimneys on the roof. If standing on Weston Street facing the building there is a driveway to the right side of the house. If you go down the driveway there is a set of stairs that lead to a wooden porch which lead to a wooden door. The part of the house that faces Weston Street does not have a door, the first floor has two bay windows and the second floor has three windows and to the right side there is a carousel style wooden porch, in front of this porch on the lawn there is a white mailbox with the number #41 on it. On the left side of the house there is a concrete walkway that leads to a white wooden door with glass windows, once inside this door there is another door to the left, this is the door we seek access, occupied by "Joe" and of any person present who may be found to have such property on his person or under his control or to whom such property may have been delivered, for the following property: heroin, a class A substance and all controlled substances which have been manufactured, delivered, distributed, dispensed or acquired in violation of Chapter 94C, M.G.L.A. All materials, products, and equipment of any kind which are used, or intended for use, in manufacturing, compounding, processing, delivering, dispensing, distributing, importing, or exporting any controlled substance in violation of Chapter 94C, M.G.L.A. All books, records and monies used or intended for use in the procurement, manufacture, compounding, processing, delivery or distribution of any controlled substance in violation of Chapter 94C, M.G.L.A. All money which is the proceeds of the sale of any controlled substance, and if you find any such property or any part thereof to bring it and the persons in whose possession it is found before the BROCKTON DISTRICT COURT at said BROCKTON, in said County and Commonwealth, as soon as it has been served and in any event not later than seven days of issuance thereof.

Witness, DAVID G. NAGLE, Esquire First Justice, at BROCKTON aforesaid this 26th day of May, 2004.

_Kevin M. Leach_

Assistant Clerk Magistrate

**003**

# EXHIBIT
# D

# Sprint.

**Sprint PCS®**

## Billing Information

www.sprintpcs.com

| Customer | Account Number | Invoice Period | Invoice Date | Page |
|----------|---------------|----------------|--------------|------|
| **JOHN HANDY** | 0156902706-6 | Apr. 27 - May 26 | May 28, 2004 | 1 of 5 |

| | | |
|---|---|---|
| Previous Balance | $49.91 | **Retain For Your Records** |
| Total Payments | - 195.00 | |
| Total Current Charges | 397.34 | Check Number |
| **Amount Due Upon Receipt** | **$252.25** | Date |
| Amount Due if Received After Jun. 23, 2004 | **$264.86** | Amount Paid $ |

**Access a variety of convenient services when you dial 411 on your Sprint PCS Phone.**
Let Sprint PCS Directory Assistance simplify your life. Get phone numbers, theatre locations,
driving directions, local event information and more. For only $1.25 per call, plus airtime, get up
to three phone numbers or requests answered and get connected to a number at no additional charge.

**Get up to 50 Bonus Minutes each month with Sprint 50 at Home.**
Receive up to 50 Bonus minutes of domestic Sprint Long Distance on your home phone every month.
Each additional minute for state to state calling is only 7 cents. Sign up for Sprint 50 at Home by
calling 1-888-847-4035 or visit www.sprint.com/bmessage today!

**Sign up for Online Invoicing today.**
Reduce your mail at home by receiving your invoice online. Enroll by signing on to sprintpcs.com.
Click on "My Invoice & Payment", then on "Invoices", at Online Invoice click "Enroll". Each month
you'll receive an email when your invoice is ready to review. It's easy, and saves time and hassle.

## www.sprintpcs.com

You may connect with PCS Customer Solutions by pressing *2 on your PCS phone, *3 to make a one-time
payment on your account, or *4 to receive automated account information and change your invoice format.
Additional assistance is available by dialing **1-888-211-4727**.

---

Detach and return this remittance form with your payment.
Make check or money order payable to **Sprint** in U.S. dollars.

Do not send cash.

H003

# Sprint.

**Sprint PCS °**

**Account Number: 0156902706-6**

☐ Check box for change of address (see reverse)

| Amount Due | Amount Enclosed |
|---|---|
| $252.25 | $ |

#BWNGMZW ****AUTO**3-DIGIT 023
#0156902706 6#

0001067B 1 AT  0.292 02  51

JOHN HANDY
18 PROSPECT AVE
BROCKTON MA 02301-3326

**SPRINT**
P O BOX 1769
NEWARK NJ 07101-1769

8  B0SBRT75  0156902706b  B0000252256  b

# EXHIBIT
# E

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 02-10067-NG |
| | ) | |
| JOHN HANDY | ) | |

AFFIDAVIT OF JOHN HANDY IN SUPPORT OF
<u>MOTION TO SUPPRESS</u>

I, John Handy, having been previously sworn, do hereby

depose and state the following:

1.  I am the defendant in the above-entitled matter.

2.  I have reviewed documents provided to me by my
    attorney, including the search warrant affidavit used
    to obtain the search warrant authorizing a search of 41
    Weston St. in Brockton.

3.  I recognize the person called CI#1 in the search
    warrant.  I knew him by the name "Scott."  I first met
    him in late 2003.  He would hang out at a park at Main
    and Pleasant Sts. in Brockton where people would go to
    get drugs.

4.  I knew that Scott was addicted to heroin and I confided
    in him that I was also addicted to heroin.

5.  Scott would contact me sometimes to put our money
    together to buy heroin.  We would either see each
    other in the park or he would call me on my cell
    telephone.  If he called on the telephone, I would go
    meet him at the park or somewhere else in Brockton.  We
    would then go looking for heroin, sometimes from
    someone the Scott knew and sometimes from someone I
    knew.

6.  I never bought, sold, or traded heroin at 41 Weston St.

7.  I can recall only two times when Scott met me at 41
    Weston St.  On one of those occasions he went inside to
    the kitchen for just a minute before we left to go find

heroin.  On the other occasion he came into the kitchen and gave me a small amount of heroin that he had purchased for me.  I did not give heroin to him on either of these days nor did I give him drugs on any other occasion at 41 Weston St.

8.    The police handcuffed me and held me in the downstairs area of 41 Weston St. for a long period of time. Eventually, police showed me a gun that they said they had found in the house.  I was then taken to the Brockton Police station.

9.    I make this statement pursuant to the protections afforded by United States v. Simmons, 390 U. S. 377(1968).

Signed under pains and penalties of perjury this 3ṇọday of April, 2006.

John Handy

John Handy

# EXHIBIT
# F

*JACK ORTH* *12-2-87*
*CARRIGAN*

## MASSACHUSETTS STATE POLICE
### HAMPSHIRE/FRANKLIN NARCOTICS

013

*3  94c*

To:                Supplement to CS#

From:              Trooper                                      *UN POSS*

Subject:           Inventory of property seized pursuant to Search Warrant

Defendant(s):      *HANDY, JOHN H   04/04/63*

Location:          *41 WESTON ST*

Date & Time:       *06/03/04 , 1845HRS*

| CS#: | | Location: | |
|---|---|---|---|
| Item# | Description of Evidence | Location of Evidence | Evidence found by |
| 1 | 1 TWIST OF HEROIN | 2ND FL HALLWAY | TPR ARROYO |
| 2 | FIREARM SMITH & WESSON 38 SPECIAL (K182972) | UNDER FLOOR BOARD IN HANDY'S BEDROOM | DET KHOURY |
| 3 | PAPERWORK IN NAME OF JOHN HANDY | HANDY'S BEDROOM DRAWER | TPR COLEMAN/KEATING |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

# EXHIBIT G

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA           )
                                   )
            v.                     )     CRIMINAL NO. 02-10067-NG
                                   )
JOHN HANDY                         )

AFFIDAVIT OF KEVIN RICKEL IN SUPPORT OF
MOTION TO SUPPRESS

I, Kevin Rickel, having been previously sworn, do hereby

depose and state the following:

1.   I am an investigator for the Federal Public Defender
     Office for the District of Massachusetts.

2.   On September 7, 2005 I was directed to take pictures at
     41 Weston St. in Brockton.

3.   The attached pictures were taken of an opening in the
     floor of a bedroom on the second floor.

4.   The first picture is of the covered opening as it was
     when I initially observed it.

5.   The second picture is of the opening after the cover
     was removed and displays the inside of the opening
     looking down upon it.

Signed under pains and penalties of perjury this *5th* day of

April, 2006.

_____
Kevin Rickel





# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

## CLERK'S NOTICE

The image of this document is not viewable because it is either SEALED or filed EX PARTE.