UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                  )
UNITED STATES OF AMERICA          )
                                  )    CRIMINAL NO. 04-10361-NG
          v.                      )
                                  )
JOHN HANDY                        )
```

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION FOR A FRANKS HEARING AND MOTION TO SUPPRESS**

The United States of America, by and through its attorneys, Michael J. Sullivan, United States Attorney, and Antoinette E.M. Leoney, Assistant United States Attorney, submits this memorandum in opposition to a motion filed by Defendant John Handy ("Handy") for a Franks hearing and to suppress fruits of the search conducted at 41 Weston Street, Brockton, Massachusetts on June 2, 2004.

As grounds for his motion, Handy argues that the search warrant application failed to establish probable cause to search 41 Weston Street, that the search warrant application contained material omissions, that any good faith exception does not apply and that seizure of a firearm and mail addressed to Handy at 41 Weston Street was the result of a search that exceeded the scope of that authorized by the search warrant. (See Def.'s Motion at 1). As demonstrated below, these arguments are without merit, and as such, Handy's motion should be denied. To be certain, the search warrant application did establish probable cause to search 41 Weston Street. Handy has failed to demonstrate any basis for a Franks hearing, inasmuch as Handy has not made, nor can he, a

substantial preliminary showing that the warrant application
contained material omissions, either intentionally or with
reckless disregard for the truth.  Handy has failed to show that
the alleged omissions were material to a finding of probable
cause.  And, contrary to Handy's claims, seizure of a firearm and
mail addressed to Handy did not exceed the scope of that
authorized by the search warrant.

<div align="center">FACTUAL BACKGROUND[1]</div>

In May, 2004, Massachusetts State Police Trooper Edward
McDonald received information from a reliable confidential
informant ("CI") that an individual named "Joe" was selling
heroin in the City of Brockton.  (See Exhibit A).  Based upon the
CI's information and the two controlled drug purchases, Trooper
McDonald applied for and received a state search warrant for 41
Weston Street, Brockton, MA.

In his affidavit in support of the search warrant, Trooper
McDonald detailed a meeting with the CI regarding heroin
distribution occurring within the City of Brockton.  Id.  Having
been involved in the purchasing and usage of heroin for several
years, the CI was generally knowledgeable about the packaging and
distribution of heroin.  Id.  Trooper McDonald knew the CI

---

[1] The factual summary is based on the attached exhibits,
which are denoted here as Exhibits A through E.  The government
also anticipates that these facts will be elicited at any *Franks*/
Suppression hearing, as well as, at trial.

because the CI had provided Trooper McDonald with information
concerning crack cocaine distribution by a Hispanic male known as
"Little" within the City of Brockton in February and March of
2004.  Id.  The CI's information led to several controlled
purchases, identification of Jose A. Figueroa and his co-
conspirator Leisa A. Lorenzi and the issuance of search warrants
for Figueroa and Lorenzi's car and shared residence.  Id.
Searches executed pursuant to the warrants resulted in seizure of
102 twists of crack cocaine, two handguns, 140 rounds of
ammunition, and $ 6,568.00 in U.S. currency.  Id.  Both Figueroa
and Lorenzi were arrested and charged with possession with the
intent to distribute a Class B substance, conspiracy to violate
the Controlled Substance Act, drugs in a school zone, unlawful
possession of firearm (two counts) and unlawful possession of
ammunition and at the time of Trooper McDonald's affidavit here,
were awaiting trial.  Id.  As a result, Trooper McDonald knew the
CI to be a reliable confidential informant.  Id.

    Here, the CI advised Trooper McDonald that heroin could be
purchased from a person known as "Joe."  Id.  The CI described
"Joe" as a black male, approximately 30 years of age, 5 feet and
8 inches tall and 190 pounds.  Id.  The CI further described
"Joe" as having a husky build, short brown hair and brown eyes.
Id.  Familiar with "Joe" as a result of having purchased heroin
from him for approximately one year, the CI provided Trooper

3

McDonald with the details of how such transactions normally took place. Id. For instance, the CI indicated that he called "Joe" at the cellular phone number (774) 274-9820 when he wished to purchase heroin. Id. By calling him at this number, the CI could make arrangements with "Joe" to meet at a public location within the City of Brockton or at "Joe's" residence, at 41 Weston Street, in order to purchase heroin. Id.

In order to corroborate the information provided by the CI, Trooper McDonald arranged for the CI to make two controlled purchases of heroin from "Joe". Id.

On May 22, 2004, the CI called "Joe" to arrange for the purchase of heroin. Id. Prior to the purchase, and in accordance with department procedure, the CI was searched and found to have no narcotics or money on his person. Id. The CI was then given money in order to purchase heroin from "Joe." Id. The CI then traveled to 41 Weston Street under law enforcement surveillance. Id. The CI was observed entering the building though the left side door. Id. Upon leaving the dwelling, the CI met with Trooper McDonald and gave them the heroin that the CI had just purchased. Id. The substance was field tested and found to be heroin.

After observing the CI complete one controlled buy at 41 Weston Street, Trooper McDonald checked with Eastern Utilities Security to ascertain who owned the dwelling. Id. This inquiry

4

revealed that services provided to that address were in the name of Shirrel Carrigan ("Carrigan") and associated with telephone number (508) 894-2882.  Id.  Trooper McDonald also inquired with the Brockton Assessor's Office as to whom the dwelling belonged.  Id.  This inquiry revealed the owner of the single family residential dwelling to be Carrigan.  Id.  The Massachusetts Registry of Motor Vehicles provided Carrigan's license number, her social security number, her date of birth and her address of record as 229 Columbia Road, Apartment 4, Dorchester, MA.  Id.  Trooper McDonald's final inquiry with the Massachusett's Board of Probation revealed that Carrigan had fourteen adult arraignments, two of which were for narcotics offenses: (1) Possession With Intent To Distribute Class D and (2) Conspiracy To Violate Controlled Substance Act.  Id.

Four days later, on May 26, 2004, Trooper McDonald arranged for the CI to make another controlled purchase from "Joe".  Id.  This controlled purchase was conducted in conformity with the first purchase completed on May 22, 2004.  Id.  Subsequently, based on the information provided by the CI, the two controlled drug purchases, and in conjunction with the personal knowledge Trooper McDonald had obtained in the course of performing his duties, Trooper McDonald formed the opinion that "Joe" was engaged in a continuing narcotics enterprise distributing heroin at 41 Weston Street.  Id.  Suffice it to say, Trooper McDonald

believed that there was probable cause to believe that heroin, a Class A substance, would be found in the possession of "Joe" and/or any other person present at 41 Weston Street.  Id.  With that, Trooper McDonald sought and obtained a search warrant for:

> "Heroin a Class "A" substance, all controlled substances which have been manufactured, delivered, distributed, dispensed or acquired in violation of Chapter 94C, M.G.L.A.  All materials, products, and equipment of any kind which are used, or intended for use, in manufacturing, compounding, processing, delivering, dispensing, distributing, importing, or exporting any controlled substance in violation of Chapter 94C, M.G.L.A.  All books, records and moneys, computer disks, floppy discs, used or intended for use in the procurement, manufacture, compounding, processing, delivery or distribution."

As evidenced by the search warrant application, Trooper McDonald tailored his request to 41 Weston Street, a two and a half story single family residential dwelling with peach wooden shingle siding with white trim, a gray asphalt colored gambrel roof and three brick chimneys.  Id.  Trooper McDonald went so far as to detail the fading on the top side shingles.  Id.  The description also included other physical markers such as a driveway to the right of the house, a cement walkway to the left, a porch and a mailbox marked with the number 41, as well as other details describing the outside of the house and the points of entry.  Id.

Upon issuance of the search warrant, Trooper McDonald, with the assistance of other Massachusetts State Troopers and Brockton Police Officers, executed the search warrant.  (See Exhibit B).

On June 2, 2004, at approximately 6:45 p.m., the officers knocked and announced their presence at 41 Weston Street.  Id.  When no one answered the door, the officers made a forceful entry into the dwelling to conduct the search.  Id.  In a short span of time, the officers found one plastic bag containing a tan substance, suspected of being heroin, in the second floor hallway, one fully loaded Smith and Wesson .38 caliber special handgun under the floor board in a bedroom, and miscellaneous paperwork and mail addressed to John Handy at 41 Weston Street in a drawer in the same bedroom where the gun was found.  (See Exhibit A.).  Handy was immediately placed under arrest, advised of his Miranda rights and transported to the Brockton Police Department.  Id.  At 8:02 p.m., that same evening, Handy was booked and charged with possession of a Class A substance, unlicensed possession of ammunition and unlicensed possession of a firearm.  (See Exhibit C).

<div align="center">ARGUMENT</div>

I.    THE SEARCH WARRANT ESTABLISHES SUFFICIENT PROBABLE CAUSE TO
      SEARCH 41 WESTON STREET

Handy advances first the argument that the warrant application is insufficient to establish probable cause as grounds to search 41 Weston Street.  (See Def.'s Motion at 6).  He supports this argument with a number of allegations which include: (1) that the description of 41 Weston Street was lacking in detail, (2) that there was a lack of any meaningful

<div align="center">7</div>

independent corroboration of the drug activity taking place at 41
Weston Street, (3) that the controlled purchases made by the CI
were lacking in formality.  Id. at 6-11.

    While the government strongly objects to and refutes these
allegations below, the government is in agreement with Handy
inasmuch as

> "[a] warrant application must demonstrate probable
> cause to believe that (1) a crime has been committed-
> the 'commission' element, and (2) enumerated evidence
> of the offense will be found at the place to be
> searched-the so-called 'nexus' element."

United States v. Feliz, 182 F.3d 82, 86 (1st Cir. 1999)(citing
United States v. Zayas-Diaz, 95 F.3d 105, 111 (1st Cir. 1996).
In determining whether probable cause exists, a magistrate is
charged with making a "practical, common-sense decision whether,
given all of the circumstances set forth in the affidavit...there
is a fair probability that contraband or evidence of a crime will
be found in a particular place."  Feliz, 182 F.3d at 86 (quoting
Illinois v. Gates, 462 U.S. 213, 238 (1983)).  The facts
presented need only warrant a man of reasonable caution to
believe that evidence of a crime will be found in order to
establish probable cause.  See Feliz, 182 F.3d at 86 (quoting
Texas v. Brown, 460 U.S. 730, 742 (1983)).  The probable cause
standard does not require any showing that such a belief is
correct or more likely true than false.  Id.  To be certain,
where a warrant application hinges on information from a

confidential informant, the affidavit which accompanies the
search warrant application must provide some information upon
which the issuing judge can assess the credibility of the
information offered by the informant.  United States v. Barnard,
299 F.3d 90, 93 (1st Cir. 2002).  In fact, the First Circuit has
articulated a non-exhaustive list of factors that a reviewing
court will consider in making a determination of whether
information from an informant established probable cause.  These
factors include:

> "whether an affidavit supports the probable veracity or
> basis of knowledge of persons supplying the hearsay
> information; whether informant statements are self-
> authenticating; whether some or all of the informant's
> factual statements were corroborated wherever reasonable and
> practicable ...; and whether a law enforcement affiant
> included a professional assessment of the probable
> significance of the facts related by the informant based on
> experience or expertise."

Barnard, 99 F.3d at 93 (quoting United States v. Khounsavanh, 113
F.3d 279, 284 (1st Cir. 1997)); see also Zayas-Diaz, 95 F.3d at
111.  As none of the factors is indispensable, stronger evidence
of one or more factors can overcome factors which are weak or
deficient in comparison.  Zayas-Diaz, 95 F.3d at 111.

In the instant case, Trooper McDonald does not merely assert
that the CI is reliable, as such an assertion would be entitled
to only slight weight.  See Barnard, 99 F.3d at 93; Khounsavanh,
113 F.3d at 286.  Here, Trooper McDonald provided information in
the affidavit which supported his assertion of the CI's

9

reliability, namely that the CI had provided information regarding narcotics distribution in the City of Brockton once before.  That information was both reliable and correct, as it served as the basis for conducting an investigation which resulted in a search for contraband, seizure of said contraband and the arrest of those acting in violation of the law.

Information which indicates first hand knowledge, rather than hearsay, may bolster the informant's basis of knowledge and the credibility of an informant.  See Barnard, 99 F.3d at 93; United States v. Taylor, 985 F.2d 3, 6 (1st Cir. 1993).  Here, the Trooper McDonald's affidavit shows that the CI detailed nothing but first hand knowledge, and certainly more than innocent details, of his dealings with "Joe" over the course of an entire year prior to making any statement or providing any information to the police.  It is true that "veracity may be shown by very specificity and detail" of informant's "first hand description of the place to be searched or the items to be seized."  Taylor, 985 F.2d at 7.  However, the government maintains that the first hand knowledge it supplies in satisfaction of this factor is far more probative than any description of the interior of 41 Weston Street that the CI might have provided.

As to corroboration, the First Circuit requires that the court be confident that the "likelihood of the lying or an

10

inaccurate informant is sufficiently reduced by corroborated facts and observation." Barnard, 99 F.3d at 94; see Khounsavanh, 113 F.3d at 284. In order to substantiate the information provided by the CI, Trooper McDonald orchestrated and observed two controlled purchases. These purchases were made in keeping with information provided by the CI. The CI would call "Joe" on his cellular telephone, the two would arrange a time and place to meet in order to complete the transaction. Both times, as observed by Trooper McDonald, that place was 41 Weston Street and both times the CI returned from the controlled purchase with heroin. Handy's claim that the affidavit lacked any meaningful corroboration of the drug activity taking place at 41 Weston Street is just plain wrong. Where, as here, a CI under surveillance entered the premises alleged for the purpose of purchasing heroin and returned to the officers with heroin, circumstances certainly indicate that drug activity was taking place at 41 Weston Street. (See Exhibit A). The standard for corroborating a CI's information is clearly set forth above and it is disingenuous to imply, as Handy does, that Barnard requires cross-corroboration. Furthermore, however troubling the "utter lack of detail as to the scope of the purchases" may be to Handy, the affidavit sufficiently describes the heroin obtained as consistent with qualities of narcotics, including packaging and presentation. It is the government's view that the two

controlled purchases documented in the affidavit conformed to those common formalities required to establish probable cause.

Finally, without a doubt, the issuing justice may credit the law enforcement affiant's experience and pertinent expertise in evaluating the authenticity of the informant's description. <u>See</u> <u>Barnard</u>, 99 F.3d at 95; <u>Taylor</u> 985 F.2d at 6.  As discussed in <u>United States v. Ortiz</u>, "[o]fficers are entitled to draw reasonable inferences from facts in light of their knowledge of the area and their prior experience." 422 U.S. 891 at 897 (1975).  Here, Trooper McDonald attested that during his fourteen years of service as a police officer, he had prior experience investigating narcotics violations and offenses.  At the time of his application for the search warrant in this case, Trooper McDonald had been involved in approximately 475 narcotics arrests.  (<u>See</u> Exhibit A).  He had had the opportunity not only to work with and be trained by more experienced officers in the investigation of major narcotics organizations, but to attend several narcotics seminars and courses.  <u>Id</u>.  In the eyes of an issuing justice, these statements would likely have boosted the reliability of the CI's information that Handy was distributing heroin from 41 Weston Street.

Having examined the instant case against the four factors articulated in <u>Barnard</u>, it is clear that Handy's allegations fall short of establishing that the warrant application is

insufficient to establish probable cause as grounds to search 41 Weston Street.  Given the government's satisfaction of all four factors, taken together, is sufficient to give the issuing justice a substantial basis upon which to conclude that there was a fair probability that Handy was distributing heroin from 41 Weston Street.  See Barnard, 99 F.3d at 95; Khounsavanh, 113 F.3d at 286 (citing Gates, 462 U.S. at 238).

II.  A FRANKS HEARING IS NOT REQUIRED, AS THERE ARE NO MATERIAL OMISSIONS IN THE WARRANT APPLICATION

Handy argues next that a Franks hearing is required because the search warrant affidavit contained material omissions relating to (1) the confidential informant's purchase of heroin at 41 Weston Street, (2) the confidential informant's knowledge of the interior of 41 Weston Street, (3) the nature of owner Carrigan's offenses and (4) the telephone number to which the confidential informant made calls.  (See Def.'s Motion at 11-12).

To establish that an evidentiary hearing is necessary Handy must make a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and ... is necessary to the finding of probable cause."  Franks v. Delaware, 438 U.S. 154, 154-56 (1978).  In evaluating whether an evidentiary hearing is necessary when a defendant challenges the validity of a warrant affidavit, courts begin with the presumption that the affidavit submitted in

13

support of a search warrant application is valid. Id. at 171;
see also United States v. Grant, 218 F.3d 72, 77 (1st Cir. 2000).

In order to prevail, Handy must point specifically to a
portion of the warrant that is claimed to be false, provide a
statement of supporting reasoning and furnish affidavits or sworn
or otherwise reliable statements of witnesses. Id. at 172.
However, if these requirements are met but there remains
sufficient content in the warrant affidavit to support a finding
of probable cause, no hearing is required. Id. Here, Handy has
not made a substantial showing that Trooper McDonald's affidavit
contained material omissions made intentionally or with reckless
disregard for the truth, and as such, a Franks hearing is not
justified.

Handy first alleges that the confidential informant never
purchased heroin while at 41 Weston Street, but rather
accompanied Handy when the two went looking to jointly purchase
heroin and that Trooper McDonald misstated this fact in his
affidavit in support of the search warrant application.  The only
proof offered in support of this claim is Handy's own account of
his interaction with the CI.  As such, the claim simply is not
credible.  Where Trooper McDonald arranged for the CI to make two
controlled purchases and followed appropriate procedures, the
government has provided substantial proof that Handy, on at least
two occasions, actually dealt narcotics from 41 Weston Street.

14

Handy's second complaint with regard to Trooper McDonald's affidavit in support of the search warrant application is that Trooper McDonald neglected to disclose that the CI never ventured further than the kitchen area of the large, single family house. Trooper McDonald does not disclose this information because he does not subscribe to Handy's version of events.  Moreover, as discussed in great detail above, information regarding the interior of the house is clearly not necessary to establish probable cause when corroborating information provided by a confidential informant.

Handy next avers that Trooper McDonald neglected to disclose to the judicial officer that Carrigan's drug arraignments were actually one arraignment from a single incident nearly nineteen years before, and that other cited offenses were ancient and not drug related.  However, there was absolutely no duty on the part of Trooper McDonald to characterize Carrigan's cited offenses one way or another because Carrigan was not the subject of the drug deals.  "Joe" was.  To be sure, Trooper McDonald was being nothing less than fulsome in including information resulting from an investigation as to the owner of the dwelling located at 41 Weston Street.  Because Handy has failed to show that this alleged "omission" was either deliberate, in reckless disregard of the truth or at the very least misleading, the government does not address Handy's argument that the good faith exception does

not apply.

Lastly, Handy's claim that Trooper McDonald neglected to disclose or recklessly failed to investigate the fact that the subscriber address connected to the telephone number to which the CI made the calls was not 41 Weston Street is also irrelevant. Regardless of the subscriber address associated with the cellular phone to which the CI made calls, it was used to arrange meeting times and places for the purpose of distributing heroin. Again, the place agreed upon between the CI and "Joe" for each controlled purchase was 41 Weston Street. Notwithstanding, it is also not uncommon for people to have cellular phones not subscribed to an address or location where they reside or are staying as a guest. After all, cellular phones are mobile in nature. Further, Handy's apparent attempt to persuade the Court that he did not reside at 41 Weston Street is derailed by the fact that in 1999 Handy actually listed his home address Brockton District Court records as 41 Weston Street, Brockton, MA. (See Exhibit E). So clearly, Handy had had a long time association with that address prior to the controlled drug purchases that took place at that address in May of 2004.

Regardless of the foregoing argument, this court need not even decide whether the alleged misrepresentations and omissions were made either knowingly or recklessly because even had the affidavit been revised to reflect the misrepresentations and

omissions of which Handy complains, there would nevertheless have been probable cause to issue the warrant.  See United States v. Spinosa, 982 F.2d 620 (1st Cir. 1992).

III. THE SEARCH THAT RESULTED IN THE SEIZURE OF A FIREARM AND MAIL ADDRESSED TO HANDY WAS WITHIN THE SCOPE AUTHORIZED BY THE SEARCH WARRANT AND IS ADMISSIBLE

Handy posits that even if there was probable cause, that the seizure of a firearm and the mail addressed to him at 41 Weston Street exceeded the scope of the search authorized by the warrant and should therefore be suppressed.  (See Def.'s Motion at 16). The warrant did authorize a search for and the seizure of

> "all materials, products, and equipment of any kind
> which are used, or intended for use, in manufacturing,
> compounding, processing, delivering, dispensing,
> distributing, importing, or exporting any controlled
> substance in violation of Chapter 94C, M.G.L.A."

Mass. Gen. Laws ch. 94C, § 32 (2006).  In United States v. Gilliard, the First Circuit found that "firearms are 'tools of the trade[,]'" in reference to the sale of narcotics. See Gilliard, 847 F.2d 21, 25 (1st Cir. 1988)(quoting United States v. Oates, 560 F.2d 45, 62 (2nd Cir. 1977).  Given this decision, the firearm and ammunition recovered from a utility access point is certainly equipment used, or intended for use in distributing heroin.  Thus, a search for and seizure of firearms and ammunition was within the scope of the warrant and the police had the probable cause necessary to immediately believe that the firearm and ammunition were contraband or evidence of a crime.

17

Assuming, arguendo, that the loaded firearm seized was not within the scope of the warrant, it, along with the paperwork and mail (which included mail from the Brockton Probation Department) addressed to Handy at 41 Weston Street (See Exhibit D), are admissible in light of the inevitable discovery exception. The officers who were already armed with a valid search warrant to search the premises for illegal drugs, would no doubt have discovered the loaded firearm during their search for drugs, and as such, would have been legally obligated to seize it as illegal contraband on premises where drug sales had taken place. The paperwork and mail are also included within this exception as proof of Handy's identity and the level of control or dominion Handy exercised over the room where the firearm and ammunition were found as this information would have been easily and necessarily ascertainable upon his arrest.

The purpose of the exclusionary rule is to deter law enforcement officers from violating a defendant's rights. See United States v. Capozzi, 347 F.3d 327, 332 (1st Cir. 2003). The inevitable discovery exception recognizes that, if the evidence would have been discovered lawfully, "the deterrence rationale has so little basis that the evidence should be received." United States v. Almeida, 434 F.3d 25, 28 (1st Cir. 2006)(quoting Nix v. Williams, 467 U.S. 431, 444 (1984)); see also United States v. Zapata, 18 F.3d 971, 978 (1st Cir. 1994)(evidence that

comes to light by unlawful means can nevertheless be used at
trial if it ineluctably would have been revealed in some other
lawful way, so long as the lawful means of discovery are
independent and would necessarily have been employed, discovery
by that means is in fact inevitable, and application of the
doctrine would not sully the prophylaxis of the Fourth
Amendment); United States v. Meade, 110 F.3d 190, 198 (1st Cir.
1997)(gun admissible even if defendant had begun to surrender to
illegal arrest because agent with probable cause to arrest
defendant arrive soon thereafter and would have found gun in
lawful search incident to arrest); United States v. Lang, 149
F.3d 1044, 1048 (9th Cir. 1998)(inevitable discovery doctrine
applied because officers, based on experience, would have checked
car engine for drugs); United States v. Jackson, 120 F.3d 1226,
1229 (11th Cir. 1997)(police did not exceed scope of warrant
authorizing seizure of cocaine when, after finding cocaine,
police continued to search and seized firearm).  In evaluating
inevitable discovery claims, the court must ask three questions:
first, whether the legal means by which the evidence would have
been discovered was truly independent; second, whether the use of
the legal means would have inevitably led to the discovery of the
evidence; and third, whether applying the inevitable discovery
rule would either provided an incentive for police misconduct or
significantly weaken constitutional protections.  See Almeida,

19

434 F.3d at 28; see also United States v. Pardue, 385 F.3d 101, 106 (1st Cir. 2004).

In the case at bar, the officers, who were already armed with a valid search warrant to search for illegal drugs, would no doubt have inevitably discovered the loaded firearm during their search for drugs.  The police also would have ascertained Handy's identity, as well as the level of control or dominion that Handy exercised over the room in which the loaded firearm was found through personal effects, paperwork and mail addressed to Handy at 41 Weston Street during their search for drugs.  Based on the officers' collective experience they would have no doubt looked inside drawers, closets, as well as compartments in the floor knowing that it is not uncommon for drug dealers to keep drugs, or other contraband, hidden.  Because the officers had already found a plastic bag containing heroin, it is clear that they could have arrested and identified Handy and would have arrested and identified Handy even had they not discovered the firearm and ammunition he possessed.  Because the officers would have eventually seized the firearm, ammunition, paperwork and mail addressed to Handy at 41 Weston Street incident to arrest, they had little incentive to try to obtain these items through unconstitutional means when a lawful means was readily available. See United States v. Scott, 270 F.3d 30, 45 (1st Cir. 2001).

Conclusion

20

WHEREFORE, for all the reasons advanced above, the government respectfully requests that the Court deny Handy's motion for a <u>Franks</u> hearing and motion to suppress the evidence obtained pursuant to a search of 41 Weston Street on June 2, 2004.

<div style="margin-left: 40%">

Respectfully submitted,

MICHAEL J. SULLIVAN,
United States Attorney

By:  /s/Antoinette E.M. Leoney
     Antoinette E.M. Leoney
     Assistant U.S. Attorney
     (617) 748-3100
</div>

Dated: April 26, 2006

## CERTIFICATE OF SERVICE

Suffolk, ss.                                April 26, 2006

I hereby certify that a copy of the foregoing was served electronically this day upon counsel for the defendant, Timothy G. Watkins, Esq., Federal Defender's Office, 408 Atlantic Avenue, 3rd Floor, Boston, MA 02210.


/s/Antoinette E.M. Leoney
Antoinette E.M. Leoney

22

# EXHIBIT
# A

BROCKTON, SS.

ROCKTON DISTRICT COURT
DOCKET # 040526-km-1

1 0 2 7 9 7

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT
G.L. c. 276, ss, 1 to 7; St. 1964, c. 557

05/26/04

I, Edward T. McDonald, being duly sworn, depose and state that the following is true to the best of my knowledge and belief:

1.     I am a Massachusetts State Police Officer. I have been so employed since October of 1993. During my career as a State Police Officer, I have been assigned to both the Uniformed Branch, and the Bureau of Investigative Services. Presently, I am assigned to the narcotics section of the Plymouth County District Attorney's Office. My duties include but are not limited to the investigation of narcotics violations and offenses. Prior to becoming a state trooper I was employed by the Metropolitan Police Department, Washington D.C. from 1990 thru 1993. During my career as a law enforcement officer I have attended several narcotic seminars and courses. I have also been involved in approximately four hundred and seventy five narcotics arrests. I have had the opportunity to work with and be trained by more experienced officers in the investigation of major narcotics organizations.

2.     In the course of performing my duties as a police officer, I have been involved in  narcotics purchases as an undercover police officer. I have participated in various aspects of narcotics investigations including controlled purchases, controlled deliveries, undercover purchases, rips and surveillance. As a result of my experience and training I am familiar with most aspects of the narcotic trade, the various means of negotiations, communication, and transportation as well as the appearance, packaging, texture and smell of certain narcotics. I am familiar

1

**004**

with the vernacular, and/or code words and terms, which sellers and users of narcotics use. As a police officer I have worked with members of the U.S. Alcohol Tobacco and Firearms, Federal Bureau of Investigation and U.S. Drug Enforcement Agency in cases involving narcotics and firearms offenses.

3.      During the Month of May 2004, this affiant met with a confidential reliable informant, hereinafter referred to as CI#1, regarding heroin distribution occurring within the City of Brockton. CI#1 is familiar with the packaging and distribution of heroin, having been involved in the purchasing and usage of heroin for the past several years. CI #1 advises that it can purchase heroin in the city of Brockton from a person known to it as "Joe". CI#1 states it would dial cellular telephone number (774) 274-9820 to make arrangements with "Joe" to purchase an amount of narcotics (heroin). Arrangements would then be made to meet at a public location within the City of Brockton or at "Joe's" residence of 41 Weston Street, Brockton, MA. CI#1 states it has been purchasing heroin from "Joe" for approximately one year. CI#1 states "Joe" lives at 41 Weston Street, Brockton. CI#1 describes "Joe" as a black male, approximately 30yrs. of age, 5'08 in height, 190 in weight, husky build, short brown hair, brown eyes.

4.      CI#1 has proven reliable in the past. During the months of February and March 2004, CI#1 provided this affiant with information concerning crack cocaine distribution by a Hispanic male known to it as "Little" within the City of Brockton. CI#1 conducted several controlled purchases of narcotics (crack cocaine) from "Little" for this affiant. This affiant identified "Little" as Jose A. Figueroa, DOB 08/04/83 and his co-conspirator Leisa A. Lorenzi, DOB 04/03/71. Figueroa and Lorenzi resided at 26 Short Street, Apartment B, Randolph, MA and dealt crack

2

**005**

cocaine daily within the city of Brockton. This officer sought and received search warrants from Brockton District Court for Lorenzi's 2000 Jeep Ma Registration 8240JI and their residence of 26 Short Street, Apartment B, Randolph, MA. Both search warrants were executed and seized were 102 twists of crack cocaine, two handguns, 140 rounds of ammunition, and $6568.00 in U.S. Currency. Figueroa and Lorenzi were placed under arrest and charged with 1) Possession with Intent to Distribute Class B Substance, 2) Conspiracy To Violate the Controlled Substance Act, 3) Drugs School Zone, 4) Unlawful Possession Firearm (two counts), 5) Unlawful Possession Ammunition. Both Figueroa and Lorenzi are currently awaiting trial in Brockton and Quincy District Courts.

5.      On or about May 22, 2004, CI#1 agreed to make a controlled purchase of heroin from "Joe" in the city of Brockton for this affiant. CI#1 was searched by this affiant and found to have no narcotics or monies on its person. This affiant gave CI#1 an amount of U.S. Currency to complete the narcotics transaction. CI#1 then dialed cellular telephone number (774) 274-9820 and made arrangements with "Joe" to purchase an amount of narcotics (heroin) for this affiant. This affiant conducted surveillance. This affiant observed CI#1 travel to 41 Weston Street, Brockton and enter the aforementioned address through the left side door. After the controlled narcotics purchase this affiant met with CI#1 and CI#1 gave to this officer the narcotics (heroin) it purchased from "Joe". At the Middleboro State Police Barrack the contraband was field tested with positive results for the presence of heroin.

6.      A check with Eastern Utilities Security reveals the only service at 41 Weston Street, Brockton to be in the name of Shirelle Carrigan with a listed

3                                                                                         **006**

telephone number of (508) 894-2882, SSN# 010583150, and has had service since 05/02/03. A check with the Brockton Assessor's Office on 41 Weston Street, Brockton reveals the owner to be Shirelle Carrigan. Furthermore, the Brockton Assessor's Office lists 41 Weston Street, Brockton as a single family residential dwelling. A check with the Massachusetts Registry of Motor Vehicles on license number #010583150 reveals it to be listed to Shirelle Carrigan, DOB 11/05/63, SSN 010583150, of 229 Columbia Road, Apartment 4, Dorchester, MA. A check with the Massachusetts Board of Probation on Shirelle Carrigan, DOB 11/05/63, reveals 14 adult arraignments, two of which are narcotics offenses; 1) Possession With Intent To Distribute Class D and 2) Conspiracy To Violate Controlled Substance Act.

7.      On or about May 26, 2004, CI#1 agreed to make a controlled purchase of heroin from "Joe" in the city of Brockton for this affiant. CI#1 was searched by this affiant and found to have no narcotics or monies on its person. This affiant gave CI#1 an amount of U.S. Currency to complete the narcotics transaction. CI#1 then dialed cellular telephone number (774) 274-9820 and made arrangements with "Joe" to purchase an amount of narcotics (heroin) for this affiant. This affiant conducted surveillance. This affiant observed CI#1 travel to 41 Weston Street, Brockton and enter the aforementioned address through the left side door. After the controlled narcotics purchase this affiant met with CI#1 and CI#1 gave to this officer the narcotics (heroin) it purchased from "Joe". At the Middleboro State Police Barrack the contraband was field tested with positive results for the presence of heroin.

8.      Investigators know from prior narcotic investigations that drug dealer's

activities concerning their illicit enterprise interconnect many aspects of their legitimate lives. These areas concern their primary residences, motor vehicles, electronic communications (beepers, cellular telephones, faxes, computers) and assorted personal identification needed to maintain legitimacy. Drug dealers will often times provide false information concerning rental agreements, motor vehicle registrations, licenses, birth certificates, telephone numbers, family members, place of birth and social security numbers. Drug dealers often times maintain a primary and secondary residence to secrete their drugs and its proceeds. At these residences drug dealers also maintain records of drug quantities and monies owed or received from sales. These records are often referred to as "cuff sheets". Drug dealers alternate locations regularly where the drugs and proceeds are kept. Drug dealers utilize an assortment of motor vehicles, some equipped with after market hides to secrete drugs, registered to parties other than themselves, and often times utilize rental vehicles to further their illicit enterprise. During this target investigation we have identified many of these stated facts to be true. To complete a thorough investigation of a drug dealers activities investigators know that often times what appears to be legitimate is a camouflage to frustrate law enforcements investigative efforts. Whether intentional or not a drug dealer creates a nexus that envelopes his entire structural existence.

9.    It is this affiant's opinion that "Joe" is engaged in a continuing narcotics enterprise (heroin). This opinion is based on the following;

a.    CI#1 provided information to this affiant that "Joe" has an ongoing narcotics (heroin) enterprise and it states it has purchased heroin from "Joe" in the past and no requests have been denied.

b.    CI#1 was able to arrange for two controlled purchases of narcotics (heroin) from "Joe". Both of which were conducted inside of 41 Weston Street, Brockton,

5                                                                    **008**

MA.

c.    CI#1 provided the cellular telephone number (774) 274-9820, which "Joe"

uses to further his illegal narcotics distribution (heroin). This affiant has

corroborated this information by calling the telephone number and arranging for

two controlled purchases of illegal narcotics (heroin).

d.    The controlled purchases made by CI#1 are consistent with the descriptive

qualities of narcotics, how they are packaged and presented for distribution. This

officer is familiar with the descriptive qualities of narcotics (heroin) from previous

training, experience and undercover purchases.

e.    It is this affiant's opinion that the primary residence and distribution point of

"Joe's" narcotics (heroin) is 41 Weston Street, Brockton, Massachusetts. This

opinion is based on information provided by CI#1 and the completion of two

controlled purchases of narcotics (heroin) at the aforementioned location.


10.    Based upon the foregoing reliable information, and upon my personal

knowledge and belief and attached affidavits, there is probable cause to believe that

the property hereinafter described (has been stolen, or is being concealed, etc.)

Heroin a class "A" substance, in Violation of Chapter 94C, Section 32, M.G.L.A.

and may be found in the possession of "Joe" or any other person present who may

be found to have such property on his or her person or under his or her control

located at 41 Weston Street, Brockton, Massachusetts.


11.    The property for which I seek the issuance of a search warrant is the

following: Heroin a Class "A" substance, all controlled substances which have

been manufactured, delivered, distributed, dispensed or acquired in violation of

Chapter 94C, M.G.L.A. All materials, products, and equipment of any kind which

are used, or intended for use, in manufacturing, compounding, processing,

**009**

6

delivering, dispensing, distributing, importing, or exporting any controlled

substance in violation of Chapter 94C, M.G.L.A. All books, records and moneys,

computers, disks, floppy discs, used or intended for use in the procurement,

manufacture, compounding, processing, delivery or distribution.


12.     Wherefore, I respectfully request that the court issue a warrant and order

seizure, authorizing the search of 41 Weston Street, Brockton, Massachusetts

which is more particularly described as a two and half story single family

residential dwelling, wooden shingle siding, peach in color having white trim with

a gray asphalt colored gambrel roof. On the top sides of the house the shingles

have faded to a natural wood color. There are three brick chimneys on the roof. If

standing on Weston Street facing the building there is a driveway to the right side

of the house. If you go down the driveway there is a set of stairs that lead to a

wooden porch which lead to a wooden door. The part of the house that faces

Weston Street does not have a door, the first floor has two bay windows and the

second floor has three windows and to the right side there is a carousel style

wooden porch, in front of this porch on the lawn there is a white mailbox with the

number #41 on it. On the left side of the house there is a concrete walkway that

leads to a white wooden door with glass windows, once inside this door there is

another door to the left, this is the door we seek access and directing that if such

property or evidence or any part there of be found that it be seized and brought

before the BROCKTON DISTRICT Court, together with such other and further

relief that the court may deem proper.


**010**

7

Edward T. McDonald
MASSACHUSETTS STATE POLICE

Then personally appeared the above named Edward T. McDonald and made oath that the foregoing by him subscribed is true.

Before me,

5/26/04

011

I received the attched search warrant on _MAY 26th_, 2004
and have executed it as follows:

On _JUNE 2nd_, _2004_ at _1845_ o'clock _P_ M., I searched
(the person) _____ described in the warrant and (the premises) _____
_41 WESTON Street Brockton_

The following is an inventory of property taken pursuant to the warrant:
1. ONE PLASTIC BAGGIE CONTAINING A TAN SUBSTANCE (HEROIN) / 3rd FLR Hallway / TPR. J. ARROYO
2. Loaded (SIX RNDS .38spl AMMO) Smith Weson .38spl Handgun Serial # 182972 INSIDE A BLACK
   LEATHER HOLSTER / UNDER FLOORBOARD IN BEDROOM / DET. G. KHOURY
3. MISC PAPERWORK IN THE NAME JOHN HANEY / BEDROOM DRAWER / TPR. P. COLEMAN
                                                        DET. T. KEATING

**No. 0406626NAL -1**

**2004**
**DISTRICT COURT DEPARTMENT**
**Brockton DIVISION**
**COURT**

**COMMONWEALTH**

vs.

_Controlled Substance_

**SEARCH WARRANT**

G.L. c. 276, ss. 1 to 7
(St. 1964, c. 557)

This warrant must be returned
to the district court named within
seven days of its issue.

This inventory was made in the presence of _Lieutenant A. Thomas, TPR P. Coleman_
___ and _TPR. E. McDonald_
I swear that this inventory is a true and detailed account of all the property taken by me on the

Subscribed and sworn to and returned before me this _7th_ day of _JUNE_

                                                    Clerk
                                                    Assistant Clerk

...plicable clauses.

                                                        **012**

JACK ERTH  12-1-87
CARREGAU

013

3 94c

UN POSS

## MASSACHUSETTS STATE POLICE
## HAMPSHIRE/FRANKLIN NARCOTICS

To:

From:    Trooper

Subject:    Inventory of property seized pursuant to Search Warrant

Defendant(s):    HANDY, JOHN H   04/04/63

Location:    41 WESTON ST

Date & Time:    06/03/04 , 1845 HRs

| CS#: | | Location: | | |
|------|-------------------------|------------------|----------------------|-------------------|
| Item# | Description of Evidence | Location of Evidence | Evidence found by |
| 1 | 1 TWIST of HEROIN | 2ND HALLWAY | TPR ARROYO |
| 2 | FIREARM SMITH & WESSON 38 SPECIAL (R182972) | UNDER FLOOR BOARDS IN HANDY'S BEDROOM | DET KHOURY |
| 3 | PAPERWORK IN NAME of JOHN HANDY | HANDY'S BEDROOM DRAWER | TPR COLEMAN/KEATING |

# EXHIBIT B

# *The Commonwealth of Massachusetts*
# *Department of State Police*

**MITT ROMNEY**
*GOVERNOR*

**KERRY HEALEY**
*LIEUTENANT GOVERNOR*

**EDWARD A. FLYNN**
*SECRETARY*

**COLONEL THOMAS J. FOLEY**
*SUPERINTENDENT*

*Plymouth County Detectives*
*326 West Grove Street*
*Middleboro, MA 02346*
*Tel. (508) 923-4205 Fax (508) 923-4210*
06/03/04

**TO:**          Detective Lieutenant Joseph V. Mason, Commanding Officer
                 Detective Unit - Plymouth County District Attorney

**FROM:**        Trooper Edward T. McDonald, #2405
                 Detective Unit - Plymouth County District Attorney

**SUBJECT:**     Narcotics Arrest: 1) John H. Handy, DOB 04/04/63, Execution
                 of Search Warrant: 41 Weston Street, Brockton, MA
                 Case # 04-113-0248

1.          During the month of May this officer conducted a narcotics investigation in the city of Brockton. This officer received reliable confidential informant information that an unknown black male aka "Joe" (later identified as John Handy, DOB 04/04/63, of 41 Weston Street, Brockton, MA) was distributing narcotics (heroin) within the city of Brockton. The informant successfully completed two controlled purchases of narcotics from Handy for this officer. Both controlled purchases occurred inside the residence of 41 Weston Street, Brockton, MA which is a single family residential dwelling.

2.          On May 26, 2004, this officer sought and received a search warrant from Brockton District Court for 41 Weston Street, Brockton, MA

3.          On June 02, 2004, members of the Massachusetts State Police (Plymouth County District Attorney's Ofc) Lieutenant A. Thomas, Sergeant J. White, Troopers P. Coleman, J. Gilmore, D. LeVangie, J. Arroyo and members of the Brockton Police (Narcotics Unit) Detectives G. Khoury, J. Costello, T. Keating, J. Stanton along with this officer executed the aforementioned search

**022**

1

warrant. At approximately 1845hrs. officers made a forceful entry into 41 Weston Street, Brockton after Knocking and Announcing State Police Search Warrant was met with no answer. A search of the dwelling revealed the following: 1) one plastic baggie containing a tan substance suspected heroin/2nd Floor Hallway/Tpr. J. Arroyo, 2) Loaded (six rounds .38spl ammo) Smith and Wesson .38 special Handgun Serial # 182972 inside a Black Leather Holster/under floorboard in bedroom/Det. G. Khoury, 3)Misc paperwork in the name of John Handy/Bedroom Drawer/Tpr. P. Coleman and Det. T. Keating.

4.          Handy was placed under arrest, advised of Miranda rights (Lt. A. Thomas) and transported to Brockton Police Department. (BPD Cr.). At Brockton P.D. Handy was booked and advised of rights and held pending court or bail. Charges: 1) Poss Cl A (heroin), 2) Unl Poss Ammunition, 3) Unl Poss Firearm.

6.          This officer requests case status be classified CLOSED/ARREST.

Respectfully Submitted,

Trooper Edward T. McDonald, #2405
Detective Unit
Plymouth County District Attorney

INDEX:

John H. Handy, DOB 04/04/63, SSN 028544092
41 Weston Street,
Brockton, MA

# EXHIBIT C

# BROCKTON POLICE DEPARTMENT
## Arrest Booking Report

| OBTN: TBRO000037718 | | | | | | | | | | Case No. 04006829 | |
|---|---|---|---|---|---|---|---|---|---|---|---|

## ARRESTEE

| Arrestee Name (Last, First, Middle Initial) | Arrest No. | Social Security No. | Caution |
|---|---|---|---|
| **HANDY, JOHN H.** | .00023663 | | |

| Address | Scars, tattoos, etc. |
|---|---|
| **42/THEODORE ST, DORCHESTER, MA** | **L.EYE  L.WRIST** |

| Sex | Race | Height | Weight | Hair | Eyes | Build | Complexion | Marital Status | D.O.B. | Age | Place of Birth |
|---|---|---|---|---|---|---|---|---|---|---|---|
| M | B | 510 | 180 | BLK | BRO | STK | MEDIUM | SINGLE | | 41 | |

| Father's Name | Mother's Maiden Name | Wife's Maiden Name | Husband's First Name | Weekly Wage 180 |
|---|---|---|---|---|

| Occupation PAINTER | Employer PETER HANDY | Alias/Nickname 1 |
|---|---|---|

| Alias/Nickname 2 | Alias/Nickname 3 |
|---|---|

## CHARGE

| Charge(s) | MGL Chapter/Section | Warrant Number |
|---|---|---|
| 1) UNL POSS FIREARM | 269-10H | |
| 2) UNL POSS AMMUNITIO | 269-10O7 | |
| 3) POSS CS CLASS A | 94C-34 | |

*Tpr Dean LeMagie   Tpr James G. Inove*

| Arrest Date | Time | Arrest Location | Arresting Officer 1 | Arresting Officer 2 | Domestic Violence? |
|---|---|---|---|---|---|
| 06/02/2004 | 18:30 | 41/WESTEN ST | POLICE / OTHER | POLICE / OTHER | NO |

## CONTROL

| Booking Date | Time | Booking Officer | Cell No. | Matron | Police Department on Warrant |
|---|---|---|---|---|---|
| 06/02/2004 | 20:02 | SKINNER, MICHAEL G | 2 | | |

| Rights given by SFR #49 BUTLER, JOSEPH J | Visible Injuries? NO | Comments |
|---|---|---|

| Searched by POLICE / OTHER | No. Codefendants | Codefendant(s) Name(s) |
|---|---|---|

## JUVENILE

| Person to notify | Relationship | Address | Telephone No. | Date/time notified |
|---|---|---|---|---|

| Probation Officer | Release or Hold | Notified by | Juvenile released to (Signature) |
|---|---|---|---|

## RELEASE

| I was informed of my right to remain silent, to use a telephone, at my own expense, for the purpose of communicating with family or friends, to arrange bail or to call an attorney. | Arrestee Signature |
|---|---|

| Telephone used? (yes or no) | Bail Amount $700— | Date/time Released 6/2/04 | Released by |
|---|---|---|---|

# EXHIBIT D

**Brockton Hospital**
680 Centre Street
Brockton, Massachusetts 02302-3395



**RETURN SERVICE REQUESTED**

1769

JOHN HANDY
41 WESTON ST
BROCKTON, MA  02301

CASUSMS 02301



**014**



PROBATION OFFICE
THE BROCKTON TRIAL COURT
DISTRICT COURT DEPARTMENT, BROCKTON DIVISION
215 MAIN STREET
P. O. BOX 7610
BROCKTON, MA 02303-7610

Canton Job
781-930-7800 1-781-828-3302
interview Monday 11:00AM

Piano

140 Turnpike St
Canton
John Handy Jr
#1 Weston St
Brockton Ma
02301

02301+3332

---

**RETURN THIS PORTION WITH PAYMENT.**



100 GROVE STREET, SUITE 112
WORCESTER, MA   01605-2629

**RETURN SERVICE REQUESTED**

05/07/04

ENCLOSED IS MY PAYMENT FOR $143.00

#003684190024669#
JOHN HANDY
41 WESTON ST
#1
BROCKTON MA   02301-3332

100 GROVE STREET, SUITE 112
WORCESTER, MA   01605-2629

**015**

# EXHIBIT
# E

| RECORD OF CRIMINAL CASE | 9915 CR 003069 | Trial Court of Massachusetts District Court Department |
|---|---|---|

**EFENDANT NAME**
OHN HANDY, JR

**EFENDANT ALIAS(ES)**

**COURT NAME & ADDRESS**
BROCKTON TRIAL COURT
215 MAIN ST P.O. BOX 7610
BROCKTON MA 02303-7610
(508) 587-8000

| EFENDANT ADDRESS | CITY / TOWN | | STATE | ZIP CODE |
|---|---|---|---|---|
| 1 WESTON STREET | BROCKTON | | MA | 02301 |

| SEX | DATE OF BIRTH | CITY OF BIRTH | STATE OF BIRTH | SOCIAL SECURITY NO. |
|---|---|---|---|---|
| M | | | | |

| OTHER'S MAIDEN NAME | FATHER'S NAME |
|---|---|
| | |

| CF NO. | SID NO. | DRIVERS LICENSE NO. | LICENSE STATE |
|---|---|---|---|
| 482390 | | | |

## CASE INFORMATION

| O. COUNTS | POLICE DEPT | POLICE INCIDENT NO. | OFFENSE LOCATION | ARREST DATE | MV CITATION NO. |
|---|---|---|---|---|---|
| 4 | BRO | | BROCKTON | | |

| URRENT DEFENSE ATTORNEY | ATTORNEY TYPE |
|---|---|
| TEPHANIE A SOUSA | APPOINTED - INDIGENT |

| URRENT PROSECUTOR | COMPLAINANT |
|---|---|
| | MACY'S |

## OFFENSE AND JUDGMENT INFORMATION

COUNT: 1 OFFENSE DATE: APRIL 30, 1999
266/30A/D    SHOPLIFTING BY CONCEALING MDSE

JUDGMENT DATE: 7/23/99                  JUDGMENT JUDGE: HON. RICHARD D. SAVIGNANO
JUDGMENT METHOD: AMENDED OTH OFF        JUDGMENT: AMENDED TO OTHER OFFENSE

COUNT: 2 OFFENSE DATE: APRIL 30, 1999
265/15A/A    A&B WITH DANGEROUS WEAPON

JUDGMENT DATE: 8/23/00                  JUDGMENT JUDGE: HON. DAVID G. NAGLE JR.
JUDGMENT METHOD: PROB SURRENDER         JUDGMENT: GUILTY
PROBATION START DATE: 7/23/99           PROBATION END DATE: 7/21/00
SPECIAL CONDITIONS:
    AP ADMINISTRATIVE PROBATION ORDERED
    PM PAY MONIES ON ATTACHED "NOTICE TO DEFENDANT" TIMELY
    SP PAY ANY CHILD SUPPORT ORDER, AS DEFINED IN GL 119A §1A
    VR ALLOW PROBATION TO VISIT RESIDENCE WHEN HE/SHE REQUIRES
    72 REPORT TO PROBATION OFFICER WITHIN 72 HOURS OF RELEASE
JAIL START DATE: 8/23/00        INSTITUTION: PLYMOUTH HOUSE OF CORRECTION
TERM OF SENTENCE:       1 YEARS
AMOUNT TO BE SERVED:    1 YEARS
JAIL CREDIT DAYS:     CONSECUTIVE TO:              CONCURRENT WITH:

COUNT: 3 OFFENSE DATE: APRIL 30, 1999
266/120      TRESPASS

JUDGMENT DATE: 7/23/99                  JUDGMENT JUDGE: HON. RICHARD D. SAVIGNANO
JUDGMENT METHOD: DISMISSED              JUDGMENT: DISMISSED-REQUEST COMPLNT

COUNT: 4 OFFENSE DATE: APRIL 30, 1999
266/30A/E    SHOPLIFTING BY CONCEALING MDSE, 2ND OFF.

JUDGMENT DATE: 7/23/99                  JUDGMENT JUDGE: HON. RICHARD D. SAVIGNANO
JUDGMENT METHOD: ADM SUFF FACTS         JUDGMENT: GUILTY

A TRUE COPY ATTEST

CLERK OF SAID COURT

| PAGE | DATE RECORD PRINTED | A TRUE COPY ATTEST | CLERK MAGISTRATE | | 069 |
|---|---|---|---|---|---|
| 1 | 7/01/04 | | | | |

IF21A 7/01/04 10:33 AM

| RECORD OF CRIMINAL CASE | DOCKET NO.<br>9915 CR 003069 | Trial Court of Massachusetts<br>District Court Department  |
|---|---|---|

PROBATION START DATE: 7/23/99          PROBATION END DATE: 7/21/00
SPECIAL CONDITIONS:
    AP ADMINISTRATIVE PROBATION ORDERED
    PM PAY MONIES ON ATTACHED "NOTICE TO DEFENDANT" TIMELY
    SP PAY ANY CHILD SUPPORT ORDER, AS DEFINED IN GL 119A §1A
    VR ALLOW PROBATION TO VISIT RESIDENCE WHEN HE/SHE REQUIRES
    72 REPORT TO PROBATION OFFICER WITHIN 72 HOURS OF RELEASE

---

### BAIL/BOND INFORMATION

| BAIL TYPE | BOND AMT SET | CASH AMT SET | DATE SET | JUDGE |
|---|---|---|---|---|
| PERSONAL RECOG | | | 7/01/99 | HON. GREGORY L. PHILLIPS |

---

### FINES/FEES/COSTS ASSESSED

| COUNT # | FEE CODE DESC | AMOUNT ASSESSED | AMOUNT PAID/WAIVED | BALANCE DUE |
|---|---|---|---|---|
| | COUNSEL FEE | $100.00 | $100.00 | $.00 |
| | TOTAL | $100.00 | $100.00 | $.00 |

---

### PAYMENT HISTORY

| RECEIPT NO. | RECEIPT DATE | RECEIPT AMOUNT | METHOD OF PAYMENT |
|---|---|---|---|
| 78970 | 8/23/00 | $100.00 | WAIVED |

---

### DOCKET ENTRIES

| DATE | CODE | DOCKET ENTRY | JDG/MAG | ACTION DATE |
|---|---|---|---|---|
| 5/07/99 | AC | APPLICATION FOR COMPLAINT FILED | | |
| 5/07/99 | ZCI | COMPLAINT ISSUED | KML | |
| 5/07/99 | ARR | ARRAIGNMENT SCHEDULED FOR | | 6/15/99 |
| 5/07/99 | PI | PROBATION INTAKE FORM PRINTED | KML | |
| 5/07/99 | SUM | SUMMONS ISSUED FOR DEFENDANT | KML | |
| 6/15/99 | C | CONTINUED | DGN | 6/15/99 |
| 6/15/99 | ARR | ARRAIGNMENT SCHEDULED FOR | DGN | 7/01/99 |
| 6/15/99 | | DEFENDANT INCARCERATED AT MSH | DGN | |
| 7/01/99 | C | CONTINUED | GLP | 7/01/99 |
| 7/01/99 | ARR | ARRAIGNMENT SCHEDULED FOR | GLP | 7/01/99 |
| 7/01/99 | PT | PRETRIAL HEARING SCHEDULED FOR | GLP | 7/23/99 |
| 7/01/99 | CAI | COUNSEL APPOINTED FOR INDIGENT DEFENDANT | GLP | |
| 7/01/99 | | 635232  ABDELMESSIH, EMAD | | |
| 7/23/99 | ARRH | ARRAIGNMENT HELD | RDS | |
| 7/23/99 | COLL | GUILTY PLEA/ASF COLLOQUY GIVEN | RDS | |
| 7/23/99 | AW | ALIEN WARNING (279 §29D) GIVEN DEFENDANT | RDS | |
| 7/23/99 | PTH | PRETRIAL HEARING HELD | RDS | 7/23/99 |
| 7/23/99 | P | PROBATION UNTIL | | 7/21/00 |
| 7/23/99 | PSFW | WAIVED BY COURT, PROBATION SUPERVISION FEE | | |
| 7/23/99 | VWFW | WAIVED BY COURT, VICTIM/WITNESS FEE | | |
| 7/23/99 | JE | JUDGMENT ENTERED | RDS | |
| 7/23/99 | MIT | MITTIMUS FOR SENTENCE ISSUED | | |
| 7/23/99 | PHC | : PLYMOUTH HOUSE OF CORRECTION | | |
| 7/23/99 | PCFI | PROBATION CONDITIONS FORM ISSUED | | |
| 6/22/00 | C | CONTINUED | DGN | 7/21/00 |
| 6/22/00 | PS | PROBATION SURRENDER HEARING SCHEDULED FOR | | 7/07/00 |

A TRUE COPY ATTEST

_____ OF THE DISTRICT COURT

| PAGE | DATE DOCKET PRINTED | A TRUE COPY ATTEST | CLERK-MAGISTRATE | 070 |
|---|---|---|---|---|
| 2 | 7/01/04 | | | |

3F21B 7/01/04 10:33 AM

| | | | | |
|---|---|---|---|---|
| **RECORD OF CRIMINAL CASE** | | **DOCKET NO.** **9915 CR 003069** | **Trial Court of Massachusetts** **District Court Department** | |

| | | | | |
|---|---|---|---|---|
| 7/07/00 | C | CONTINUED | AG | 7/07/00 |
| 7/07/00 | PS | PROBATION SURRENDER HEARING SCHEDULED FOR | AG | 8/23/00 |
| 7/07/00 | CAI | COUNSEL APPOINTED FOR INDIGENT DEFENDANT | AG | |
| 7/07/00 | | 560666  SOUSA, STEPHANIE A | | |
| 8/23/00 | | AMENDED JUDGMENT OR SENTENCE ENTERED | RDS | |
| 8/23/00 | | PRIOR SENTENCE ON COUNT 2 WAS GUILTY 18 MONTH | | |
| 8/23/00 | | HOUSE OF CORRECTION 6 MONTHS TO BE SERVED | | |
| 8/23/00 | | BALANCE SUSPENDED WITH PROBATION, DEFENDANT | | |
| 8/23/00 | | FOUND IN VIOLATION OF PROBATION AND COMMITTED | | |
| 8/23/00 | | FOR THE BALANCE OF SENTENCE WHICH IS 1 YEAR | DGN | |
| 8/23/00 | PVF | PROBATION VIOLATION FOUND BY COURT | DGN | 8/23/00 |
| 8/23/00 | ZCOM | CASE CLOSED-DEFENDANT COMMITTED | DGN | |
| 8/23/00 | MIT | MITTIMUS FOR SENTENCE ISSUED | DGN | |
| 8/23/00 | | PHC   : PLYMOUTH HOUSE OF CORRECTION | | |
| 8/23/00 | MIT | MITTIMUS FOR SENTENCE ISSUED | DGN | |
| 8/23/00 | | PHC   : PLYMOUTH HOUSE OF CORRECTION | | |
| 10/13/00 | | MOTION TO RECONSIDER FILED BY DEFT | DGN | |
| 10/25/00 | TUA | JUDGE NAGLE | DGN | |
| 11/02/00 | | 10/31/2000 AFTER REVIEW OF AFFIDAVIT,COURT | | |
| 11/02/00 | | FILE & DEFT'S RECORD THE MOTION TO RECONSIDER | | |
| 11/02/00 | | VTP IS DENIED PER JUDGE | DGN | |

A TRUE COPY ATTEST

*[signature]*

CLERK OF COURT

| PAGE | DATE DOCKET PRINTED | A TRUE COPY ATTEST | CLERK MAGISTRATE | |
|---|---|---|---|---|
| 3 | 7/01/04 | | *[signature]* Kenj T. Fender | **071** |

RF21B 7/01/04 10:33 AM