UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 04-10361-NG |
| | ) | |
| JOHN HANDY | ) | |

DEFENDANT'S MOTION TO REVOKE DETENTION ORDER

Defendant, John Handy, moves, pursuant to 18 U.S.C. § 3145(b), that the District Court revoke the order detaining him.  See Order of Detention, Docket #10.  As grounds for this motion, defendant states that there are conditions that would both reasonably assure the safety of the community and reasonably assure that he will appear in court as required, particularly in light of the testimony at the motion to suppress evidentiary hearing that defendant did not make any attempt to escape from police nor tried to barricade himself in a room.

**STATEMENT OF FACTS**

Personal History

Handy is a 43 year-old U.S. citizen who has lived in Massachusetts his entire life.  He was born in 1963 in Boston, the youngest of seven siblings.  Mr. Handy's father died in 1998 due to complications from diabetes and high blood pressure; his mother, Katherine Handy, lives in Brockton.  Handy's entire extended family, with the exception of a an older brother who lives in Virginia, reside in either Boston or Brockton.  Before

his arrest on the state charges that gave rise to this federal prosecution, Handy lived with his elderly mother at 18 Prospect Ave. in Brockton.  His sister, Jennis Handy, lives across the street.  The family is close and, as Judge Dein noted in her Order, are highly supportive of Handy and hopeful that he can return home to take care of their mother.

Handy has worked as a house painter all of his life.  He has nine children, all of whom are to him and all of whom are cared for by the extended family.  All go to school in either Dorchester or Brockton.

Handy has suffered a long-standing battle with heroin addiction; not surprisingly, his record reflects the petty travails of minor criminal skirmishes indicative of drug abuse.  Notably, all of the charges (with the exception of an ancient Superior Court larceny conviction for which he was sentenced to probation) were brought in and disposed of in state district court with relatively light sentences that reflected the less serious nature of the charges.

Handy is dedicated to his long-time companion, Shirelle Carrigan, with whom he has had an on-again, off-again relationship.  Ms. Carrigan is a recovering substance abuser who has remained sober for several years; she works as a substance abuse counselor and does not tolerate Handy's forays into heroin addition.  Although the couple will not live together if Handy is

released, Ms. Carrigan remains supportive of him and will assist in his efforts to stay sober.

<u>The Instant Offense</u>

After his arrest at 41 Weston St. on June 2, 2004, Handy was taken to the Brockton Police Department and booked. He was released later that night on his promise to appear the next morning in Brockton District Court. He appeared the next morning as directed. He was nevertheless ordered held by Brockton District Court on the matter as well as a then-lodged surrender notice for the probationary sentence he was serving out of Dorchester District Court. Handy eventually pled guilty to possession of a handgun without a firearms identification card[1] as well as simple possession of heroin in a package deal that took into account the sentence he anticipated receiving in Dorchester for violating the terms of his probation there.

The USAO for the District of Massachusetts indicted Handy in the instant matter while Handy was in county custody finishing the combined sentences. Handy was brought into federal court at the conclusion of the sentence. The government moved for

---

[1] Discovery provided by the government indicates that the Assistant U.S. Attorney then assigned to the case, Marianne Hinkle, was aware while the case was being considered for federal adoption that the USAO for the District of Massachusetts would have to secure <u>Petite</u> policy authorization in order to prosecute Handy in federal court given his plea in state court. Defendant assumes that such authorization was secured prior to Handy's federal court indictment six months later.

detention and, after an evidentiary hearing featuring testimony from an ATF agent who was not present at the execution of the search warrant, Judge Dein ordered Handy detained on August 16, 2005.  Handy has been in combined state and federal custody for the past 25 months, the last eleven of which have been in U.S. Marshals detention at MCI-Cedar Junction.

The Detention Hearing

The lone witness at the detention hearing was Special Agent Sheila M. O'Hara of the Bureau of Alcohol, Tobacco, and Firearms.[2]  O'Hara testified to Federal interest in the arrest of Handy and her review of reports and discussions with officers present at the search.  According to second hand reports, Handy was suspected to be selling drugs from 41 Weston St., and a search warrant was secured.  Handy was said to have run upstairs at the arrival in the house of the entry team and barricaded himself in a room on the second floor.  A later search under a heating vent revealed a gun there.  Although an insignificant amount of personal use heroin was found, no indicia of heroin distribution was recovered at 41 Weston St. during the execution of the search warrant.

---

[2] Defendant is aware that the Court has read the transcript of the detention hearing.  In order to avoid repeating the testimony, the summary of testimony set forth here is confined to those facts which were contrary to the actual testimony of the officers present.

**ARGUMENT**

THE ERRONEOUS TESTIMONY MISLED THE MAGISTRATE-JUDGE INTO ORDERING DETENTION.

The Memorandum and Order on the Government's Motion for Detention characterized the evidence of guilt as "strong" and the thus the prospect of the lengthy sentence he would receive if convicted provided "a clear and unequivocal impetus to flee." Memorandum and Order at 6, 9. What was omitted from the testimony at the detention hearing - and has now been revealed before this Court - is that the government's case is far from "strong." Rather than an open and shut case where a loaded firearm was apparently constructively possessed by Handy, the evidence presented during the evidentiary hearing raises very real and significant questions as to the ability of the government's case to survive a Rule 29 motion, let alone the "strong" evidence of guilt suggested by the unadorned testimony of Agent O'Hara. The weaknesses in the government's case, far from creating an impetus to flee, provide an incentive for Handy to remain in the only community he has ever known. This incentive, in conjunction with his extremely strong family ties, strongly suggests that Handy will appear if released. That Handy will appear is demonstrated by his previous behavior in the case: when released by the Brockton Police, Handy appeared in state district court as ordered despite the known consequences of his pending probation violation case. The Court should consider

releasing Handy to live with his mother in Brockton under the supervision of the Pretrial Services office, with electronic monitoring if deemed necessary.

Magistrate Dein, likely swayed by the inaccurate testimony that portrayed Handy as one who might violently evade police, concluded that detention was warranted because Handy "does not appear able to modify his [criminal] behavior" and thus was of "high" danger to the community.  Memorandum and Order at 8.  That conclusion - weakened now by the actual testimony of the officers on the scene - is in any event insufficient to justify detention. The Bail Reform Act provides, in relevant part, for release of defendants on personal recognizance "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community."  18 U.S.C. § 3142(b).  If personal recognizance is found insufficient to reasonably assure the appearance of the defendant or will endanger the safety of the community, then the judicial official is directed to order pretrial release on "the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of . . . the community."  18 U.S.C. § 3142(c)(1). Detention is permitted only if "the judicial officer finds that no condition or combination of conditions will reasonably assure

the appearance of the person as required and the safety . . . of the community."  18 U.S.C. § 3142(e).

> The statutorily mandated progression from one choice to the next is critical:  a judicial officer cannot determine that a detention hearing and the possible imposition of pretrial detention is appropriate merely by determining that release on personal recognizance will not 'reasonably assure' the defendant's appearance at trial or 'will endanger' the community.  The judicial officer must also consider whether one of the codified conditions or any combination of the conditions will 'reasonably assure' the defendant's appearance and the safety of the community.  The wide range of restrictions available ensures, as Congress intended, that very few defendants will be subject to pretrial detention.

United States v. Orta, 760 F.2d 887, 890-91 (8th Cir. 1985) (reversing detention order despite applicability of statutory presumption based on drug charge).

Detention is not justified because a person presents any risk of danger to the community.  The presence of a risk requires a further analysis:  the determination of what condition or combination of conditions would reasonably assure that the community would not be endangered by a defendant's release.[3]  A proper analysis of the risk of further danger to the community would have revealed that the risk was low.  Handy's criminal record, while extensive, demonstrated that he was amenable to

---

[3] The Bail Reform Act suggests a panoply of conditions that might be imposed in conjunction with release, including requirements that a defendant work, reside at a specific address, and/or be intensively monitored.  See 18 U.S.C. § 3142.  The Magistrate Judge did not address the effect of any of these less-restrictive alternatives.

court-ordered supervision, and the judge gave undue weight to the district court dispositions associated with Handy's battle with heroin.

In any event, whatever inference of risk that may be drawn is easily remedied by imposition of the less restrictive conditions suggested by the statute such as a curfew, house arrest, and intensive monitoring by Pretrial Services.  In these circumstances, had the Magistrate Judge erred in adequately considering alternative conditions.  This Court should consider release.

The analysis required by § 3142, made in light of the evidence now before the Court, should result in a conclusion that Handy's release to his mother's home in Brockton, in conjunction with reporting to and monitoring by Pretrial Services, would reasonably insure the safety of the community while at the same time guard against any risk of flight.

                                      JOHN HANDY
                                      By His Attorney:


                                      /s/ Timothy G. Watkins
                                      Timothy Watkins
                                       B.B.O. #567992
                                      Federal Defender Office
                                      408 Atlantic Ave., Third Floor
                                      Boston, MA  02110
                                      (617) 223-8061

CERTIFICATE OF SERVICE

    I, Timothy G. Watkins, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on July 10, 2006.

                                              /s/ Timothy G. Watkins
                                              Timothy G. Watkins