UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.              ) | CRIMINAL NO. 04-10361-NG |
| ) | |
| JOHN HANDY        ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S**
<u>**MOTION TO REVOKE DETENTION ORDER**</u>

On August 16, 2005, Magistrate Judge Judith Gail Dein ordered that the defendant, John Handy, be detained prior to trial. Dein, M. J., Memorandum and Order on the Government's Motion for Detention at 9-10.[1] Magistrate Judge Dein correctly found that there are no conditions or combination of conditions that will reasonably assure the safety of the community and the appearance of the defendant as required under 18 U.S.C. § 3142, short of pretrial detention. <u>Id.</u> at 1-2.

In her memorandum and order, Magistrate Judge Dein mentions two rebuttable presumptions that she, as a judicial officer, was required by 18 U.S.C. § 3142(e) to consider in making her determination. Given the defendant's criminal history, both presumptions are applicable in this case. As such, Magistrate Judge Dein was correct in beginning her determination with the presumption that no condition or combination of conditions will reasonably assure the safety of any other person or the

---

[1] Subsequent references to Magistrate Judge Dein's Memorandum and Order will be cited as "Memorandum and Order at (page number)."

community, or the appearance of the defendant as required.  As Magistrate Judge Dein states in her memorandum, once these rebuttable presumptions are considered, "[t]he burden then rests on the defendant to come forward with "some evidence" indicating that these general findings are not applicable to him for whatever reason advanced.  United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991).

The defendant, in his Motion to Revoke Detention Order, puts forth several arguments in an effort to rebut the abovementioned presumption for pretrial detention.  However, an examination of defendant's claims reveal that they are largely nothing more than conclusory statements, lacking in factual foundation and unable to withstand logical scrutiny.[2]  Given the weakness of the defendant's arguments, and the fact that none of the circumstances upon which Magistrate Judge Dein based her conclusion have changed since the order was first issued, the defendant's motion to revoke the order of detention should be denied, and he should continue to remain in custody until trial.

---

[2] Though defendant does point to some viable evidence that weighs in favor of pretrial release on conditions, such as the fact that he has close ties to the community, see Def's Mot. to Revoke at 1-3, Courts have found that "[e]ven when a defendant produces "some evidence" in rebuttal, however, the presumption does not disappear." Memorandum and Order at 6 (*quoting* U.S. v. Palmer-Contreras, 835 F.2d 15, 17-18 (1st Cir. 1987).  In the end, "[d]etention determinations must be made individually and, in the final analysis must be based on the evidence which is before the court regarding the particular defendant." U.S. v. Tortora, 922 F.2d 880, 888 (1st Cir. 1990).

I.  **MAGISTRATE JUDGE DEIN DID NOT RELY ON INACCURATE TESTIMONY IN ORDERING PRETRIAL DETENTION OF THE DEFENDANT**

The defendant, in his Motion to Revoke the Detention Order, claims that Magistrate Judge Dein was "likely swayed by the inaccurate testimony that portrayed Handy as one who might violently evade police,"[3] and as a result "concluded that detention was warranted." Defendant's Motion to Revoke (Document 27) at 6.[4] The defendant argues that since the testimony upon which Magistrate Judge Dein has based her decision has been "weakened now by actual testimony of the officers on the scene," there is no longer sufficient justification for his detention. Id.

However, whether or not the defendant's claim of inaccurate testimony has any merit,[5] the answer to that question is *completely irrelevant* for the instant issue - namely the validity of Magistrate Judge Dein's decision to detain the defendant - since her decision was not at all based upon the testimony in question, but rather on other parts of the record that she

---

[3] Defendant is presumably referring to the testimony of Special Agent O'Hara given at the August 2005 detention hearing, specifically her characterization of the actions of the defendant at the moment that police entered his house to execute the search warrant.

[4] Subsequent references to this document will be cited as "Def's Mot. to Revoke at (page number)."

[5] As will be discussed below, this claim indeed completely lacks merit.

3

specifically identifies in her memorandum.[6]  Thus, even if the Court were to credit the defendant's claim of inaccuracy, it would have no bearing on the validity of Magistrate Judge Dein's decision to order pretrial detention of the defendant.

In Magistrate Judge Dein's Memorandum and Order, she sets out the precise reasons upon which she based her decision to order the defendant's detention.  Within the section of the memorandum entitled "Discussion of Whether Detention is Warranted," Magistrate Judge Dein discusses four different factors material to the issue of detention: (1) The Offense Charged and Weight of the Evidence, (2) History and Characteristics of the Defendant, (3) Danger To the Community, and (4) Risk of Flight.  See Memorandum and Order at 6-9.

In the first of those four sections, Magistrate Judge Dein notes that "[t]he defendant is charged with possession of a

---

[6] These include the fact that "[t]he defendant says that the people that surround him in his environment trigger his urges to use illegal drugs," Memorandum and Order at 8, that "[t]he defendant has a lengthy criminal record" with convictions for crimes including possession of Class A substances with intent to distribute and assault and battery with a dangerous weapon, id., that "[d]espite an extensive history with the criminal justice system, including periods of incarceration, defendant does not appear to be able to modify his behavior," id., that "the defendant's extensive criminal history involves crimes committed while he lived with his mother," id., that "[t]he prospect of a significant jail sentence provides a clear and unequivocal impetus to flee, and defendant's record reveals a number of defaults," id. at 9, and finally that "the defendant's criminal record includes a number of aliases, further supporting the conclusion that there is a high risk of non-appearance." Id.

firearm and ammunition, and the evidence against him is strong." Memorandum and Order at 6. The evidence that she identifies as being strongly against the defendant includes the heroin found by the officers executing the search warrant on the defendant's home, as well as the loaded gun found hidden in the defendant's bedroom. Also mentioned is the defendant's guilty plea to state charges relating to possession of the aforementioned gun. See Memorandum and Order at 6-7.

Conspicuously absent from this list, however, is any mention whatsoever of the supposedly "inaccurate" testimony that the defendant claims "swayed" Magistrate Judge Dein to detain the defendant. In fact, nowhere in the memorandum does Magistrate Judge Dein even *imply* that she is basing her conclusion on this so-called "inaccurate" testimony. To the contrary, Magistrate Judge Dein explicitly rests her conclusion upon reasons completely unrelated to the supposedly "inaccurate" testimony offered by Agent O'Hara.[7] Thus, the defendant's claim that "Magistrate Dein [was] likely swayed by the inaccurate testimony" is wholly without foundation. See Def's Mot. to Revoke at 6.

---

[7] See n. 6 above for a list of the reasons that Magistrate Judge Dein specifically mentions within her memorandum and order as having played a role in her decision.

**II. EVEN IF THE COURT WERE TO FIND THAT MAGISTRATE JUDGE DEIN DID RELY UPON AGENT O'HARA'S TESTIMONY IN MAKING HER DECISION TO DETAIN THE DEFENDANT, THERE WAS NO ERROR IN THE DECISION, SINCE AGENT O'HARA'S TESTIMONY IS FULLY ACCURATE**

Even if the Court finds that Magistrate Judge Dein did rely upon Agent O'Hara's testimony in reaching her conclusion to detain the defendant, the fact remains that Agent O'Hara's testimony is, contrary to the defendant's claim, completely accurate, and is in no way contradicted by the "actual testimony of officers on the scene" given during the subsequent suppression evidentiary hearing.  See Def's Mot. to Revoke at 6.

At the August 2005 detention hearing before Magistrate Judge Dein, Agent O'Hara testified that after the police forcefully entered the defendant's home, "they observed Mr. Handy running up the steps."  Tr. of Detention Hrg at 10.  This statement is perfectly corroborated by testimony given subsequently by Detective Jeffrey Costello, who, during the July 2006 suppression evidentiary hearing, testified that "[a]s the door [to the defendant's house] opened, I could see somebody going up the stairs."  Tr. of Evidentiary Hrg, Day Three (July 11, 2006) at 15.[8]  Given that the police subsequently searched the entire house and found no one present except for the defendant, whom they found in an upstairs bedroom behind a closed door with officers shouting to him to open up, see id. at 17, the logical

---

[8] Subsequent references to this document will be cited as "Evid. Hrg at (page number)."

6

leap made by Agent O'Hara in identifying Handy as the "somebody" who was seen going upstairs, was quite reasonable. Indeed, rather than Detective Costello's testimony "weakening" that of Agent O'Hara, as the defendant claims, it merely restates it. See Def's Mot. to Revoke at 6.

Additionally, the fact that none of the other officers present during the execution of the warrant testified as to having seen someone running upstairs is easily explicable by the commotion that exists in the few seconds after the police forcefully enter a home. As pointed out by the defendant's own counsel during Detective Costello's cross-examination, executing a search warrant is a "dangerous business," and as such, when officers enter a home, they are always "looking all around to see whether there were people running away or moving slowly." Evid. Hrg, Day Three at 24. Given this characterization, it is not difficult to visualize a scenario where, during the first moments that a group of officers enter the defendant's home, only one of them happens to glance up at the stairs, while the others each look in any other direction to quickly scan the area for possible danger. In other words, the fact that only Detective Costello, and not any of the other officers present, testified as to having seen the defendant running upstairs does *not*, contrary to what the defendant suggests, call into question the veracity of that testimony.

**III. IN DECIDING TO DETAIN THE DEFENDANT, MAGISTRATE JUDGE DEIN ADEQUATELY CONSIDERED ALTERNATIVE CONDITIONS ALTERNATIVE CONDITIONS TO DETENTION AS REQUIRED BY 18 U.S.C. § 3142**

Under 18 U.S.C. § 3142(e), a defendant may be ordered detained pending trial if the judicial officer finds by clear and convincing evidence after a detention hearing "that no condition or combination of conditions will reasonably assure both the safety of any other person or of the community, and the appearance of the person as required. See United States v. Patriarca, 948 F2d 789, 792-93 (1st Cir. 1991). Subsections (b) and (c) of § 3142 set forth the possible conditions and combinations of conditions that can be imposed upon a defendant in lieu of pretrial detention.

Defendant makes two arguments regarding Magistrate Judge Dein's application of 18 U.S.C. § 3142 to the instant case. Firstly, defendant argues that "the Magistrate Judge erred in adequately considering alternative conditions" to detention, and therefore asks that "[t]his Court should consider release." Def's Mot. To Revoke (Doc. 27) at 8. Secondly, defendant argues that had Magistrate Judge Dein properly considered the alternative conditions set forth under 18 U.S.C. § 3142(b) and (c), she would have concluded that "whatever inference of risk that may be drawn [from the defendant's criminal record and history] is easily remedied by imposition of the less restrictive conditions suggested by the statute," and therefore would not

8

have imposed detention upon defendant.  Id.

In response to defendant's first point, it is abundantly clear from Magistrate Judge Dein's memorandum that she did, in fact, consider alternative conditions to detention, though she ultimately rejected them in favor of detention.  For instance, Magistrate Judge Dein notes that "[a]pparently the defendant's mother is willing to have the defendant live with her if he is released."  Memorandum and Order at 8. Having considered the viability of such a condition of release, Magistrate Judge Dein then rejects it, reasoning that "the defendant's extensive criminal history involves crimes committed while he lived with his mother."  (Id.).  She thus concludes that "[i]t does not appear . . . that the defendant's family is able to exert sufficient control over the defendant to insure his compliance with orders of the court."  (Id. at 8-9).

Furthermore, Magistrate Judge Dein clearly considered alternatives to detention when evaluating the defendant's risk of flight, as she states that "no condition or combination of conditions – short of pretrial detention – would reasonably assure the appearance of the defendant." Id. at 9.  However, she found that due to "the prospect of a significant jail sentence" as well as the defendant's history of using aliases to conceal his identity, "warrants a conclusion that *no condition or combination of conditions* – short of pretrial detention – would

9

reasonably assure the appearance of the defendant." Id. at 9 (emphasis added).

In response to defendant's second point of contention, namely that the imposition of alternative conditions would be sufficient to "reasonably assure the appearance of the person as required and the safety of any other person and the community," 18 U.S.C. § 3142(g), the defendant fails to suggest any conditions that would meet the standard of reasonable assurance set forth in section (g) of the statute. Defendant asserts that "a release to his mother's home in Brockton, in conjunction with reporting to and monitoring by Pretrial Services," as well as the imposition of a "curfew" and "house arrest," "would reasonably insure the safety of the community while at the same time guard against any risk of flight." Def's Mot. to Revoke at 8.

Such an assertion, in addition to being conclusory in nature and unsupported by factual evidence, is simply incorrect. The defendant's criminal history shows no fewer than 101 "hits," and overwhelming number of which are for criminal convictions. A large majority of these convictions are for crimes involving violent behavior, including assault and battery, and assault and battery with a dangerous weapon. Many of the offenses are also drug related, with several convictions on possession and intent to distribute Class A and Class B substances. In all, at least ten of the offenses in the defendant's criminal history are

10

serious enough to qualify as predicates under the Armed Career Criminal Act.

The conditions of release suggested by defendant will simply not give the reasonable assurance required by 18 U.S.C. § 3142(g) regarding the safety of others and the appearance of the defendant. With regards to the condition that the defendant live in the care of his mother, Magistrate Judge Dein correctly points out in her memorandum that "the defendant's extensive criminal history involves crimes committed while he lived with his mother." She thus reasonably concludes that "[i]t does not appear . . . that the defendant's family is able to exert sufficient control over the defendant to insure his compliance with orders of the court. The danger to the community is high." Memorandum and Order at 8-9.

Imposition of a curfew would similarly fail to meet the reasonable assurance standard, since the defendant could just as easily commit crimes during daylight hours. Requiring frequent contact with Pretrial Services would also not succeed in meeting the standard of assurance, since defendant has shown himself amenable to committing crimes even during probationary periods when he was required to be in regular contact with the police. Def Mot. To revoke at 3. Imposing a house arrest upon the defendant does not give a high level of assurance, since many of the defendant's past crimes, such as possession and distribution

of controlled substances, can be easily accomplished without leaving home.

Finally, none of the conditions suggested by the defendant reasonably assure the appearance of the defendant in court. As Magistrate Judge Dein cogently stated, "[t]he prospect of a significant jail sentence provides a clear and unequivocal impetus to flee, and defendant's record reveals a number of defaults . . . [and] a number of aliases." Memorandum and Order at 9. The defendant refers to his long-standing ties to the community and the existence of an extensive family as factors skewing against the risk of flight. However, the statute demands a "reasonable assurance," and given that the defendant is facing a mandatory minimum sentence of fifteen years upon conviction in the instant case, "no condition or combination of conditions – short of pretrial detention — would reasonably assure the appearance of the defendant." Id.

### IV. MAGISTRATE JUDGE DEIN GAVE APPROPRIATE CONSIDERATION TO THE DEFENDANT'S CRIMINAL RECORD IN ORDERING PRETRIAL DETENTION

Defendant argues that because his criminal record "demonstrated that he was amenable to court-ordered supervision," Judge Dein should not have given "undue weight" to the "District Court dispositions associated with [his] battle with heroin." Def's Mot. to Revoke at 7-8. In essence, the defendant posits that because many of his prior convictions have come as a result of guilty pleas, Magistrate Judge Dein should have rewarded this

12

behavior by not giving "undue weight" to those convictions. However, simply because a defendant, in this one whose criminal history is shockingly extensive, chose to plead guilty rather than go before a jury, this does not change the fact that he has been convicted of that which he pleaded guilty to just as much as if there had been a jury trial.  Indeed, 18 U.S.C. § 1342(g)(3), which lists the factors relating to the history and characteristics of a defendant that should be considered by the judicial officer, includes "criminal history" as one of these factors, but makes absolutely no distinction between convictions arising out of a jury trial and those arising from a guilty plea. As such, Magistrate Judge Dein's consideration of the defendant's litany of drug convictions and violent crimes was not "undue," but rather was wholly appropriate under the guidelines set forth by the statute.

    WHEREFORE, for all the reasons advanced by the Government thus far and within this opposition, the Government respectfully requests that the Court deny Defendant John Handy's motion to revoke the detention order.

                                                Respectfully submitted,

                                                MICHAEL J. SULLIVAN,
                                                United States Attorney

                                       By:   /s/Antoinette E.M. Leoney
                                                Antoinette E.M. Leoney
                                                Assistant U.S. Attorney
                                                1 Courthouse Way, Suite 9200
                                                Boston, MA 02210
Dated: August 13, 2006            (617) 748-3103

**CERTIFICATE OF SERVICE**

Suffolk, ss.                                               August 13, 2006

    I hereby certify that a copy of the foregoing was served electronically this day upon counsel for the defendant, Timothy G. Watkins, Esq., Federal Defender's Office, 408 Atlantic Avenue, 3rd Floor, Boston, MA 02210.

                                                /s/Antoinette E.M. Leoney
                                                Antoinette E.M. Leoney
                                                Assistant U.S. Attorney