UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | CRIMINAL NO. 04-10361-NG |
| v. | ) | |
| | ) | |
| JOHN HANDY | ) | |

**GOVERNMENT'S MEMORANDUM IN RESPONSE TO THE DISTRICT COURT'S
ORDER REQUESTING BRIEFS ON DUAL PROSECUTION**

The United States of America, by and through its attorneys, Michael J. Sullivan, United States Attorney, and Antoinette E. M. Leoney, Assistant United States Attorney, submits this memorandum in response to the order of the District Court (Gertner, J.) requesting briefs on the following issues raised by the United States Attorney's decision to seek a waiver of the Petite policy in order to prosecute the defendant, John Handy ("Handy").

   A.   What issues does the Department of Justice's "Petite
        policy," which generally prohibits dual prosecution,
        raise for the federal prosecution of Handy for being a
        felon in possession of a firearm in violation of 18
        U.S.C. § 922(g)(1)?

   B.   What effect, if any, does the Supreme Court decision in
        United States v. Lopez, 514 U.S. 549 (1995), have on
        the legality of dual prosecution?

   C.   What is the significance of dual prosecution for the
        admissibility of the defendant's state court plea?

In summary, the Government responds to the Court's three questions as follows. First, application of the Petite Policy raises no issues with respect to this prosecution. Absent a showing of discriminatory bias, the United States Attorney is not accountable to the Court whether a waiver of the Petite policy

was sought from the Department of Justice in order to prosecute Handy. The <u>Petite</u> policy is not a constitutional mandate and confers no rights on Handy. In fact, however, the United States Attorney approved, as an initial matter, the dual prosecution of Handy and thereafter sought and received a waiver of the <u>Petite</u> policy from the Department of Justice.

Second, the Supreme Court decision in <u>United States v. Lopez</u> legitimizes dual prosecution. The legality of dual prosecution rests upon the doctrine of dual sovereignty, which is a fundamental principle of federalism. Moreover, the First Circuit and its sister circuits have repeatedly held that <u>Lopez</u> has no bearing on the constitutionality of 18 U.S.C. § 922(g).

Third, Handy's state guilty plea should be admissible in a federal prosecution for felon in possession of a firearm even if the state court did not inform Handy of the possible federal consequences of his plea. As regards Handy, the state and federal prosecutors did not act in concert: no federal authorities were involved in Handy's case until well after Handy had pled guilty and been sentenced in state court.

<u>FACTUAL BACKGROUND</u>

In May, 2004, a reliable confidential informant ("CI") informed Massachusetts State Police Trooper Edward McDonald ("McDonald") that an individual named "Joe," later identified as the defendant, Handy, was selling heroin in Brockton,

Massachusetts.  (<u>See</u> Ex. A ¶¶ 2-4; Ex. B ¶ 1.)  The CI completed two controlled narcotics purchases inside the residence of 41 Weston Street, Brockton, MA, for McDonald, and McDonald subsequently applied for and received a state search warrant for the residence.  (<u>See</u> Ex. B ¶¶ 1-2.)

On June 2, 2004, at approximately 6:45 p.m., McDonald and officers from the Massachusetts State Police and the Brockton Police narcotics unit executed the search warrant at 41 Weston Street.  (<u>See</u> Ex. B ¶ 3)  They knocked and announced their presence, and when no one answered the door, they made a forceful entry to conduct the search.  <u>Id</u>.  The officers found Handy inside a bedroom in the dwelling, and in their search, they discovered a plastic bag containing a tan substance, which they suspected of being heroin, in the second floor hallway; one fully loaded Smith and Wesson .38 caliber special handgun under the floor board in a bedroom; and miscellaneous paperwork and mail addressed to "John Handy" at 41 Weston Street in a drawer in the same bedroom where the gun and Handy were found.  (<u>See</u> Ex. B ¶ 3; Ex. D.)  The officers arrested Handy, advised him of his <u>Miranda</u> rights, and transported him to the Brockton Police Department. (<u>See</u> Ex. B ¶ 4.)  At 8:02 p.m. that same evening, Handy was booked and charged with possession of a Class A substance, unlicensed possession of ammunition, and unlicensed possession of a firearm.  (<u>See</u> Ex. C.)

On July 1, 2004, Handy appeared in Brockton District Court, and after the court dismissed the ammunition charge, Handy pled guilty to the unlicensed possession of a firearm and the possession of a Class A controlled substance charges.  The Court should note that Handy was not charged by the state with being a felon in possession of a firearm and ammunition, and accordingly he did not plead to such offenses.  The Brockton District Court sentenced him to six months commitment on each count to be served concurrently.  On August 17, 2004, Handy received an additional state sentence due to a probation violation triggered by his plea.

Shortly after Handy pled guilty, the Plymouth District Attorney's Office realized that Handy had not been prosecuted using the state armed career criminal statute with its mandatory fifteen year term of incarceration.  See Mass Gen. Laws 269 § 10G(c).  As a result, the Plymouth District Attorney's office referred the case to the United States Attorney's Office.

The Assistant United States Attorney in charge of the case, Marianne Hinkle, sought approval for a waiver of the Justice Department's dual prosecution policy from the United States Attorney, Michael J. Sullivan, who approved her request and applied to the Department of Justice for a waiver on November 3, 2004.  On November 16, 2004, the Department of Justice granted the waiver, and on December 8, 2004, the Grand Jury indicted

4

Handy for being a felon in possession of a firearm and
ammunition, in violation of 18 U.S.C. 922(g)(1).  On July 12,
2005, Handy was arraigned in federal court on one count of
violating 18 U.S.C. 922(g)(1).

ARGUMENT

I.   <u>The United States Attorney's decision to seek a waiver of
     the internal Justice Department policy on dual prosecution
     raises no reviewable issues for the District Court.</u>

     The Department of Justice's policy on dual prosecution
raises no reviewable issues in <u>United States v. John Handy</u> for
the District Court.  "[F]ederal prosecution is not barred by a
prior state prosecution of the same person for the same acts."
<u>Abbate v. United States</u>, 359 U.S. 187, 194 (1959).  In order to
undertake a dual prosecution, the United States Attorney must
obtain a waiver of the <u>Petite</u> policy, an "internal Justice
Department policy forbidding federal prosecution of a person for
alleged criminality which was 'an ingredient of a previous state
prosecution against that person' to which exceptions are made
only if the prosecution will serve 'compelling interests of
federal law enforcement.'"  <u>United States v. McCoy</u>, 977 F.2d 706,
712 (1st Cir. 1992) (citing <u>Thompson v. United States</u>, 444 U.S.
248, 248 (1980)).  The policy, however, is merely administrative,
and although the availability of dual prosecution rests solidly
on the dual sovereignty inherent in the federal system, the
<u>Petite</u> policy is "not a matter of constitutional law."  <u>Id.</u>

5

(citing <u>United States v. Booth</u>, 673 F.2d 27, 30 (1st Cir. 1982));
<u>see also</u> <u>Rinaldi v. United States</u>, 434 U.S. 22, 28-29 (1977)
(explaining that the <u>Petite</u> policy is "not constitutionally
mandated").  The First Circuit has held that "the Petite policy
and cases construing it stand only for the proposition that the
government's motion to dismiss should be granted when it
discovers that it is conducting separate prosecutions for the
same offense" and that "the doctrine does not create a
corresponding right in the accused."  <u>McCoy</u>, 977 F.2d at 712
(quoting <u>Booth</u>, 673 F.2d at 30); <u>see also</u> <u>United States v. Gary</u>,
74 F.3d 304, 313 (1st Cir. 1996) ("We have repeatedly held that
the Petite policy does not confer substantive rights on criminal
defendants").  The United States Attorney's decision to seek a
waiver of the <u>Petite</u> policy was an act of prosecutorial
discretion, which, absent a showing of improper bias, is not
reviewable by the District Court; the defendant cannot seek
relief based on the <u>Petite</u> policy; and the government has not
moved to dismiss the case pursuant to the policy.  The District
Court therefore has no grounds for considering the relation of
the <u>Petite</u> policy to the federal prosecution of Handy.

    1.   <u>The United States Attorney is not accountable to the
District Court for his prosecutorial decisions absent
evidence of discriminatory bias.</u>

The District Court should not review the United States
Attorney's prosecutorial decision to seek a waiver of the Justice

6

Department's internal policy on dual prosecution.  Absent a
showing of a discriminatory motive, the United States Attorney
has "broad discretion to enforce the Nation's criminal laws."
United States v. Armstrong, 517 U.S. 456, 464 (1996) (citing
Wayte v. United States, 470 U.S. 598, 607 (1985)).  In an
"ordinary case," the District Court should grant the United
States Attorney's decisions a "presumption of regularity."  Id.;
see also United States v. Peterson, 233 F.3d 101, 105 (1st Cir.
2000) ("We presume that the prosecutor acted in good faith."
(quoting  United States v. Bassford, 812 F.2d 16, 19 (1st Cir.
1987)).  The fundamental rule regarding prosecutorial discretion
is that "[as] long as the prosecutor has probable case to believe
that the accused committed an offense defined by statute, the
decision whether or not to prosecute, and what charge to file or
bring before a grand jury, generally rests entirely in his
discretion."  Id. (citing Bordenkircher v. Hayes, 434 U.S. 357,
364 (1978)).  As the Supreme Court explained in Wayte v. United
States, 470 U.S. 598 (1985), generally courts are not competent
to analyze "the strength of [a] case, the prosecution's general
deterrence value, the Government's enforcement priorities, and
the case's relationship to the Government's overall enforcement
plan."  470 U.S. at 607-08.  Judicial review of prosecutorial
discretion creates "systemic costs" by delaying criminal
proceedings, by "threaten[ing] to chill law enforcement by

subjecting the prosecutor's motives and decision making to outside inquiry and [by undermining] prosecutorial effectiveness by revealing the Government's enforcement policy." Id.; see also United States v. Smith, 178 F.3d 22, 26 (1st Cir. 1999) ("The exercise of prosecutorial discretion, at the very core of the executive function, has long been held presumptively unreviewable." (quoting In re Sealed Case, 131 F.3d 208, 214 (D.C. Cir. 1997)).  Therefore, the District Court should not second-guess the United States Attorney's decision to prosecute Handy and should not substitute its judgment for his in the "performance of a core executive constitutional function." Armstrong, 517 U.S. at 465.

2.    The Petite Policy confers no rights upon the defendant.

Handy cannot ask the District Court to review the United States Attorney's decision to seek a waiver of the Petite policy. The First Circuit and the other courts of appeal have consistently held that the Justice Department's internal policy on dual prosecution confers no substantive rights on a defendant. See McCoy, 977 F.2d at 712 ("[T]he doctrine does not create a corresponding right in the accused) (quoting Booth, 673 F.2d at 30)); see also, e.g., United States v. Wilson, 413 F.3d 382, 389 (3d Cir. 2005) (The Petite policy "do[es] not create enforceable rights for criminal defendants"); United States v. Howard, 590 F.2d 564 (4th Cir. 1979) (same); United States v. Rodriquez, 948

8

F.2d 914, 915 (5th Cir. 1991) (same); <u>United States v. Renfro</u>,
620 F.2d 569, 574 (6th Cir. 1980) (same); <u>United States v. Jones</u>,
808 F.2d 561, 565 (7th Cir. 1986) (same); <u>United States v.
Lester</u>, 992 F.2d 174, 176 (8th Cir. 1993) (same); <u>United States
v. Snell</u>, 592 F.2d 1083, 1088 (9th Cir. 1979) (same); <u>United
States v. Thompson</u>, 579 F.2d 1184, 1186 (10th Cir. 1978) (same);
<u>United States v. Alston</u>, 197 U.S. App. D.C. 276 (D.C. Cir. 1979)
(same).  Given the unanimity of the courts of appeal, the
District Court should not consider any request by Handy for
relief based on the Justice Department's administrative policy,
nor should the Court entertain any such thing on its own accord.

>    3.    <u>The United States Attorney has not asked the District
>          Court to offer Handy relief from dual prosecution
>          pursuant to the internal Justice Department policy.</u>

The United States Attorney has not moved to dismiss the case
against Handy because it accidently undertook a dual prosecution
in violation of Justice Department policy, and therefore, the
District Court has no ground for reviewing the United States
Attorney's decision to obtain a waiver of the <u>Petite</u> policy.  <u>See</u>
<u>McCoy</u>, 977 F.2d at 712 (explaining that the Petite policy only
provides for granting the government's motion to dismiss when it
discovers an unintended dual prosecution (citing <u>Booth</u>, 673 F.2d
at 30)); <u>see also</u> <u>Petite v. United States</u>, 361 U.S. 529 (U.S.
1960) (remanding a case to the lower court to vacate its judgment
because the government sought remand).  In the instant case,

waiver of the _Petite_ policy has been reviewed and approved in the United States Attorney's Office and in the Department of Justice. _See_ USAM Section 9-2.031.

The United States Attorney's decision to seek a waiver of the _Petite_ policy was well-considered and consistent with Department of Justice requirements, and an Assistant Attorney General of the United States approved the waiver. The United States Attorney has not moved to dismiss the case against Handy, and therefore, the District Court has no grounds for considering the effect of the _Petite_ policy on the case at bar.

II. <u>The Supreme Court decision in United States v. Lopez has no bearing on the legality of the dual prosecution of Handy.</u>

The Supreme Court decision in <u>United States v. Lopez</u> rests on a recognition of the dual sovereignty of the State and the Federal governments that ungirds the power of the Plymouth District Attorney and the United States Attorney to prosecute Handy for the same act. <u>See</u> 514 U.S. at 575-76 (Kennedy, J., concurring) (discussing the dual sovereignty and federalism). In <u>Lopez</u>, the Court ruled that the Commerce Clause does not give Congress the power to criminalize possession of a firearm within 1000 feet of a school because, on its face, such possession does not substantially affect interstate commerce and because the States and the Federal governments are separate sovereigns with overlapping but different powers. <u>Id.</u> at 551-52. The Court

10

explained that then 18 U.S.C. § 922(q) did not have sufficient jurisdictional language tying it to interstate commerce, but the Court did not question Congressional power to regulate acts that do affect interstate commerce.  <u>See</u> <u>id.</u>  Since <u>Lopez</u>, the First Circuit has repeatedly held that 18 U.S.C. § 922(g), the statute under which Handy has been charged, is a valid exercise of Congressional power and has sufficient jurisdictional language. <u>See</u> <u>United States v. Cardoza</u>, 129 F.3d 6, 10-11 (1st Cir. 1997) (calling an extension of <u>Lopez</u> to section 922(g) "hopeless on . . . the law" (quoting <u>United States v. Blais</u>, 98 F.3d 647, 649 (1st Cir. 1996), cert. denied, 117 S. Ct. 1000 (1997)) (collecting cases); <u>see also</u> <u>United States v. Darrington</u>, 351 F.3d 632, 634 (5th Cir. 2003) (holding that section 922(g) is a valid exercise of Congressional power); <u>United States v. Mitchell</u>, 299 F.3d 632, 635 (7th Cir. 2002) (same).  <u>Lopez</u> therefore has no direct bearing on the federal prosecution of Handy for violating 18 U.S.C. § 922(g)(1).

    The <u>Lopez</u> Court's defense of federalism does not implicate the legality of dual prosecution as such because federalism creates the possibility of dual prosecution.  The Constitution does not "deny the State and Federal Governments the power to prosecute for the same act," <u>Rinaldi</u>, 434 U.S. at 28, because it enshrines the dual sovereignty of the State and Federal governments.  <u>Id.</u> at 29.  As the Court explained in <u>Heath v.</u>

Alabama, 474 U.S. 82 (1985), dual prosecution does not violate the Double Jeopardy Clause because "[w]hen a defendant in a single act violates the 'peace and dignity' of two sovereigns by breaking the laws of each, he has committed two distinct 'offences.'"  474 U.S. at 88 (quoting United States v. Lanza, 260 U.S. 377, 382 (1922)); see also United States v. Bouthot, 685 F. Supp. 286, 293 (D. Mass. 1988) (holding that unlicensed possession of a firearm under Mass. Gen. Laws. § 10 and being a felon in possession of a firearm in violation of 18 U.S.C. § 922 are separate statutory offenses).  Absent a showing that the federal prosecution of Handy has compromised dual sovereignty and therefore threatened the federal system, the Lopez Court's defense of federalism raises no issues for the case at bar.

Moreover, the constitutionality of dual prosecution is well-established.  See Heath, 474 U.S. at 93 ("[T]he Federal Government has the right to decide that a state prosecution has not vindicated a violation of the 'peace and dignity' of the Federal Government." (citation omitted)).  The dual sovereignty of the federal system that allows for dual prosecution "is not simply a fiction that can be disregarded in difficult cases" because "it is axiomatic that '[in] America, the powers of sovereignty are divided between the government of the Union, and those of the States.'"  Id. at 92-93 (quoting McCulloch v. Maryland, 4 Wheat. 316, 410 (1819)).  As the First Circuit has

noted, "[i]f a precedent of [the Supreme] Court has a direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions." <u>Medeiros v. Vincent</u>, 431 F.3d 25, 34 (1st Cir. 2005) (quoting <u>Rodriguez de Quijas v. Shearson/Am. Express, Inc.</u>, 490 U.S. 477, 484 (1989)). In the instant case, where Supreme Court precedents apply and the First Circuit has not questioned the basic validity of dual prosecution, it is not for the District Court to re-examine long-standing principles. <u>See United States v. Ivery</u>, 427 F.3d 69, 75 (1st Cir. 2005) (noting that lower courts should not "anticipate the Supreme Court's reconsideration of its prior rulings").

III. <u>Handy's state court guilty plea should be admissible in a federal prosecution for violating 18 U.S.C. § 922(g)(1).</u>

Handy's state court guilty plea should be admissible in the instant case. The threshold issue is whether Handy's plea was valid. A guilty plea "entered by one fully aware of the direct consequences . . . must stand unless induced by threats . . . misrepresentation . . . or perhaps by [bribes]." <u>United States v. Bouthot</u>, 878 F.2d 1506, 1511 (1st Cir. 1989) (citing <u>Shelton v. United States</u>, 242 F.2d 101, 115 (5th Cir. 1957) (Tuttle, J., dissenting), quoted with approval in <u>Brady v. United States</u>, 397 U.S. 742, 755 (1970)). However, since the "state and federal

13

systems are separate and distinct," a defendant "need only be
informed of the direct consequences he may face within the
particular system." Bouthot, 878 F.2d at 1511 (quoting United
States v. Long, 852 F.2d 975, 979 (7th Cir. 1988)). Handy's
guilty plea is valid unless he can show evidence that he was not
fully aware of the direct state consequences of his plea or that
he was subject to threats, misrepresentations, or bribes.

Absent such a showing, his state court plea is admissible in
subsequent proceedings as a prior conviction. The Supreme Court
has explained that "[a] guilty plea is more than a confession
which admits that the accused did various acts; it is itself a
conviction." Boykin v. Alabama, 395 U.S. 238, 242 (1969).
Federal Rule of Evidence 803(22) states that the hearsay rule
does not bar evidence of a previous conviction and that a
previous conviction is admissible to prove the truth of the
matter asserted. See Fed. R. Evid. 803(22). Handy's state court
guilty plea is admissible as evidence of his prior conviction.

Handy may argue that he was not fully aware that his guilty
plea could lead to federal prosecution or that the state has
orchestrated the federal prosecution, but these arguments are
unavailing. The First Circuit has held that a failure to inform
a defendant about potential federal consequences of a state court
plea does not invalidate the plea or prevent its use in
subsequent federal proceedings so long as state and federal

14

prosecutors did not act "in concert."  Bouthot, 878 F.2d at 1511,
1512 n.4.  To the extent that state and federal prosecutors act
in concert, they may violate the dual sovereignty that ungirds
the dual prosecution powers of the State and Federal governments.
See Bartkus v. Illinois, 359 U.S. 121, 123-24 (1959) (suggesting
that where one sovereign is "merely a tool" of the other, the
principle of dual sovereignty may be violated).  However, the
First Circuit and its sister courts of appeal have held that even
extensive collaboration between state and federal authorities
does not violate dual sovereignty.  See United States v. Guzman,
85 F.3d 823, 827 (1st Cir. 1996) (limiting "sham prosecution" to
"situations in which one sovereign so thoroughly dominates or
manipulates the prosecutorial machinery of another that the
latter retains little or no volition in its own proceedings");
United States v. 38 Whalers Cove Drive, 954 F.2d 29, 38 (2d Cir.
1991) (same); United States v. Paiz, 905 F.2d 1014, 1024 (7th
Cir. 1990) (explaining that the "sham prosecution" exception to
the legality of dual prosecution is "extremely narrow")
(collecting cases).  The Guzman Court held that a defendant "must
produce some evidence tending to prove that . . . one sovereign
was a pawn of the other, with the result that the notion of two
supposedly independent prosecutions is merely a sham" before the
government "must shoulder the burden of proving that one
sovereign did not orchestrate both prosecutions."  85 F.3d at

15

827.  In <u>United States v. Campusano</u>, 947 F.2d 1 (1st Cir. 1991),
the Court refused to find that state and federal authorities had
acted in concert where state and federal law enforcement officers
jointly participated in an arrest and collaborated in collecting
and retaining evidence.  947 F.2d at 5.  The Court allowed the
use of a guilty plea to drug trafficking and unlicensed
possession of a firearm and the corresponding plea colloquy in a
federal prosecution for using or carrying a firearm during a drug
trafficking crime even though the defendant had not been informed
of the possible federal consequences of his state plea.  <u>Id.</u>

     In the instant case, no federal authorities were involved
until after Handy pled guilty in state court.  State prosecutors
contacted the United States Attorney's Office after Handy was
sentenced.  Since that time, the United States Attorney has
independently controlled the federal prosecution of Handy for
violating 18 U.S.C. § 922(g)(1).  In other words, the Plymouth
District Attorney's Office has played no role whatsoever in this
federal prosecution of Handy, just like the United States
Attorney's Office played no role in the prior state prosecution
of Handy.  There is thus no evidence that the Plymouth District
Attorney's Office has so "dominated" the Department of Justice
that the Department has retained little or no volition of its
own.  *See* <u>Guzman</u>, 85 F.3d at 827.  Given that the state and
federal authorities have acted as separate sovereigns, Handy's

state court guilty plea should be admissible in the case at bar.

CONCLUSION

WHEREFORE, for all the reasons advanced above, the
government respectfully submits that the United States Attorney's
prosecutorial decision to seek a waiver from the internal Justice
Department policy on dual prosecution raises no reviewable issues
for the District Court.

Respectfully submitted,

MICHAEL J. SULLIVAN,
United States Attorney

By:  /s/Antoinette E.M. Leoney
ANTOINETTE E.M. LEONEY
Assistant U.S. Attorney
Dated: August 14, 2006         (617) 748-3100

**CERTIFICATE OF SERVICE**

Suffolk, ss.                           August 14, 2006

I hereby certify that a copy of the foregoing was served
electronically this day upon counsel for the defendant, Timothy
G. Watkins, Esq., Federal Defender's Office, 408 Atlantic Avenue,
3rd Floor, Boston, MA 02210.

/s/Antoinette E.M. Leoney
ANTOINETTE E.M. LEONEY

17

# EXHIBIT
# A

BROCKTON, SS.

ROCKTON DISTRICT COURT
DOCKET # 040526-ku-1

102797

AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT
G.L. c. 276, ss, 1 to 7; St. 1964, c. 557

05/26/04

I, Edward T. McDonald, being duly sworn, depose and state that the following is true to the best of my knowledge and belief:

1.     I am a Massachusetts State Police Officer. I have been so employed since October of 1993. During my career as a State Police Officer, I have been assigned to both the Uniformed Branch, and the Bureau of Investigative Services. Presently, I am assigned to the narcotics section of the Plymouth County District Attorney's Office. My duties include but are not limited to the investigation of narcotics violations and offenses. Prior to becoming a state trooper I was employed by the Metropolitan Police Department, Washington D.C. from 1990 thru 1993. During my career as a law enforcement officer I have attended several narcotic seminars and courses. I have also been involved in approximately four hundred and seventy five narcotics arrests. I have had the opportunity to work with and be trained by more experienced officers in the investigation of major narcotics organizations.

2.     In the course of performing my duties as a police officer, I have been involved in narcotics purchases as an undercover police officer. I have participated in various aspects of narcotics investigations including controlled purchases, controlled deliveries, undercover purchases, rips and surveillance. As a result of my experience and training I am familiar with most aspects of the narcotic trade, the various means of negotiations, communication, and transportation as well as the appearance, packaging, texture and smell of certain narcotics. I am familiar

**004**

1

with the vernacular, and/or code words and terms, which sellers and users of narcotics use.  As a police officer I have worked with members of the U.S. Alcohol Tobacco and Firearms, Federal Bureau of Investigation and U.S. Drug Enforcement Agency in cases involving narcotics and firearms offenses.

3.       During the Month of May 2004, this affiant met with a confidential reliable informant, hereinafter referred to as CI#1, regarding heroin distribution occurring within the City of Brockton.  CI#1 is familiar with the packaging and distribution of heroin, having been involved in the purchasing and usage of heroin for the past several years.  CI #1 advises that it can purchase heroin in the city of Brockton from a person known to it as "Joe".  CI#1 states it would dial cellular telephone number (774) 274-9820 to make arrangements with "Joe" to purchase an amount of narcotics (heroin).  Arrangements would then be made to meet at a public location within the City of Brockton or at "Joe's" residence of 41 Weston Street, Brockton, MA.  CI#1 states it has been purchasing heroin from "Joe" for approximately one year.  CI#1 states "Joe" lives at 41 Weston Street, Brockton.  CI#1 describes "Joe" as a black male, approximately 30yrs. of age, 5'08 in height, 190 in weight, husky build, short brown hair, brown eyes.

4.       CI#1 has proven reliable in the past.  During the months of February and March 2004, CI#1 provided this affiant with information concerning crack cocaine distribution by a Hispanic male known to it as "Little" within the City of Brockton. CI#1 conducted several controlled purchases of narcotics (crack cocaine) from "Little" for this affiant.  This affiant identified "Little" as Jose A. Figueroa, DOB 08/04/83 and his co-conspirator Leisa A. Lorenzi, DOB 04/03/71.  Figueroa and Lorenzi resided at 26 Short Street, Apartment B, Randolph, MA and dealt crack

2                                                                                                              **005**

cocaine daily within the city of Brockton. This officer sought and received search warrants from Brockton District Court for Lorenzi's 2000 Jeep Ma Registration 8240JI and their residence of 26 Short Street, Apartment B, Randolph, MA. Both search warrants were executed and seized were 102 twists of crack cocaine, two handguns, 140 rounds of ammunition, and $6568.00 in U.S. Currency. Figueroa and Lorenzi were placed under arrest and charged with 1) Possession with Intent to Distribute Class B Substance, 2) Conspiracy To Violate the Controlled Substance Act, 3) Drugs School Zone, 4) Unlawful Possession Firearm (two counts), 5) Unlawful Possession Ammunition. Both Figueroa and Lorenzi are currently awaiting trial in Brockton and Quincy District Courts.

5.      On or about May 22, 2004, CI#1 agreed to make a controlled purchase of heroin from "Joe" in the city of Brockton for this affiant. CI#1 was searched by this affiant and found to have no narcotics or monies on its person. This affiant gave CI#1 an amount of U.S. Currency to complete the narcotics transaction. CI#1 then dialed cellular telephone number (774) 274-9820 and made arrangements with "Joe" to purchase an amount of narcotics (heroin) for this affiant. This affiant conducted surveillance. This affiant observed CI#1 travel to 41 Weston Street, Brockton and enter the aforementioned address through the left side door. After the controlled narcotics purchase this affiant met with CI#1 and CI#1 gave to this officer the narcotics (heroin) it purchased from "Joe". At the Middleboro State Police Barrack the contraband was field tested with positive results for the presence of heroin.

6.      A check with Eastern Utilities Security reveals the only service at 41 Weston Street, Brockton to be in the name of Shirelle Carrigan with a listed

3

telephone number of (508) 894-2882, SSN# 010583150, and has had service since 05/02/03. A check with the Brockton Assessor's Office on 41 Weston Street, Brockton reveals the owner to be Shirelle Carrigan. Furthermore, the Brockton Assessor's Office lists 41 Weston Street, Brockton as a single family residential dwelling. A check with the Massachusetts Registry of Motor Vehicles on license number #010583150 reveals it to be listed to Shirelle Carrigan, DOB 11/05/63, SSN 010583150, of 229 Columbia Road, Apartment 4, Dorchester, MA. A check with the Massachusetts Board of Probation on Shirelle Carrigan, DOB 11/05/63, reveals 14 adult arraignments, two of which are narcotics offenses; 1) Possession With Intent To Distribute Class D and 2) Conspiracy To Violate Controlled Substance Act.

7.      On or about May 26, 2004, CI#1 agreed to make a controlled purchase of heroin from "Joe" in the city of Brockton for this affiant. CI#1 was searched by this affiant and found to have no narcotics or monies on its person. This affiant gave CI#1 an amount of U.S. Currency to complete the narcotics transaction. CI#1 then dialed cellular telephone number (774) 274-9820 and made arrangements with "Joe" to purchase an amount of narcotics (heroin) for this affiant. This affiant conducted surveillance. This affiant observed CI#1 travel to 41 Weston Street, Brockton and enter the aforementioned address through the left side door. After the controlled narcotics purchase this affiant met with CI#1 and CI#1 gave to this officer the narcotics (heroin) it purchased from "Joe". At the Middleboro State Police Barrack the contraband was field tested with positive results for the presence of heroin.

8.      Investigators know from prior narcotic investigations that drug dealer's

4                                                                                                      **007**

activities concerning their illicit enterprise interconnect many aspects of their legitimate lives. These areas concern their primary residences, motor vehicles, electronic communications (beepers, cellular telephones, faxes, computers) and assorted personal identification needed to maintain legitimacy. Drug dealers will often times provide false information concerning rental agreements, motor vehicle registrations, licenses, birth certificates, telephone numbers, family members, place of birth and social security numbers. Drug dealers often times maintain a primary and secondary residence to secrete their drugs and its proceeds. At these residences drug dealers also maintain records of drug quantities and monies owed or received from sales. These records are often referred to as "cuff sheets". Drug dealers alternate locations regularly where the drugs and proceeds are kept. Drug dealers utilize an assortment of motor vehicles, some equipped with after market hides to secrete drugs, registered to parties other than themselves, and often times utilize rental vehicles to further their illicit enterprise. During this target investigation we have identified many of these stated facts to be true. To complete a thorough investigation of a drug dealers activities investigators know that often times what appears to be legitimate is a camouflage to frustrate law enforcements investigative efforts. Whether intentional or not a drug dealer creates a nexus that envelopes his entire structural existence.

9.     It is this affiant's opinion that "Joe" is engaged in a continuing narcotics enterprise (heroin). This opinion is based on the following;

a.     CI#1 provided information to this affiant that "Joe" has an ongoing narcotics (heroin) enterprise and it states it has purchased heroin from "Joe" in the past and no requests have been denied.

b.     CI#1 was able to arrange for two controlled purchases of narcotics (heroin) from "Joe". Both of which were conducted inside of 41 Weston Street, Brockton,

5                                                              **008**

MA.

c.    CI#1 provided the cellular telephone number (774) 274-9820, which "Joe"

uses to further his illegal narcotics distribution (heroin). This affiant has

corroborated this information by calling the telephone number and arranging for

two controlled purchases of illegal narcotics (heroin).

d.    The controlled purchases made by CI#1 are consistent with the descriptive

qualities of narcotics, how they are packaged and presented for distribution. This

officer is familiar with the descriptive qualities of narcotics (heroin) from previous

training, experience and undercover purchases.

e.    It is this affiant's opinion that the primary residence and distribution point of

"Joe's" narcotics (heroin) is 41 Weston Street, Brockton, Massachusetts. This

opinion is based on information provided by CI#1 and the completion of two

controlled purchases of narcotics (heroin) at the aforementioned location.


10.    Based upon the foregoing reliable information, and upon my personal

knowledge and belief and attached affidavits, there is probable cause to believe that

the property hereinafter described (has been stolen, or is being concealed, etc.)

Heroin a class "A" substance, in Violation of Chapter 94C, Section 32, M.G.L.A.

and may be found in the possession of  "Joe" or any other person present who may

be found to have such property on his or her person or under his or her control

located at 41 Weston Street, Brockton, Massachusetts.


11.    The property for which I seek the issuance of a search warrant is the

following: Heroin a Class "A" substance, all controlled substances which have

been manufactured, delivered, distributed, dispensed or acquired in violation of

Chapter 94C, M.G.L.A.  All materials, products, and equipment of any kind which

are used, or intended for use, in manufacturing, compounding, processing,

**009**

delivering, dispensing, distributing, importing, or exporting any controlled

substance in violation of Chapter 94C, M.G.L.A. All books, records and moneys,

computers, disks, floppy discs, used or intended for use in the procurement,

manufacture, compounding, processing, delivery or distribution.

12.    Wherefore, I respectfully request that the court issue a warrant and order

seizure, authorizing the search of 41 Weston Street, Brockton, Massachusetts

which is more particularly described as a two and half story single family

residential dwelling, wooden shingle siding, peach in color having white trim with

a gray asphalt colored gambrel roof. On the top sides of the house the shingles

have faded to a natural wood color. There are three brick chimneys on the roof. If

standing on Weston Street facing the building there is a driveway to the right side

of the house. If you go down the driveway there is a set of stairs that lead to a

wooden porch which lead to a wooden door. The part of the house that faces

Weston Street does not have a door, the first floor has two bay windows and the

second floor has three windows and to the right side there is a carousel style

wooden porch, in front of this porch on the lawn there is a white mailbox with the

number #41 on it. On the left side of the house there is a concrete walkway that

leads to a white wooden door with glass windows, once inside this door there is

another door to the left, this is the door we seek access and directing that if such

property or evidence or any part there of be found that it be seized and brought

before the BROCKTON DISTRICT Court, together with such other and further

relief that the court may deem proper.

**010**

7

Edward T. McDonald
MASSACHUSETTS STATE POLICE

Then personally appeared the above named Edward T. McDonald and made oath that the foregoing by him subscribed is true.

Before me,

5/26/04

8

**011**

I received the attched search warrant on _MAY  26th_, 2004
and have executed it as follows:

On _JUNE 2nd_, 2004 at _1845_ o'clock _P_ M., I searched
(the person) _____ described in the warrant and (the premises)_____
_41 WESTON Street BrockTON_

The following is an inventory of property taken pursuant to the warrant:

1. ONE PLASTIC BAGGIE CONTAINING A TAN SUBSTANCE (HEROIN) / 2nd Fla Hallway / TPR. J. ARROYO
2. Loaded (Six RNds, 38 spl AMMO) Smith Wesson .38 spl HANDGUN Serial # 182972 INSIDE A BLACK LEATHER HOLSTER / UNDER 2nd BEDROOM IN BEDROOM / DET. G. KHOURY
3. MISC PAPERWORK IN THE NAME JOHN HAWY / BEDROOM DRAWER / TPR. P. COLEMAN
                                                                    DET. T. KEATING



No. 0406626 KHL-1

2004
DISTRICT COURT DEPARTMENT
Brockton DIVISION
COURT

COMMONWEALTH

vs.

Controlled Substance

SEARCH WARRANT

G.L. c. 276, ss. 1 to 7
(St. 1964, c. 557)

This warrant must be returned
to the district court named within
seven days of its issue.

This inventory was made in the presence of _Lieutenant A. Thomas, TPR. P. Coleman_
_____ and _TPR. E. McDonald_ _____
I swear that this inventory is a true and detailed account of all the property taken by me on the

Subscribed and sworn to and returned before me this _7th_ day of _JUNE_
2004.

                                        Clerk
                                        Assistant Clerk

...plicable clauses.

012

JACK ERTH 12-1-87
CARRGAU

013

3 94 c

UN POSS

## MASSACHUSETTS STATE POLICE
## HAMPSHIRE/FRANKLIN NARCOTICS

To:

From:          Trooper

Subject:       Inventory of property seized pursuant to Search Warrant

Defendant(s):  HANDY, JOHN H.  04/04/63

Location:      41 WESTON ST

Date & Time:   06/03/04, 1845HRS

| CS#: | | Location: | | |
|------|------------------------------|--------------------------|--------------------------|-------------------|
| Item# | Description of Evidence | Location of Evidence | Evidence found by |
| 1 | 1 TWIST of HEROIN | ON 1 HALLWAY | TPR ARROYO |
| 2 | FIREARM SMITH & WESSON 38 SPECIAL (R182,975) | UNDER FLOOR BOARDS IN HANDY'S BEDROOM | DET KHOURY |
| 3 | PAPERWORK IN NAME of JOHN HANDY | HANDY'S BEDROOM DRAWER | TPR COLEMAN/KEATING |

# EXHIBIT B

# *The Commonwealth of Massachusetts*
# *Department of State Police*

**MITT ROMNEY**
*GOVERNOR*

**KERRY HEALEY**
*LIEUTENANT GOVERNOR*

**EDWARD A. FLYNN**
*SECRETARY*

**COLONEL THOMAS J. FOLEY**
*SUPERINTENDENT*

*Plymouth County Detectives*
*326 West Grove Street*
*Middleboro, MA 02346*
*Tel. (508) 923-4205 Fax (508) 923-4210*
06/03/04

**TO:**     Detective Lieutenant Joseph V. Mason, Commanding Officer
Detective Unit - Plymouth County District Attorney

**FROM:**     Trooper Edward T. McDonald, #2405
Detective Unit - Plymouth County District Attorney

**SUBJECT:**     Narcotics Arrest: 1) John H. Handy, DOB 04/04/63, Execution
of Search Warrant: 41 Weston Street, Brockton, MA
Case # 04-113-0248

1.        During the month of May this officer conducted a narcotics investigation in the city of Brockton. This officer received reliable confidential informant information that an unknown black male aka "Joe" (later identified as John Handy, DOB 04/04/63, of 41 Weston Street, Brockton, MA) was distributing narcotics (heroin) within the city of Brockton. The informant successfully completed two controlled purchases of narcotics from Handy for this officer. Both controlled purchases occurred inside the residence of 41 Weston Street, Brockton, MA which is a single family residential dwelling.

2.        On May 26, 2004, this officer sought and received a search warrant from Brockton District Court for 41 Weston Street, Brockton, MA

3.        On June 02, 2004, members of the Massachusetts State Police (Plymouth County District Attorney's Ofc) Lieutenant A. Thomas, Sergeant J. White, Troopers P. Coleman, J. Gilmore, D. LeVangie, J. Arroyo and members of the Brockton Police (Narcotics Unit) Detectives G. Khoury, J. Costello, T. Keating, J. Stanton along with this officer executed the aforementioned search

**022**

1

warrant.  At approximately 1845hrs. officers made a forceful entry into 41 Weston Street, Brockton after Knocking and Announcing State Police Search Warrant was met with no answer.  A search of the dwelling revealed the following: 1) one plastic baggie containing a tan substance suspected heroin/2nd Floor Hallway/Tpr. J. Arroyo, 2) Loaded (six rounds .38spl ammo) Smith and Wesson .38 special Handgun Serial # 182972 inside a Black Leather Holster/under floorboard in bedroom/Det. G. Khoury, 3)Misc paperwork in the name of John Handy/Bedroom Drawer/Tpr. P. Coleman and Det. T. Keating.

4.          Handy was placed under arrest, advised of Miranda rights (Lt. A. Thomas) and transported to Brockton Police Department. (BPD Cr.).  At Brockton P.D. Handy was booked and advised of rights and held pending court or bail. Charges: 1) Poss Cl A (heroin), 2) Unl Poss Ammunition, 3) Unl Poss Firearm.

6.          This officer requests case status be classified CLOSED/ARREST.

Respectfully Submitted,

Trooper Edward T. McDonald, #2405
Detective Unit
Plymouth County District Attorney

INDEX:

John H. Handy, DOB 04/04/63, SSN 028544092
41 Weston Street,
Brockton, MA

**023**

2

# EXHIBIT C

## BROCKTON POLICE DEPARTMENT
### Arrest Booking Report

| OBTN | | Case No. |
|---|---|---|
| TBRO000037718 | | 04006829 |

### ARRESTEE

| Arrestee Name (Last, First, Middle Initial) | Arrest No. | Social Security No. | Caution |
|---|---|---|---|
| HANDY, JOHN H. | 00023663 | | |

| Address | Scars, tattoos, etc. |
|---|---|
| 42/THEODORE ST, DORCHESTER, MA | L.EYE   L.WRIST |

| Sex | Race | Height | Weight | Hair | Eyes | Build | Complexion | Marital Status | D.O.B. | Age | Place of Birth |
|---|---|---|---|---|---|---|---|---|---|---|---|
| M | B | 510 | 180 | BLK | BRO | STK | MEDIUM | SINGLE | | 41 | |

| Father's Name | Mother's Maiden Name | Wife's Maiden Name | Husband's First Name | Weekly Wage |
|---|---|---|---|---|
| | | | | 180 |

| Occupation | Employer | Alias/Nickname 1 |
|---|---|---|
| PAINTER | PETER HANDY | |

| Alias/Nickname 2 | Alias/Nickname 3 |
|---|---|
| | |

### CHARGE

| Charge(s) | MGL Chapter/Section | Warrant Number |
|---|---|---|
| 1) UNL POSS FIREARM | 269-10H | |
| 2) UNL POSS AMMUNITIO | 269-10O7 | |
| 3) POSS CS CLASS A | 94C-34 | |

Tpr Dean LeMagne   Tpr James G. Inoue

| Arrest Date | Time | Arrest Location | Arresting Officer 1 | Arresting Officer 2 | Domestic Violence? |
|---|---|---|---|---|---|
| 06/02/2004 | 18:30 | 41/WESTEN ST | POLICE / OTHER | POLICE / OTHER | NO |

### CONTROL

| Booking Date | Time | Booking Officer | Cell No. | Matron | Police Department on Warrant |
|---|---|---|---|---|---|
| 06/02/2004 | 20:02 | SKINNER, MICHAEL G | 2 | | |

| Rights given by SGT #49 BUTLER, JOSEPH J | Visible Injuries? NO | Comments |
|---|---|---|

| Searched by POLICE / OTHER | No. Codefendants | Codefendant(s) Name(s) |
|---|---|---|

### JUVENILE

| Person to notify | Relationship | Address | Telephone No. | Date/time notified |
|---|---|---|---|---|
| | | | | |

| Probation Officer | Release or Hold | Notified by | Juvenile released to (Signature) |
|---|---|---|---|
| | | | |

### RELEASE

| I was informed of my right to remain silent, to use a telephone, at my own expense, for the purpose of communicating with family or friends, to arrange bail or to call an attorney. | Arrestee Signature |
|---|---|

| Telephone used? (yes or no) | Bail Amount $700 | Date/time Released 6/2/04 | Released by |
|---|---|---|---|

# EXHIBIT D



**Brockton Hospital**
680 Centre Street
Brockton, Massachusetts 02302-3395



**RETURN SERVICE REQUESTED**

1769

JOHN HANDY
41 WESTON ST
BROCKTON, MA  02301

CASUSMS 02301



**014**



PROBATION OFFICE
THE BROCKTON TRIAL COURT
DISTRICT COURT DEPARTMENT, BROCKTON DIVISION
215 MAIN STREET
P. O. BOX 7610
BROCKTON, MA 02303-7610

02301+3332

**RETURN THIS PORTION WITH PAYMENT.**



100 GROVE STREET, SUITE 112
WORCESTER, MA  01605-2629

**RETURN SERVICE REQUESTED**

05/07/04

ENCLOSED IS MY PAYMENT FOR $143.00

#003684190024669#
JOHN HANDY
41 WESTON ST
#1
BROCKTON MA   02301-3332

100 GROVE STREET, SUITE 112
WORCESTER, MA   01605-2629

**015**