UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA          )
                                  )
        v.                        )    CRIMINAL NO. 04-10361-NG
                                  )
JOHN HANDY                        )

<u>DEFENDANT'S MEMORANDUM RE: DUAL PROSECUTION ISSUES</u>

Defendant, John Handy, submits this memorandum in response to the Court's August 1, 2006 request for briefing issues arising from the government's prosecution of Handy after his plea and sentence in Brockton District Court. For the reasons that follow, the government's admission that the United States Attorney's Office (USAO) adopted the case solely because the Plymouth County District Attorney's office second-guessed its own decision to allow Handy to plead guilty and receive a six-month sentence in state court requires dismissal with prejudice notwithstanding the dual sovereignty doctrine. Even if the Court should decline to dismiss the indictment, the Court should not admit evidence of Handy's plea of guilty in Brockton District Court at his federal criminal trial.[1]

---

[1] The Court's August 1, 2006 also questioned how the <u>Petite</u> policy affected the case at bar, and whether there were issues raised not covered by existing case law. Defendant has been unable to find any reported case which authorized any substantive inquiry into the Department of Justice's dual prosecution policy. Indeed, because the Supreme Court has held that the <u>Petite</u> policy is "not constitutionally mandated," <u>Rinaldi v. United States</u>, 434 U.S. 22, 28-29 (1977), the overwhelming weight of authority is that "the <u>Petite</u> policy does not confer substantive rights on criminal defendants." <u>United States v. Gary</u>, 74 F.3d 304, 313

I.    **THE SUCCESSIVE PROSECUTION BY THE UNITED STATES ATTORNEY'S OFFICE IS BARRED BY DOUBLE JEOPARDY NOTWITHSTANDING THE DUAL SOVEREIGNTY DOCTRINE.**

A.    Introduction

John Handy was the subject of a criminal complaint brought by the Plymouth County District Attorney's office in Brockton District Court on a charge that he possessed a firearm without a firearms identification card.  On July 1, 2004, the same Plymouth County District Attorney's office entered into a binding agreement with Handy whereby Handy would plead guilty, the Plymouth District Attorney's office would urge that Handy be sentenced to a county jail, and that any time he served would be concurrent with a then-pending probation violation proceeding in Dorchester District Court.  The Plymouth District Attorney's Office implicitly acknowledged that the Brockton District Court's acceptance of the plea would end its prosecution of Handy for the crime; further prosecution of Handy - either by new complaint or by Superior Court indictment - would necessarily be absolutely barred by the <u>Fifth</u> <u>Amendment</u> double jeopardy prohibition.

As expected, the Brockton District Court judge accepted Handy's admission to sufficient facts and sentenced Handy to six months in jail concurrent with any sentence imposed by the Dorchester District Court.  The Plymouth County District attorney, unsatisfied that its own office had entered into a plea

--------------------------------------------------

(1st Cir. 1996).

agreement that ended for all time its ability to obtain a stiffer sentence for Handy, has now sought the federal government's assistance in obtaining what it did not and no longer could: a fifteen-year mandatory minimum sentence prison sentence.  <u>See</u> Government's Memorandum in response to the District Court's Order Requesting Briefs on Dual Prosecution (hereinafter "Gov't Response") at 4.  The pending indictment charges a violation of precisely the same offense as did the state court complaint and makes little pretense that it does not.  The count in the indictment is based on the identical facts cited by the Plymouth County District Attorney's office in the Brockton District Court complaint.  Handy is in every sense of the phrase being twice put in jeopardy for the same offense.  The Fifth Amendment's Double Jeopardy and Due Process Clauses, as well as the Commerce Clause, require that this prosecution be dismissed with prejudice because two sovereigns at issue here - the Commonwealth of Massachusetts through the Plymouth County District Attorney's office and the United States Attorney's Office for the District of Massachusetts - colluded to bring a successive prosecution simply because one was unsatisfied but barred from such a prosecution.

B.  The <u>Bartkus</u> Exception to the Dual Sovereignty Doctrine
Applies Because the Plymouth County District Attorney's
Officer Referred - and the United Attorney Accepted -
the Case Solely Because the Plymouth County District
Attorney's Office Did Not Wish to Be Bound By Its
Agreement to Let Handy Plea In State District Court and
It Was Itself Constitutionally Prohibited from Further
Prosecution.

The "dual sovereign" exception to the <u>Fifth</u> <u>Amendment</u>'s

Double Jeopardy Clause holds that "successive prosecutions are

not prohibited by the fifth amendment if they are brought by

separate sovereigns." <u>United States v. Lopez Andino</u>, 831 F.2d

1164, 1167 (1ˢᵗ Cir. 1987).  The exception to the constitutional

prohibition on successive prosecutions for the same offense is

based on the existence of separate and independent sovereigns -

the federal and state governments - each retaining power under

the federal system to punish for offenses against it.  Thus, "an

act denounced as a crime by both national and state sovereignties

is an offense against the peace and dignity of both and may be

punished by each." <u>United States v. Lanza</u>, 260 U.S. 377, 382

(1922).  The dual sovereign exception, therefore, requires that

there actually be two distinct sovereigns, each with independent

interests to vindicate, in order to exempt successive federal-

state prosecutions from the double jeopardy bar.

The Supreme Court in <u>Bartkus v. Illinois</u>, 359 U.S. 121

(1959), defined two discrete classes of successive federal-state

prosecutions in which the sovereigns have no independent and

separate interests, and thus no "duality" for double jeopardy

-4-

purposes: (1) where one sovereign is derivatively enforcing a statute of the other by explicitly incorporating it as the central element of an offense, see Bartkus, 359 U.S. at 129-30; and (2) where one sovereign attempts to use the judicial machinery of the other to bring a prosecution that is really a sham" or "cover" for a second prosecution it cannot bring on its own. Id. at 123.

The Supreme Court first annunciated this second principal in Houston v. Moore, 18 U.S. 1 (1820), in which the Court confronted a Pennsylvania statute that "confer[ed] authority upon a State Court Martial to enforce the laws of the United States against delinquent militia men, who had disobeyed the call of the President to enter into the service of the United States." Id. at 28. The court held that on those facts, "the sentence of either [state or federal] Court, either of conviction or acquittal, might be pleaded in bar of the prosecution before the other, as much so as the judgment of a State Court, in a civil case of concurrent jurisdiction, may be pleaded in bar of an action for the same cause, instituted in a Circuit Court of the United States." Id. at 31. Then, more that a century later in Bartkus, well after the dual sovereign exception was firmly entrenched in federal law - after the "proscription of double jeopardy ha[d] been invoked and rejected in over twenty cases of real or hypothetical successive state and federal prosecutions" - the

Court affirmed the bar to successive prosecutions based on derivative enforcement.  The Court cited <u>Houston v. Moore</u> for the proposition that "the presence of a bar in a case in which the second trial is for a violation of the very statue whose violation by the same conduct has already been tried in the courts of another government empowered to try that question." 359 U.S. 121, 129-30 (1959).

Such is the case here.  The § 922(g) charge in this case merely federalizes a violation of the state's illegal possession of a firearm statute by adding the jurisdictional element of interstate commerce.  The federal prosecution here is simply a retrial of a state offense that has already been tried and concluded free of legal defects and pursuant to an agreement negotiated between the Plymouth County District Attorney's office and Handy.  It is precisely because of the constitutional prohibition on a second Massachusetts prosecution that the Plymouth County District Attorney's office prevailed upon the United States Attorney's Office to further pursue this case.  The issue before this Court is whether the District Attorney's office may conspire with the federal government in such an overt attempt to exploit the dual sovereign exception and further prosecute Handy in this Court.  It cannot.

Duality between sovereigns is lacking when "the [second] prosecution [is] a sham and a cover for [the first] prosecution,

and thereby in essential fact another" prosecution b the first sovereign. <u>Bartkus</u>, 359 U.S. at 124.[2]  The First Circuit has held that the <u>Bartkus</u> exception to the dual sovereignty doctrine "is compelled by the bedrock principles of dual sovereignty." <u>United States v. Guzman</u>, 85 F.3d 823, 827 (1st Cir. 1996).  The <u>Guzman</u> decision set forth a two-step framework by which such claims are to be evaluated.  First the defendant must proffer evidence sufficient to establish a prima facie case that the two prosecutions were for the same offense.  <u>Id.</u>  In the <u>Bartkus</u> context, the court explained,

> the question whether a defendant is being twice prosecuted for the same offense turns in part on the applicability of the dual sovereign rule.  <u>See</u> <u>Heath [v. Alabama]</u>, 474 U.S. [82, 88 (1985)].  Thus, the defendant must produce some evidence tending to prove that the rule should not apply because one sovereign was a pawn of the other, with the result that the notion of two supposedly independent prosecutions is merely a sham.

<u>Id.</u> Once a defendant meets his entry-level burden by making an adequate evidentiary showing to that effect, the burden of persuasion shifts to the government to prove that the prosecution is not a cover for the first prosecution:

---

[2] In <u>United States v. Balsys</u>, 524 U.S. 666 (1998), the Supreme Court held that while a fear of foreign prosectuion does not normally provide a basis for invoking the <u>Fifth</u> <u>Amendment</u>'s protections against self incrimination in a domestic proceeding, a different result might be appropraite if the foreign state brought its prosecution "as much on behalf of the United States as of tehh prosecutiong nation itself."  <u>Id.</u> at 698-99.

> If the defendant proffers evidence sufficient to
> support such a finding -- in effect, a prima facie case
> -- the government must shoulder the burden of proving
> that one sovereign did not orchestrate both prosecutions, or, put
> another way, that one sovereign was not a tool of the other. See,
> e.g., United States v. Harrison, 918 F.2d 469, 475 (5th Cir.
> 1990) (applying burden-shifting matrix in the Bartkus context).

Id.

Here, the undisputed facts establish a prima facie case both

that the federal and state authorities have colluded far beyond

the ordinary forms of cooperation between law enforcement

agencies, and also that this federal prosecution is being used as

a tool of the Plymouth County District Attorney's office to

accomplish that which it did not even seek to accomplish in the

state court.  See United States v. Coker, 433 F.3d 39, 46 (1st

Cir. 2005)(Bartkus exception to dual sovereignty doctrine

designed to prevent "end runs" around otherwise constitutionally

protected rights).  There was no federal interest, either by way

of joint federal-state task force of any kind or referral for

prosecution, prior to the plea and dissatisfaction with the

sentence that instigated the Plymouth County District attorney's

appeal to the United States Attorney's Office.  Thus, the

successive prosecution here is unlike any discussed and approved

in this circuit.  See, e.g., Guzman, supra, 85 F.3d at 828

(single DEA agent's sole involvement in foreign prosecution

consisted of tipping off Dutch authorities who conducted search

and prosecution); United States v. Bouthot 685 F.Supp. 286, 295

(D. Mass. 1988)(neither sovereign a tool of the other where, despite federal-state cooperation in investigation, each prosecutor made temporally independent charging decisions that vindicated its own interest in defendants).[3]  The few cases outside of the First Circuit with facts approaching the level of collusion here have all refused to apply the dual sovereign doctrine.  See United States v. Belcher, 762 F. Supp. 666, 670-71 (W.D.Va. 1991) permitting same individual to serve as prosecutor for both sovereigns "create[d] a super sovereign, i.e., a unitary government," that barred federal prosecution after state prosecution because it was "simply a sham and a cover for the first, unsuccessful prosecution")(internal quotations omitted); United States v. G.P.S. Automotive Corp., 66 F.3d 483, 495-96 (2nd Cir. 1995)(referral of case to federal government by state, cross-designation of a state prosecutor as Special Assistant United States Attorney, reliance in federal case on evidence gathered for state trial, and agreement between sovereigns to share in proceeds of forfeiture, taken together, required remand for additionally fact-finding regarding the independence of the two sovereigns); United States v. Bernhardt, 831 F.2d 181, 182-83

---

[3] The lack of such cases is apparently explained by the Justice Department's internal policy that usually precludes "federal prosecution for an offense that was previously the subject of a state prosecution . . . [unless] compelling reasons" warrant a successive federal case.  Rinaldi v. United States, 434 U.S. 22, 28 (1977).

(9th Cir. 1987)(where federal government had not taken "any independent view of [the case] or ever considered it to be a matter that justified exercise of federal sovereignty" until after failed state prosecution, federal prosecution led by state prosecutor and paid for by state defendants duality of sovereigns unless government could show on remand "sufficient independent federal involvement [to] save the prosecutions").[4]

The undisputed lack of a federal interest - legitimate or otherwise - in the investigation and prosecution prior to the Plymouth County's second thoughts about the plea agreement it had entered into, along with the federal government's admission that the case was taken because Plymouth County was barred from belatedly obtaining more prison time from Handy, renders the federal government prosecution a tool of the state court prosecutors.  <u>Bartkus</u>, <u>supra</u>, 359 at 123.  The dual sovereignty doctrine does not apply and Handy cannot again be placed in

_____

[4] Defendant submits that the Court cannot and should not ignore the extremely close relationship between the Plymouth County District Attorney's office and the current administration of the United States Attorney's Office for the District of Massachusetts.  This close relationship has resulted in the hiring of a substantial number of Assistant District Attorneys as Assistant United States Attorneys in the district.  Indeed, as an affidavit submitted by the defense attorney handling the Brockton District Court case (attached hereto as Exhibit A) indicates, the federal referral for prosecution after plea and sentencing in state court was likely made by an ADA who was leaving the office to become an AUSA.

jeopardy for possession of the firearm.  The indictment must therefore be dismissed with prejudice.

C.    Even If the Bartkus Exception Does Not Apply, the Absence of Legitimate Federal Interest In This Prosecution Demonstrates the Historical and Constitutional Flaws Inherent in the Dual Sovereign Doctrine and Requires a Reexamination of the Doctrine.

The dual sovereign doctrine, based on questionable legal and historical analysis from its inception, now has no constitutional, legal, or historical basis other than inertia. Courts and commentators have therefore questioned the continued existence of the exception.  And the singular circumstances of this case - a state court concluded for all time by plea and sentence, re-prosecution for precisely the same offense, no distinct federal interest, and no dispute that the federal and state prosecutors are attempting to do together what one is precluded from doing alone - requires a reexamination of the dual sovereign exception in light of intervening precedent if the prosecution is permitted to proceed.

The dual sovereign exception to the Double Jeopardy Clause was first discussed as a theoretical matter in dicta in a series of pre-Civil War cases - Fox v. Ohio, 46 U.S. 410 (1847), United States v. Marigold, 50 U.S. 560 (1850), and Moore v. Illinois, 55 U.S. 13 (1852) - and was not adopted as a holding until Lanza, supra, 260 U.S. 377.  See Bartkus, supra, 359 U.S. at 129 ("Lanza was the first case in which we squarely held valid a federal

prosecution arising out of the same facts which had been the
basis of a state conviction"). The Bartkus court's embrace of
the dual sovereign doctrine illustrates the contrasting
historical and legal principles that led to the creation of the
exception as a unique feature of American jurisprudence. As
Justice Frankfurter explained, writing for the five Justices in
the majority, the doctrine was seen as a necessary corollary to
the federal system, in which citizens owe allegiances to two
sovereigns - both the federal government and th state with
jurisdiction over them - a proposition for which he quoted Moore
v. Illinois, 55 U.S. 13 (1852):

> Every citizen of the United States is also a citizen of
> a State or territory. He may be said to owe allegiance
> to two sovereigns, and may be liable to punishment for
> an infraction of the laws of either. The same act may
> be an offence or transgression of the laws of both.
>
> That either or both may (if they see fit) punish such
> an offender, cannot be doubted. Yet it cannot be truly
> averred that the offender has been twice punished for
> the same offence, but only that by one act he has
> committed two offences . . ..

Id. at 19. As Justice Black explained, however, writing for
three of the four Bartkus dissenters, this exception from the
protection against double jeopardy in the case of dual sovereigns
was not imported from English law, as was the remainder of double
jeopardy jurisprudence. Rather, it was created from whole cloth
by the pre-Civil War cases of Fox, Marigold, and Moore to
accommodate the then-recognized conception of coexisting

-12-

sovereigns in the American federal system.  Indeed, as Justice

Black explained, the exception for dual sovereigns is in fact

contrary to millennia of jurisprudence:

> Fear and abhorrence of governmental power to try people
> twice for the same conduct is one of the oldest ideas
> found in western civilization.  Its roots run deep into
> Greek and Roman times.  Even in the Dark Ages, when so
> many other principles were lost, the idea that one
> trial and one punishment were enough remained alive
> through the canon law and the teachings of early
> Christian writers.  By the thirteenth century it seems
> to have been firmly established in England, where it
> came to be considered as a universal maxim of canon law
> . . ..  Few principles have been more deeply rooted in
> the traditions and conscience of our people.

Bartkus, supra, 359 U.S. at 152-54 (Black, J., dissenting)

(internal quotations and citations omitted).  Justice Black's

historical analysis further demonstrated that the weight

traditionally accorded the proscription against double jeopardy

had prevailed at common law even where the interests of distinct

sovereigns were implicated and that the protection against double

jeopardy was entrenched as a matter of international law at the

time of the drafting of the Constitution.  Id. at 158.  Justice

Black thought it inconceivable that if the proscription against

successive prosecution "prevails among nations who are strangers

to each other, [it could] fail to [prevail] with us who are so

intimately bound by political ties.  Id. at 156-57 (citing State

v. Antonio, 2 Tread. 776, 781 (1818)).

The Bartkus majority, however, held that the American

federal system required a different rule, one crafted to

-13-

accommodate then-prevailing views of federalism.  As the
introductory section of the opinion explained, the basis premise
of the conception of federalism it applied was that "the Due
Process Clause of the Fourteenth Amendment does not apply to the
States any provision of the first eight amendments as such."  Id.
at 124.  The opinion then canvassed federal and state decisional
law applying that principal, finding historical support for the
concept that, in the system of distinct and independent
sovereigns envisioned by the Constitution, there would be no
basis to apply the Double Jeopardy Clause to successive federal-
state prosecutions.  Id. at 125-37.  After all, since the Double
Jeopardy Clause was not binding on the states - and any state
could therefore try the same defendant for the same offense over
and over again (absent some provision of the state's own
constitution forbidding such a practice) there could be no
logical reason to bar the federal government from mounting such a
successive prosecution.

    The only other justification cited for the dual sovereign
exception was the fear that application of the proscription
against double jeopardy could allow states and the government to
undermine each other's law enforcement efforts.  This issue was
first raised in Lanza, where the Court wrote that "[i]f a State
were to punish the manufacture, transportation and sale of
intoxicating liquor by small or nominal fines, the race of

offenders to the courts of that State to plead guilty and secure immunity from federal prosecution for such acts would not make for respect for the federal statue or for its deterrent effect." Lanza, supra, 359 U.S. at 136-37.  The Bartkus majority alluded to this same concern.  359 U.S. at 136-37.

     As numerous courts and commentators have since explained, however, neither of these rationales for the dual sovereign exception - the "race to the courthouse" fear cited in Lanza or the inapplicability of the Double Jeopardy Clause to the states - remains true tody.  As for the fear of a "race to the courthouse," that fear is limited to the subject matter of Lanza - a case involving regulation of liquor, a unique area in which states through the Eighteenth Amendment share power to regulate unencumbered by the federal government.  In any other area of law, as Justice Black pointed out in his Bartkus dissent, the federal government could through the Supremacy Clause "defin[e] the crime to be punished and establish minimum penalties . . .. Conversely, in purely local matters the power of the States is supreme and exclusive."  359 U.S. at 157; see also United States v. Grimes, 641 F.2d 96, 103-04 (3rd Cir. 1981)("Lanza is an anomaly from the perspective of federalism . . . The Eighteenth Amendment . . . [is] somewhat unique in having established a hybrid terrain . . . where the federal government could not, should it desire, assert its supremacy.  Extrapolation or

generalizations regarding double jeopardy law created in such an unusual context would therefore appear unwarranted.")(citations omitted).  If there truly is a substantial federal interest in a prosecution, therefore, a state will not be able to trump that interest by merely instituting a "slap on the hand" prosecution.

As for the Bill of Rights incorporation analysis on which the <u>Bartkus</u>, majority principally relied, its constitutional foundation no longer exists.  The Double Jeopardy Clause was held applicable to the states ten years after <u>Bartkus</u> in one of a series of cases in which the Supreme Court found all of the core rights protected by the Bill of Rights applicable to the states through the Due Process Clause of the <u>Fourteenth</u> <u>Amendment</u>.  <u>See</u> <u>Benton v. Maryland</u>, 395 U.S. 784 (1969); <u>see</u> <u>also</u> <u>Wolf v. Colorado</u>, 338 U.S. 25 (1949)(<u>Fourth</u> <u>Amendment</u> prohibition against unreasonable searches and seizures applicable to states); <u>Malloy v. Hogan</u>, 378 U.S. 1 (1964)(<u>Fifth</u> <u>Amendment</u> right against self-incrimination applicable to states).  This incorporation of the Bill of Rights was followed by a series of cases in which the Supreme Court overruled precedent to hold that, given the applicability of the Bill of Rights to the states, the federal and state governments could no longer do together in the areas protected by the Bill of Rights what neither could do alone.  <u>See</u> <u>Elkins v. United States</u>, 364 U.S. 206, 215 (1960)(overruling the "silver platter doctrine" in light of <u>Wolf</u> and holding that

-16-

evidence obtained in violation of <u>Fourth Amendment</u> by federal or
state officials cannot be used by either because "[t]o the victim
it matters not whether his constitutional right has been invaded
by a federal agent or by a state officer"); <u>Murphy v. Waterfront
Comm'n</u>, 378 U.S. 52, 77 (1964)overruling rule that compelled
self-incrimination could be used by a different sovereign because
in light of <u>Malloy v. Hogan</u>, "there is no continuing legal
vitality to, or historical justification for, the rule that one
jurisdiction . . . may compel a witness to give testimony which
could be used to convict him of a crime in another
jurisdiction").

Thus, as leading commentators have questioned:

> Here, then, is the key puzzle.  Whereas <u>Elkins</u>
> consciously built on <u>Wolf</u>'s application of <u>Fourth
> Amendment</u> principles against states to overturn the
> silver platter doctrine, and <u>Murphy</u> explicitly built on
> <u>Malloy</u>'s incorporation of the Double Jeopardy Clause to
> overrule <u>Feldman</u>, the Court never chose to build on
> <u>Benton</u>'s incorporation of the Double Jeopardy Clause to
> overrule <u>Bartkus</u> and <u>Abbate</u> [the companion case to
> <u>Bartkus</u>].  The Court has never explained - or even
> focused on - this anomaly.

Akhul Reed Amar and Jonathan L. Marcus, <u>Double Jeopardy Law After
Rodney King</u>, 95 Colum. L. Rev. 1, 15 (1995).  Academic criticism
of the dual sovereign doctrine is widespread.[5]

---

[5] <u>See</u>, <u>e.g.</u>, Daniel A. Braun, <u>Praying to False Sovereigns:
The Rule Permitting Successive Prosecutions in the Age of
Cooperative Federalism</u>, 20 Am. J. L. 1 (1992); Sandra Guerra, <u>The
Myth of Dual Sovereignty: Multi jurisdictional Drug Law
Enforcement and Double Jeopardy</u>, 73 N.C. L. Rev. 1159 (1959);
Walter T. Fisher, <u>Double Jeopardy: Two Sovereignties and the</u>

And the call for reexamination of <u>Bartkus</u> is not limited to academics.  The Third Circuit, for example, has opined that:

> [A] reexamination of <u>Bartkus</u> may be in order, since questions may be raised regarding both the validity of [its] formalistic conception of dual sovereignty and the continuing viability of the opinion's interpretation of the Double Jeopardy Clause with respect to the states.  Moreover, the recent expansion of federal criminal law jurisdiction magnifies the impact of <u>Bartkus</u> and <u>Abbate</u>, thus rendering a reassessment of those decisions timely from a practical standpoint as well.

<u>United States v. Grimes</u>, 641 F.2d 96, 101 (3rd Cir. 1981)

(citations omitted).[6]  <u>See also</u> <u>United States v. Claiborne</u>, 92

---

<u>Intruding Constitution</u>, 28 U. Chi. L. Rev. 591 (1961); J.A.C. Grant, <u>The Lanza Rule of Successive Prosecutions</u>, 32 Colum. L. Rev. 1309 (1932); Harlan R. Harrison, <u>Federalization and Double Jeopardy: A Study in the Frustration of Human Rights</u>, 17 U. Miami L. Rev. 306 (1963); Evan Tsen Lee, <u>The Dual Sovereignty Exception to Double Jeopardy, In the Wake of Garcia v. San Antonio Metropolitan Transit Authority</u>, 22 New. Eng. L. Rev. 31 (1987); Kenneth M. Murchison, <u>The Dual Sovereignty Exception to Double Jeopardy</u>, 14 N.Y.U. Rev. L. & Soc. Change 383 (1986); Lawrence Newman, <u>Double Jeopardy and the Problem of Successive Prosecution: A Suggested Solution</u>, 34 S. Cal. L. Rev. 252 (1961); George C. Pontikes, <u>Dual Sovereignty and Double Jeopardy: A Critique of Bartkus v. Illinois and Abbate v. United States</u>, 14 Case. W. Res. L. Rev. 700 (1963); Michael A. Dawson, Note,, <u>Popular Sovereignty, Double Jeopardy, and the Dual Sovereignty Doctrine</u>, 102 Yale L.J. 281 (1992); James E. King, Note, <u>The Problem of Double Jeopardy in Successive Federal-State Prosecutions: A Fifth Amendment Solution</u>, 31 Stan. L. Rev. 477 (1979); Note, <u>Double Jeopardy and federal Prosecution After State Jury Acquittal</u>, 80 Mich. L. Rev. 1073 (1982); Note, <u>Double Prosecution by State and Federal Government's: Another Exercise in Federalism</u>, 80 Harv. L. Rev. 1538 (1967).

[6] The Supreme Court has, since <u>Benton</u>, reaffirmed the dual sovereign exception in <u>Heath v. Alabama</u>, 474 U.S. 82 (1985), but that case involved two states' successive prosecution of the same offense; thus, <u>Heath</u> did not raise the federalism concerns present in this case and the typical state-federal successive

F.Supp. 2d 503, 509 (E.D. Va. 2000)("in view of the expansion of the Commerce Clause as it relates to federal crimes, perhaps the dual sovereignty doctrine should be reconsidered.  Where the Commerce Clause has been broadly expanded and the line between federal and state crime has been blurred, the rationale of the dual sovereignty doctrine is nullified and thus, the doctrine should be eliminated").

The concern of jurists and academics alike that, because of the increasing centralization of federal criminal power, the dual sovereignty doctrine has produced unintended danger to constitutional protections is underscored by recent Supreme Court jurisprudence.  In <u>United States v. Lopez</u>, 514 U.S. 549 (1995) and more recently in <u>United States v. Morrison</u>, 529 U.S. 598 (2000), the Supreme Court invalidated Congressional enactments under the "third prong" of the Commerce Clause - that is, a statute that is not on its face aimed at either the channels or instrumentalities of commerce, but which attempts to regulate commerce on the basis of the allegedly cumulative effect on the otherwise local activities at issue in interstate or foreign commerce.  <u>Lopez</u>, 514 U.S. at 567 (Gun Free School Zones Act provision creating federal crime of possession of firearm in school zone exceeds Commerce Clause power because the statute had "no requirement that [the defendant's] possession of the firearm

_____

prosecution cases that have called the doctrine into question.

-19-

have any concrete tie to interstate commerce"); <u>Morrison</u>, 529
U.S. at 618 (civil remedy provision of Violence Against Women Act
exceeds Commerce Clause power because "[t]he Constitution
requires a distinction between what is truly national and what is
truly local").  These cases evidence the Supreme Court's concern
that federal criminal prosecution must be based on more than an
incidental connection to interstate commerce in order to avoid
troubling issues of federal centralization of criminal law.  <u>See</u>
<u>Lopez</u>, <u>supra</u>, 514 U.S. at 555-57; <u>Morrison</u>, <u>supra</u>, 529 U.S. at
618 (Founders chose to deny the federal government jurisdiction
over violent crime and reposed police power in the states).

Over ten years ago, Judge Calabresi of the Second Circuit
has expressed grave concern about the interplay between rising
federalization of crime and the outmoded framework of <u>Bartkus</u> and
<u>Abbate</u>, and suggested that <u>Lopez</u> may have a role to play in the
solution:

> [D]ramatic changes [] have occurred in the relationship
> between the federal government and the states since the
> time of <u>Bartkus</u> and <u>Abbate</u>, changes that have made what
> was then perhaps acceptable, or at least tolerable, far
> more dangerous today.
>
>    . . .
>
> In recent years . . . the scope of federal criminal law
> has expanded enormously.  And the number of crimes for
> which a defendant may be made subject to both a state
> and federal prosecution has become very large.  At the
> same time, the <u>Bartkus</u> exception has been defined
> extremely narrowly.  It follows that today defendants
> in an enormous number of cases can be subjected to dual
> prosecutions.  And this can happen even when state and

federal officials, in practice, join together to take a
second bite at the apple.

> . . .

The Supreme Court has recently shown its willingness to
re-consider supposedly well-settled landmarks of double
jeopardy jurisprudence . . ..  And the Supreme Court's
decision earlier this year in United States v. Lopez,
[514 U.S. 549] (1995), has similarly revealed the
Court's willingness t give serious and renewed thought
to issues of federalism at the foundation of our
constitutional system, and to do so in the context of
the enormous expansion of federal criminal law.  In
that light, a new look by the High Court at the dual
sovereignty doctrine and what it means today for the
safeguards the Framers sought to place in the Double
Jeopardy Clause would surely be welcome.

G.P.S. Automotive, supra, 66 F.3d at 498-99 (Calabresi, writing

separately).

These concerns are far from idle speculation in this case.

The indictment pending before this Court represents the ultimate

federalization of traditional state crime, vitiates settled

expectations among defendants and criminal court practitioners

alike, and is a prime example of the federal and state

governments attempting to do together what one sovereign could

not do alone.  Further, in light of the ever increasing

cooperation between federal and state law enforcement authorities

exemplified by this case and unknown in kind and degree to the

Bartkus court, the rationale for the dual sovereign exception is

exposed by this case as the empty vessel it is.  This Court

should therefore accept the Third Circuit and Judge Calabresi's

invitation to a fresh look at the dual sovereign doctrine.  A

trial on this indictment should not proceed without a reexamination of <u>Bartkus</u> and a determination that the dual sovereign doctrine has not survived the sea changes in both the interpretation of the <u>Fourteenth</u> <u>Amendment</u> and the nature of contemporary federal law enforcement.

## II.  THE COURT SHOULD NOT ADMIT EVIDENCE OF HANDY'S ADMISSION OR THE BROCKTON DISTRICT COURT'S GUILTY FINDING AT HIS FEDERAL TRIAL.

Should the Court allow this matter to go to trial, it should decline to admit into evidence any documents or testimony concerning his admission to the facts or the Brockton District Court's finding of guilt.  Evidence of the admission or guilty finding should be excluded on at least three bases:

(1)  **The Plymouth County District Attorney's office intention to use the admission in its effort to impose enhanced penalties on Handy was a direct rather consequence of the plea.**  Handy should have been, but was not, informed that a direct consequence of his admission to the facts would be that the Plymouth County District Attorney's office would use the admission as a basis for contemporaneously seeking further enhanced penalties, including (as it ultimately did) referring the case to the United States Attorney's Office for prosecution notwithstanding its own agreement to terminate prosecution of him.  <u>See</u> <u>United States v. Bouthot</u>, 878 F.2d 1506, 1512 & nn. 4 & 5 (noting that prosecutorial offices acting in concert or one

-22-

prosecutorial office initiating separate investigations likely would have obligation to disclose collateral investigation as consequence of plea);

(2) **The Plymouth County District Attorney's office breached its agreement with Handy and thus contract principles and fairness require that Handy be placed in the same position as he was prior to making the admission**: Handy's admission and the resulting guilty finding was made pursuant to an agreement with the Plymouth County District Attorney's office that it would not further prosecute him and.  Because that office reneged on that agreement because it actually meant to prosecute him under the Massachusetts armed career criminal statue (a crime to which he would not have pled) and Handy cannot assert specific performance as a remedy, ordinary contract principles should restore him to the position he was in - assertion of his innocence of the charge - prior to entering into the agreement with that office. See United States v. Ortiz-Santiago, 211 F.3d 146, 151 (1st Cir. 2000)(courts interpret plea agreements more or less as contracts and, because the First Circuit is scrupulous in holding defendants to the terms of their plea agreements, "we must be equally steadfast in dealing with the government");

(3) **The Evidence must, in any case, be excluded under Fed. R. Evid. 403**: The evidence is excludable under Fed. R. Evid. 403 because

-23-

(a)  the probative value of the conviction is outweighed by
     the unfair prejudice where the colloquy underlying the
     conviction is ambiguous as to whether Handy actually
     admitted he possessed the firearm at issue;

(b)  the probative value of the conviction - evidence that
     Handy possessed the firearm in question - is outweighed
     by the danger of unfair prejudice where, shortly after
     his Brockton District Court admission and months before
     he was aware that he would be prosecuted federally, the
     government taped conversations in which Handy explained
     to others that he had not possessed the firearm but
     only made the in-court admission because to terminate
     the case with a favorable disposition that would run
     concurrent with the probation violation he faced in
     Dorchester District Court;

(c)  the probative value of the conviction is outweighed by
     unfair prejudice and confusion of the issues because
     Handy will be required to rebut the evidence with
     witnesses and extensive testimony to explain the
     context of Handy's admission.  These witnesses would
     include:

     (I)  the lawyer representing Handy during the plea
          proceedings, who would explain (a) that he
          counseled Handy to take the plea notwithstanding

triable issues concerning whether Handy possessed the gun because it would terminate the case and he faced certain incarceration on his pending probation violation anyway, and (b) that he would not have advised Handy to admit to the facts were the disposition other than one that resulted in no additional time;

(ii) an expert witness in state court criminal practice, who would explain plea negotiation practice as well as the meaning and significance of a pending violation of probation proceeding and the differences between state district court and superior court dispositions along with the potential penalties applicable to those dispositions;

(iii) the district court prosecutor handling the matter before the Brockton District Court; and

(iv) the witnesses to whom Handy explained - months before he understood that he would be prosecuted in federal court - that he had not possessed the firearm but only made the in-court admission to terminate the case with a favorable disposition that would run concurrent with the probation violation he faced in Dorchester District Court.

Admission of the state court outcome, therefor, will result in significant and protracted testimony and argument that will likely confuse the central issue at trial: whether Handy possessed the weapon found at 41 Weston St. on June 2, 2004.

For all of the above reasons, defendant submits that the Court should decline to admit any evidence or testimony concerning the Brockton District Court proceedings.[7]


                          JOHN HANDY
                          By His Attorney:


                          /s/ Timothy G. Watkins
                          Timothy Watkins
                           B.B.O. #567992
                          Federal Defender Office
                          408 Atlantic Ave., Third Floor
                          Boston, MA  02110
                          (617) 223-8061

---

[7] Defendant requests the opportunity to more fully brief the admissibility issue when and if the case proceeds to trial and the government more precisely delineates how much of the Brockton District Court proceedings it seeks to introduce at trial.

-26-

<u>CERTIFICATE OF SERVICE</u>

I, Timothy G. Watkins, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on August 17, 2006.


/s/ Timothy G. Watkins
Timothy G. Watkins

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, SS.

BROCKTON DISTRICT COURT
DOCKET NO. 0415 CR 4029

COMMONWEALTH

v.

JOHN HANDY

## AFFIDAVIT II OF DAVID J. HUMPHREYS

Now comes David J. Humphreys, who being duly sworn, deposes and states as follows:

1. I, David J. Humphreys, am an attorney practicing law in the Commonwealth of Massachusetts and was appointed to represent John Handy in the above-captioned matter.

2. On July 1, 2004, John Handy pled Guilty to the above-referenced case in the Brockton District Court.

3. On or about September, 2004 I was contacted by Assistant District Attorney Maryclare Flynn with regard to that Guilty plea. At that time, ADA Flynn asked me if I would accept service on behalf of Mr. Handy of the Commonwealth's Motion to Rescind Court's Order to Destruct Firearm.

4. According to ADA Flynn, the Commonwealth sought to preserve the firearm in order to refer the case to the United States Attorney's Office for prosecution. ADA Flynn stated that moments after Mr. Handy was sentenced on July 1, 2004, the ADAs in the Pre-Trial Session were called by their superiors and told not to take a plea in the case and that the Office would seek an indictment in Superior Court, but the call came too late. ADA Flynn stated that because another Plymouth County ADA had recently been hired by the U.S. Attorney's Office in Boston, that attorney would take the case with him in order to "get more time" from Mr. Handy, or words to that effect.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 19th DAY OF AUGUST 2005.

David J. Humphreys

A.14